# EXHIBIT B



## BETA Risk Management Authority ("BETARMA")
**A Public Entity**

### CERTIFICATE OF PARTICIPATION

HEALTHCARE ENTITY COMPREHENSIVE LIABILITY COVERAGE CONTRACT

**PRODUCER:** Chivaroli & Associates, Inc Attn: Mary Winterburn

| CERTIFICATE NUMBER: |
| :---: |
| HCL-17-807 |

| | |
| :--- | :--- |
| **ITEM 1:** | **NAMED MEMBER:**<br>University of Southern California<br>3434 South Grand Avenue, CAL 120<br>Los Angeles, CA 90089 |
| **ITEM 2:** | **SUBSIDIARIES:**<br>See Amendment H374 |
| **ITEM 3:** | **CONTRACT PERIOD:**<br>(a) Effective Date: 07/01/17  (b) Expiration Date: 07/01/18 at 12:01 a.m. local time for all dates<br>at the address in Item 1 |
| **ITEM 4:** | **RETROACTIVE DATE FOR PROFESSIONAL LIABILITY:**<br>09/01/86 at 12:01 a.m. local time for all dates at the address in Item 1 |
| **ITEM 5:** | **COVERAGE AND LIMITS OF LIABILITY PROVIDED:**<br>$20,000,000 per **Claim** (except as provided by Amendment)<br>$30,000,000 in the Aggregate<br><br>(Coverages provided are indicated with an "X")<br><br>**Professional Liability**<br>☒ Healthcare Entity Professional Liability - Claims Made<br>**General Liability**<br>☐ **Bodily Injury** and **Property Damage** Liability - Occurrence<br>☐ **Personal Injury, Advertising Injury** and Discrimination Liability - Occurrence<br>☐ Employee Benefits Liability - Occurrence |
| **ITEM 6:** | **DEDUCTIBLE:**  See Section 7.9.B<br>$250,000 Indemnity & Expense Per Claim / $4,500,000 Annual Aggregate |
| **ITEM 7:** | **CONTRIBUTION:**  See Section 7.9.A |
| **ITEM 8:** | **CONTRACT AND AMENDMENT FORMS ATTACHED AT ISSUANCE:**   HCL (07/15)<br>H120  H130  H201  H216  H236  H237  H300  H303  H305  H309  H310  H311  H312  H313  H314  H315<br>H320  H336  H337  H346  H362  H363  H364  H373  H374  H381  H386  H432  H437  H438  H441  H444<br>H447  H452 |
| **ITEM 9:** | **NOTICE REQUIRED TO BE GIVEN TO BETARMA MUST BE ADDRESSED TO:**<br>BETA Risk Management Authority<br>1443 Danville Boulevard<br>Alamo, CA 94507 |

This Certificate of Participation, the **Application(s)** and accompanying documents, and the Coverage Contract with Amendments shall constitute the Contract between BETARMA and the **Members**.

Authorized Representative of BETARMA

Date Issued:  July 01, 2017  (Initial)

## BETA RISK MANAGEMENT AUTHORITY

### HEALTHCARE ENTITY COMPREHENSIVE LIABILITY COVERAGE CONTRACT

---

**IMPORTANT**

THIS IS A NON-ASSESSABLE COVERAGE CONTRACT THAT INCLUDES MULTIPLE COVERAGE SECTIONS. SOME ARE PROVIDED ON A "CLAIMS MADE AND REPORTED" BASIS, AND OTHERS ARE PROVIDED ON AN "OCCURRENCE" BASIS. THIS COVERAGE CONTRACT REQUIRES ARBITRATION OF DISPUTES WITH BETARMA.  PLEASE REVIEW THE ENTIRE CONTRACT CAREFULLY.

---

CONTRACT YEAR 2017/2018

---

## IMPORTANT NOTICES

---

**This Contract affords four basic coverages in Sections 2 through 5 below. The coverages include professional liability coverage (in Section 2) that applies to only those Claims first made against the Member during the Contract Period and reported in writing to BETA Risk Management Authority ("BETARMA") as soon as possible but in no event later than thirty (30) calendar days after the termination of the Contract Period.  This coverage provides no protection or defense for acts, errors, omissions that occurred prior to the Retroactive Date set forth on the Certificate of Participation (the "Certificate") or after the Expiration Date.  Unlike the professional liability coverage in Section 2, the general liability coverages in Section 3, 4, and 5 apply on an "Occurrence" basis to Occurrences, offenses and negligent acts, errors or omissions that take place during the Contract Period.  PLEASE READ EACH COVERAGE SECTION CAREFULLY AND DISCUSS THE CONTRACT WITH YOUR ATTORNEY, INSURANCE ADVISOR OR BROKER.**

BETARMA is a California Joint Powers Authority formed to pool self-insured claims and losses among public entities and nonprofit organizations providing healthcare services as authorized by California Government Code Sections 990.4(a), 990.8(c) and 6527 and subject to the provisions of Section 991.2. BETARMA is not subject to regulation as an insurer.  As a public agency, it will, for example, be guided by *Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, rather than *San Diego Federal Credit Union v. Cumis Ins. Society* (1984) 162 Cal.App.3d 385, when deciding whether to engage or provide reimbursement for independent defense counsel. This Contract is not an insurance policy.  The **Named Member** must be a member in good standing in BETARMA to participate in the Group Self-Insurance Program.  The **Named Member** pays, when due, Contributions to BETARMA.  In return, BETARMA provides healthcare entity professional liability and general liability protection under this agreement.  However, the Contract includes limitations, restrictions and exclusions.  In other words, this agreement does not protect against all risks associated with your activities.

This Contract is an agreement arrived at by mutual negotiation among and consent of the members of BETARMA and approved by the BETA Council. The Contract is intended to be interpreted in accordance with the usual rules of contract law. Because, among other reasons, this Contract was negotiated at arm's length by parties of approximately equal bargaining power, any ambiguities that may be found are to be interpreted in an even-handed fashion in the manner most consistent with the relevant terms, conditions, and exclusions of the Contract. You should read this agreement carefully to determine the extent of the protection provided.  This Contract sets forth the four basic coverages in Sections 2 through 5. Section 6 sets forth the exclusions.  Section 7 sets forth common provisions that apply to the coverages. Amendments further expand or limit the coverages afforded.  You must read the entire Contract, including the amendments and the Certificate, carefully in order to understand your and BETARMA's obligations. Words or terms that are in **bold** print have a special meaning that is set forth in the Definitions section, Section 1. These definitions limit the protection this Contract provides.

**Any disputes with BETARMA under this Contract that cannot be resolved must be arbitrated as set forth in Section 7.  By accepting this Contract, you and BETARMA are agreeing to give up the right to court remedies, including a jury trial.  Except as provided by law, the Arbitrators' ruling will be final and binding on the parties, and rights of appeal are strictly limited.**

**This Contract affords Pollution Liability and Asbestos Liability Coverage by amendment on a claims-made-and-reported basis.  Coverage for Pollution Liability and Asbestos Liability is limited to liability only for those Claims that are first made during the Contract Period and reported to BETARMA in writing as soon as possible but in no event later than thirty (30) calendar days after the Contract Expiration Date.  Amounts incurred for Defense Expenses for such Claims are included within the Pollution Liability and Asbestos Liability Coverage Limits of Liability.  Pollution Liability and Asbestos Liability Coverage is limited to Occurrences that take place after the Retroactive Dates specified in the amendments.  The Pollution Liability and Asbestos Liability Coverage Limits of Liability are reduced by amounts incurred for Defense Expenses.  There may also be applicable Deductibles that the Member must pay before BETARMA is obligated to pay any sum, including Defense Expenses.**

## HEALTHCARE ENTITY COMPREHENSIVE LIABILITY COVERAGE CONTRACT

This Healthcare Entity Comprehensive Liability Coverage Contract comprises the following:

Page

CERTIFICATE OF PARTICIPATION

IMPORTANT NOTICES ................................................................................................................... II

SECTION 1 – DEFINITIONS ............................................................................................................ 1

SECTION 2 – HEALTHCARE ENTITY PROFESSIONAL LIABILITY (CLAIMS MADE AND REPORTED) 7

SECTION 3 – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (OCCURRENCE)...................... 9

SECTION 4 – PERSONAL INJURY, ADVERTISING INJURY AND DISCRIMINATION LIABILITY
(OCCURRENCE) ............................................................................................................... 10

SECTION 5 – EMPLOYEE BENEFIT LIABILITY (OCCURRENCE) ........................................................ 11

SECTION 6 – EXCLUSIONS ........................................................................................................... 12

SECTION 7 – PROVISIONS APPLICABLE TO ALL COVERAGES ........................................................ 19

   1.  WHO IS PROTECTED UNDER THIS CONTRACT ........................................................ 19
   2.  OTHER PERSONS AND ENTITIES ELIGIBLE FOR PROTECTION UNDER THIS CONTRACT. 21
   3.  COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS ............... 21
   4.  SEPARATION OF MEMBERS' INTERESTS ................................................................. 21
   5.  WHERE THIS CONTRACT PROVIDES PROTECTION.................................................... 22
   6.  BETARMA'S DUTY TO DEFEND................................................................................. 22
   7.  THE TOTAL BETARMA WILL PAY ............................................................................. 22
   8.  ADDITIONAL AMOUNTS BETARMA WILL PAY ........................................................... 23
   9.  PAYMENTS REQUIRED FROM MEMBERS AND BETARMA'S RIGHT TO AUDIT ................ 23
10.  MEMBERS' DUTIES IN THE EVENT OF OCCURRENCE OR CLAIM.................................. 25
11.  SETTLEMENT OF CLAIMS AND PAYMENT OF JUDGMENTS ......................................... 26
12.  DISPUTES WITH BETARMA...................................................................................... 26
13.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETARMA ...................... 28
14.  APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO HAVE...... 28
15.  DELEGATION BY BETARMA AND ASSIGNMENT BY MEMBERS ..................................... 28
16.  GOVERNING LAW ................................................................................................... 29
17.  THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE ............................... 29
18.  EFFECTIVE DATE OF THIS CONTRACT ..................................................................... 29
19.  TERMINATION OF THIS CONTRACT .......................................................................... 29
20.  LIMITED RIGHT TO EXTENDED REPORTING PERIOD .................................................. 30
21.  MEMBERS' AUTHORIZATION AND NOTICES TO MEMBERS ......................................... 30
22.  LIMITS ON HOW THIS CONTRACT CAN BE CHANGED ................................................ 31
23.  MEMBERS' REPRESENTATIONS ON WHICH BETARMA RELIED .................................. 31
24.  NON-RENEWAL OF THIS CONTRACT ....................................................................... 31

AMENDMENTS

APPLICATION

BETA<small>RMA</small> and all **Members**, subject to all of the terms, conditions and limitations of this Contract, agree as follows:

## SECTION 1 – DEFINITIONS

1. **Advertising Injury** means injury arising out of one or more of the following offenses in the advertising of the **Named Member's** or **Subsidiary's** work or products:

   A. oral or written publication of material that slanders or libels a person or organization;

   B. oral or written publication of materials that disparages a person's or organization's goods, products or services;

   C. oral or written publication of material that violates an individual's right of privacy;

   D. unauthorized taking of advertising ideas or style of business; or

   E. infringement of copyright, trade dress or slogan.

2. **Automobile** means a motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached equipment or machinery, but **Automobile** does not include **Mobile Equipment**.

3. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. **Bodily Injury** includes mental anguish, mental injury or shock sustained by that person as a result of such bodily injury, sickness or disease.

   For purposes of Section 2 only, **Bodily Injury** includes a bystander's mental anguish, mental injury, shock, fright or death resulting from physical injury, sickness or disease of another.

4. **Certified Act of Terrorism** means a Certified Act of Terrorism, as defined under the federal Terrorism Risk Insurance Act of 2002 or as it may be amended from time to time.

5. **Claim** means a:

   A. A written demand for damages, including:

      (1) service of suit or institution of arbitration proceedings against a **Member**; or

      (2) a demand made under an applicable claim statute, signed by or on behalf of one alleged to have been damaged by a **Member**.

   B. Written notice to BETA<small>RMA</small> of specific circumstances involving injury to a particular person or organization that may reasonably be expected to give rise to a **Claim** against a **Member**, provided the **Member** becomes aware during the **Contract Period** of an act, error or omission that may reasonably be expected to give rise to a **Claim** against a **Member** to which Section 2- Healthcare Entity Professional Liability applies, and the **Member** reports to BETA<small>RMA</small> in writing the names of any injured parties, witnesses, the manner in which the **Member** first became aware of the act, error or omission. Any **Claim** subsequently arising from such reported act, error or omission, shall be deemed to be a **Claim** made during the **Contract Period** in which the act, error or omission was first duly reported to BETA<small>RMA</small>.

   For purposes of Section 2.2, **Claim** also means a writ of administrative mandamus under Section 1094.5 of the California Code of Civil Procedure.

   Internal incident reports sent to BETA<small>RMA</small> and trending reports, quarterly claim reports and other data collection reports shall not be considered a **Claim**.

Two or more **Claims** arising out of a single **Occurrence** or an act, error, omission or offense or a series of related **Occurrences**, acts, errors, omissions or offenses shall be treated as a single **Claim**. **Occurrences**, acts, errors, omissions and offenses are related if they share a causal connection or have as a common nexus any event or transaction or series of events or transactions.  When two or more **Claims** are treated as a single **Claim**, the single **Claim** shall be considered first made when the earliest of the **Claims** is first made.

However, no **Claim** shall be deemed first made during the **Contract Period** if:

C.   the **Claim** or incident was reported before the Effective Date of this Contract to BETA<sub>RMA</sub> or to any liability insurer; or

D.   any **Member** had knowledge prior to the Effective Date of facts or circumstances that would cause a reasonable person to believe that a **Claim** might be made.

6.   **Claimant** means the person or entity who asserts a **Claim**.

7.   **Contract Period** means the time period from the Effective Date to the Expiration Date, as specified in the Certificate, or to any earlier termination date, and not including any extended reporting period.

8.   **Covered Location** means:

A.   any location identified in the Certificate or by amendment; or

B.   any location in the state of California, newly owned, occupied, rented, used or controlled by the **Named Member** or a **Subsidiary**; however:

(1)   coverage is afforded only until the thirtieth (30th) calendar day after possession begins or the end of the **Contract Period**, whichever is earlier; and

(2)   coverage will be extended beyond the thirtieth (30th) calendar day only upon the **Named Member's** or **Subsidiary's** submission of such underwriting information as may be required by BETA<sub>RMA</sub>, BETA<sub>RMA</sub>'s issuance of an amendment extending coverage at the location, and timely payment of the Contribution specified by BETA<sub>RMA</sub>.

9.   **Defense Expenses** includes the following expenses resulting from the investigation, adjustment, defense and appeal of a covered **Claim**, if incurred by BETA<sub>RMA</sub> or by the **Member** with the prior written consent of BETA<sub>RMA</sub>:

A.   fees, costs and expenses charged by an attorney or other person or organization designated by BETA<sub>RMA</sub>; and

B.   all other fees, costs and expenses, including, but not limited to, expenses incurred by independent contractors or vendors.

**Defense Expenses** does not include salaries or expenses of the **Member's** or BETA<sub>RMA</sub>'s employees or officials, or the **Member's** unpaid patient or other bills.

10.   **Economic Damages** means financial loss and does not include damages arising from **Bodily Injury** or **Property Damage**.

11.   **Employee Benefit Program** means group or individual life insurance, accident and health insurance, profit sharing or savings plan, pension or retirement plan, salary reduction or deferral plan, employee stock subscription plan, workers' compensation, unemployment insurance, social security and disability benefits plan or insurance, plan to pay medical, dental, vision or drug claims, or any other similar plan provided, in whole or part, or administered by the **Named Member** for its employee(s) and their dependents.

12.   **Employment Practices Liability** means:

A. any actual or alleged act or omission by any **Member** related to the employment of the **Claimant**, including, but not limited to, recruiting, interviewing, hiring, declining to hire, assigning, reassigning, granting or placing on leave, performance reviews, promotion, training, transfer, disciplinary action, demotion, supervision, layoff and termination of the **Claimant** as an employee or as an independent contractor;

B. any actual or alleged acts of wrongful discharge, unlawful discrimination or harassment in employment, and any other act or omission prohibited by any statute regulating employment practices;

C. any actual or alleged **Retaliation**; or

D. any actual or alleged **Advertising Injury** or **Personal Injury** alleged or suffered by any employee or former employee of the **Named Member** or a **Subsidiary**.

However, "**Employment Practices Liability**" does not include any actual or alleged act or omission by any **Member** related to any **Employee Benefit Program**.

13. **Fungi** means any type or forms of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **Fungi.**

14. **Hazardous Properties** includes radioactive, toxic or explosive properties.

15. **Member** means a person or entity identified in Section 7.1 or to whom coverage is extended under Section 7.2.

16. **Mobile Equipment** means any of the following types of land vehicles, including any attached equipment or machinery:

A. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B. vehicles maintained for use solely on or next to premises the **Named Member** or **Subsidiary** owns or rents;

C. vehicles that travel on crawler treads;

D. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) power cranes, shovels, loaders, diggers or drills; or

(2) road construction or resurfacing equipment such as graders, scrapers or rollers;

E. vehicles not described in clauses A, B, C, or D above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) cherry pickers and similar devices used to raise or lower workers;

F. vehicles not described in clauses A, B, C, or D above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Automobiles**:

(1) equipment designed primarily for:

    a.   snow removal;

    b.   road maintenance, but not construction or resurfacing;

    c.   street cleaning;

  (2)  cherry pickers and similar devices mounted on **Automobile** chassis and used to raise or lower workers;

  (3)  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

17. **Named Member** means the organization specified as such in the Certificate.

18. **Nuclear Facility** means:

  A.  any **Nuclear Reactor**;

  B.  any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing **Spent Fuel**, or handling, processing or packaging **Nuclear Waste**;

  C.  any equipment or device used for the processing, fabricating or alloying of **Nuclear Material** if at any time the total amount of such material in the **Member's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

  D.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Nuclear Waste**, including the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

19. **Nuclear Material** means Source Material, Special Nuclear Material or By-Product Material, as defined under the federal Atomic Energy Act of 1954 or in any amendment thereto.

20. **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

21. **Nuclear Waste** means any material containing By-Product Material and resulting from the operation by any person or organization of any **Nuclear Facility**.

22. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which is neither expected nor intended by the **Member**.

23. **Personal Information** includes any information defined as "individually identifiable health information," "medical information", "personal information" or "personally identifying information" in the Health Insurance Portability and Accountability Act of 1996 or the California Civil Code, as amended from time to time, or in any regulations adopted thereunder.

24. **Personal Injury** means injury arising out of one or more of the following offenses resulting from the **Named Member's** or **Subsidiary's** business activities:

  A.  false arrest, detention or imprisonment;

  B.  malicious prosecution;

  C.  the wrongful eviction from, wrongful entry into, or invasion of the right of public or private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

  D.  oral or written publication of material that slanders or libels a person or organization or disparages

a person's or organization's goods, products or services; or

    E.   an invasion that violates a person's right of privacy.

25.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**.  **Pollutants** include indoor **Pollutants**.

26.  **Privacy Breach Wrongful Act** means: (a) any actual or alleged failure to safeguard or to prevent unauthorized access to or use or disclosure of any **Personal Information**, including any access, use or disclosure that exceeds authorization, (b) failure to give notification of an actual or potential unauthorized access to, or use or disclosure of, any **Personal Information**.

27.  **Product** means goods or products manufactured, sold, handled or distributed by the **Member**.

28.  **Professional Services** means:

    A.   medical, surgical, dental or nursing or other healthcare services or treatment to a patient, including custodial care and the furnishing of food or beverages in connection with the treatment;

    B.   the furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances to a patient if the injury occurs after the **Member** has relinquished possession thereof;

    C.   healthcare research involving a patient, study participant or trial participant, if, before the research was commenced, the **Named Member** or **Subsidiary's** Institutional Review Board approved the research study or trial;

    D.   the handling or performing of post-mortem examinations on human bodies; or

    E.   services by any person as a member of the **Named Member's** or **Subsidiary's** formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee.

29.  **Property Damage** means:

    A.   physical injury to tangible property, including resulting loss of use of that property; or

    B.   loss of use of tangible property that is not physically injured.

30.  **Retroactive Date** is the date so specified on the Certificate.  The **Retroactive Date** applies only to coverages provided on a claims made and reported basis.  No coverage is provided by this Contract with regard to any act, error, omission or **Occurrence** or offense happening prior to the **Retroactive Date**.

31.  **Spent Fuel** means any fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

32.  **Subsidiary** means any of the following:

    A.   any corporate, general partnership or limited-liability-company affiliate of the **Named Member** listed as a **Subsidiary** in the Certificate or an amendment;

    B.   any foundation the sole activity of which is to provide financial support to the **Named Member**; or

    C.   any nonprofit corporation affiliated with the **Named Member** and created pursuant to Section 32121(p) of the Health and Safety Code to which the **Named Member** has transferred assets.

33.  **Supplemental Member** means a person or entity to whom coverage is extended under Section 7.2.

34. **Terrorism** means a **Certified Act of Terrorism** or acts of any person or organization against any persons, organization or property of any nature:

   A.  that involve the following or preparation for the following:

      (1)  use or threat of force or violence; or

      (2)  commission or threat of a dangerous act; or

      (3)  commission or threat of an act that interferes with or disrupts an electronic communication, information, or mechanical system; and

   B.  when either or both of the following applies:

      (1)  the effect is to intimidate or coerce a government or the civilian population or any segment of the public, or to disrupt any segment of the economy; or

      (2)  it appears that the intent is to influence, intimidate or coerce a government, or any segment of the public, or to further political, ideological, religious, social, economic or similar objectives or to express (or express opposition to) a philosophy or ideology.

35. **Volunteer** means any person or group, such as an auxiliary, whose services or labor are uncompensated from any source, are accepted or directed by the **Named Member** or any **Subsidiary**, and who is not a healthcare professional rendering **Professional Services** which require licensing or other certification.

36. **Waste** includes materials to be disposed of, recycled, reconditioned or reclaimed, including, but not limited to, used, expired or disposed of medical and pharmaceutical supplies.

---

## SECTION 2 – HEALTHCARE ENTITY PROFESSIONAL LIABILITY
### (This coverage is provided on a claims made and reported basis.)

---

**WHAT BETA**RMA **WILL PAY SUBJECT TO THE EXCLUSIONS IN SECTION 6 AND THE TOTAL BETA**RMA **WILL PAY IN SECTION 7:**

1.  BETARMA will pay those sums which the **Member** is legally required to pay as damages for a **Claim** for **Bodily Injury**, **Property Damage** or **Economic Damages** arising out of the **Member's** negligence in the rendering of, or failure to render, **Professional Services:**

    A.  on or after the **Retroactive Date**; and

    B.  at a **Covered Location**; and provided that

    C.  the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETARMA as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

2.  BETARMA will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising from a negligent act, error or omission resulting in actual or alleged denial, suspension, revocation, termination or limitation of medical staff privileges, provided that the effective date of the first denial, suspension, revocation, termination or limitation of staff privileges that is a basis of the **Claimant's Claim** occurs on or after the **Retroactive Date**.  This coverage applies only if the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETARMA as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.  BETARMA will defend, but will not indemnify, a **Claim** that is otherwise covered under this Section, but alleges an intentional act, error or omission.

3.  BETARMA will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising from reckless neglect within the meaning of the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and Institutions Code, Section 15600, et seq., in the rendering of, or failure to render **Professional Services** on or after the **Retroactive Date**, at a **Covered Location**. This coverage applies only if the **Claim** is first made against the **Member** during the **Contract Period** and is reported in writing to BETARMA as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

4.  BETARMA will pay those sums which the **Member** is legally required to pay as damages for a **Claim** arising out of the following offenses:

    A.  discrimination based upon, without limitation, an individual's race, ethnicity, ancestry, national origin, citizenship, religion, age, sex, sexual orientation or preference, pregnancy, preexisting medical condition, physical or mental disability or handicap, insurance status, economic status or ability to pay for medical services, and

    B.  sexual abuse, assault, battery, harassment or molestation

    if the **Claimant's** injury arises out of the **Member's** negligence in rendering of, or failure to render, **Professional Services** on or after the **Retroactive Date**; and at a **Covered Location**; and provided that the **Claim** is first made against the **Member** during the **Contract Period** but in no event later than thirty (30) calendar days after termination of the **Contract Period**.

    BETARMA will defend, but will not indemnify, a **Claim** that is otherwise covered under this Section, but alleges an intentional act or omission.

5.  BETARMA has the right and duty to defend any covered **Claim** brought against the **Member**.  This means that BETARMA will pay all reasonable **Defense Expenses** incurred in defending the **Claim**.

6.  Only upon the **Named Member's** or **Subsidiary's** specific written request, and subject to BETA<small>RMA</small>'s sole, absolute and unreviewable discretion, BETA<small>RMA</small> will pay reasonable **Defense Expenses** for a criminal action or proceeding brought by a law enforcement agency against the **Named Member's** or **Subsidiary's** employee alleging **Bodily Injury** or **Property Damage** caused by an **Occurrence** on or after the **Retroactive Date**.  This provision applies only if:

   A.  the criminal action or proceeding is first brought by a law enforcement agency against the **Named Member's** or **Subsidiary's** employee or employees during the **Contract Period** and is reported to BETA<small>RMA</small> as soon as possible during the **Contract Period** but in no event later than thirty (30) calendar days after the termination of the **Contract Period**;

   B.  the acts or omissions charged:

      (1)  occur only in the discharge of the employee's regular duties to the **Named Member** or **Subsidiary**; and

      (2)  arise solely and directly from the care and treatment of patients on the **Named Member's** or **Subsidiary's** behalf;

   C.  the **Named Member** or **Subsidiary** determines that the **Named Member's** or **Subsidiary's** defense of the criminal action or proceeding would be in the best interests of the **Named Member** or **Subsidiary** and that the employee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the **Named Member** or **Subsidiary**; and

   D.  such payment of **Defense Expenses** is permitted by law.

## SECTION 6 – EXCLUSIONS

**WHAT BETArma WILL NOT COVER:**

**EXCEPT AS OTHERWISE PROVIDED BELOW, THESE EXCLUSIONS APPLY REGARDLESS OF WHETHER ANY OTHER CAUSE, ACT, ERROR, OMISSION, EVENT, MATERIAL OR PRODUCT CONTRIBUTES CONCURRENTLY OR IN ANY SEQUENCE TO A CLAIMANT'S INJURY OR DAMAGE.**

**EXCLUSIONS THAT APPLY TO ALL COVERAGE SECTIONS**

1. This Contract does not apply to any **Claim** for damages arising out of the breach of any contract or agreement or liability assumed by the **Member** under any contract or agreement, except that:

   A. this exclusion does not apply under Sections 2 and 3 as respects the **Member's** warranty of goods and **Products**, whether expressed or implied;

   B. this exclusion does not apply under Sections 2, 3 and 4 for liability arising out of a written agreement entered into before the **Occurrence** or offense under which the **Member** assumed the tort liability of others for injury to a third person or entity caused by the **Member's** negligence or other fault; and

   C. this exclusion does not apply under Sections 2, 3 and 4 for liability the **Member** would have had in the absence of the contract or agreement.

   Coverage is not provided for any liability resulting from guaranteeing the results of treatment.

2. This Contract does not apply to any **Claim** for or arising out of **Bodily Injury** (a) to any employee arising out of and in the course of that person's employment by any **Member**, or (b) to any **Volunteer** arising out of and in the course of that person's provision of services for any **Member**.  However, clause (b) shall not apply if such **Claim** is not covered under any workers' compensation insurance policy or self-insurance program.

3. This Contract does not apply to any **Claim** for which the **Member** or any of the **Member's** insurance carriers may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law or any administrative interpretation of such laws.

4. This Contract does not apply to any liability of any person or entity:

   A. acting as an independent contractor for any **Member** or on any **Member's** behalf, except as provided in Section 7 or by amendment; or

   B. hired or employed by or on behalf of a patient.

5. This Contract does not apply to any injury that is expected or intended by the **Member**.  This exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

6. Except for the defense of criminal charges as provided in Section 2.6, this Contract does not apply to any **Claim** arising from or brought about or contributed to by the **Member's** dishonest, fraudulent, criminal or malicious acts or omissions, or to acts or omissions that an insurer could not indemnify under California Insurance Code Section 533.

7. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., or similar provisions of any federal, state or other statutory or common law or rule or regulation, including but

not limited to the Pension Trusts provisions of the California Government Code, Section 53215, et seq., all as they may be amended from time to time.

8. BETA<sub>RMA</sub> shall have no duty under this Contract to defend or indemnify any **Claim** alleging **Employment Practices Liability**. Notwithstanding any other provision of this Contract, if a **Claim** includes allegations that are potentially covered by this Contract and also **Employment Practices Liability** allegations and the **Named Member** does not participate in the **Employment Practices Liability** coverage offered by BETA<sub>RMA</sub>'s Directors, Officers and Trustees Liability Coverage Contract including Healthcare Entity Coverage, the **Named Member**, and not BETA<sub>RMA</sub>, shall be responsible for **Defense Expenses** on account of defending the **Employment Practices Liability** portion of the **Claim**. If the **Named Member** does not have **Employment Practices Liability** insurance coverage, BETA<sub>RMA</sub> shall have the right but not the duty to defend the **Employment Practices Liability** portion of the **Claim**, subject to the **Named Member's** obligation to pay all **Defense Expenses** on account of defending the **Employment Practices Liability** portion of the **Claim**. The **Named Member** and BETA<sub>RMA</sub> shall use their best efforts to agree upon a fair and reasonable allocation of the share of **Defense Expenses** that each shall bear. Until the respective shares of the **Named Member** and BETA<sub>RMA</sub> are determined, BETA<sub>RMA</sub> shall make interim payments of all **Defense Expenses**, subject to the **Named Member's** obligation to reimburse BETA<sub>RMA</sub> for the **Named Member's** portion.

9. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly, on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of any federal, state or other statutory or common law (including but not limited to the Cartwright Act, California Business & Professions Code § 16600, et. seq., the Unfair Practices Act, Business & Professions Code § 17000, et. seq. and the Unfair Competition Act of the State of California, Business & Professions Code §§ 17200, et. seq. and 17500, et. seq and Title 15 of the United States Code, all as they may be amended from time to time) that prohibits the unlawful restraint of trade, business or profession, <u>except</u> any liability arising from actions brought against the **Member** by any person or persons alleging the improper or unlawful denial or restriction of medical staff privileges or alleging the **Member's** failure to act upon any application for such privileges.

10. This Contract does not apply to any **Claim** based, in whole or in part or directly or indirectly on, attributable to, arising out of, resulting from, or in any way related to any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities and Exchange Commission adopted thereunder, similar provisions of any federal, state or other statute regulating securities, all as they may be amended from time to time, any rules or regulations adopted pursuant thereto, or any other law, including common law, relating to securities.

11. This Contract does not apply to any **Claim** against an individual **Member** alleging, directly or indirectly or in whole or in part, that he or she committed sexual harassment or sexual abuse, assault, battery or molestation, unless:

    A.  the **Named Member** or **Subsidiary** has first entered into an agreement with the individual **Member** reserving the rights of the **Named Member** or **Subsidiary** not to pay any judgment, compromise or settlement until it is established that:  (a) the alleged injury arose out of an act or omission occurring within the scope of his or her duties to the **Named Member** or **Subsidiary**, and (b) the individual **Member** did not act because of fraud, corruption or actual malice; or

    B.  before undertaking to defend or indemnify the individual **Member**, the **Named Member** or **Subsidiary** has first determined, in good faith, that: (a) the alleged injury arose out of an act or omission occurring within the scope and course of his or her duties to the **Named Member** or **Subsidiary**, and (b) the individual **Member** did not act because of fraud, corruption or actual malice; and BETA<sub>RMA</sub> concurs with the **Named Member's** or **Subsidiary's** determinations.

12. BETA<sub>RMA</sub> will not pay any punitive or exemplary damages, fines, penalties, taxes, trebled damages or any other measure of damages exceeding actual compensatory damages.

13. This Contract does not apply to any **Claim** arising, directly or indirectly, in whole or in part from the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or

presence of **Fungi** or bacteria at or from any premise, site or location, including its contents, which is or was at any time owned or occupied by, or rented or loaned to, any **Member**, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This exclusion does not apply to Section 2 or to any **Fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

14. Except to the extent such coverage is extended by amendment, this Contract does not apply to any **Claim** arising in whole or in part from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

A.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Member**;

B.  at or from any premises, site or location which is or was at any time used by or for any **Member** or others for the handling, storage, disposal, processing or treatment of **Waste**;

C.  which are or were at any time transported, handled, stored, treated, disposed of, or processed as **Waste** by or for any **Member** or any person or organization for whom the **Member** may be legally responsible; or

D.  at or from any premises, site or location on which any **Member** or any contractors or subcontractors working directly or indirectly on any **Member's** behalf are performing operations:

   (1)  if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Member**, contractor or subcontractor; or

   (2)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**.

   Clause D (1) does not apply to **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such **Member**, contractor or subcontractor.

   Clauses A and D(1) do not apply to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a hostile fire.  A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

15. Except to the extent such coverage is extended by amendment, this Contract does not apply to any loss, cost or expense arising out of any:

A.  request, demand or order that any **Member** or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, remediate, dispose or in any way respond to, or assess the effects of **Pollutants, Fungi** or bacteria; or

B.  **Claim** or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

16. BETA<sub>RMA</sub> will not pay for equitable remedies or the costs of complying with equitable remedies, governmental requests, directives, orders or recommendations.  (Examples of equitable remedies

include injunctions, restitution, disgorgement, declaratory relief, constructive trust, and rescission, reformation or specific performance of a contract.)

17. This Contract does not apply to any **Claim** that directly or indirectly or in whole or in part arises out of, results from, is based on, or alleges ownership, management, operation or control of any Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or other similar organization.  However, the exclusion does not apply to the **Member's** participation solely as a provider of healthcare services to a Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or similar organization not owned, managed or controlled by a **Member**.

18. This Contract does not apply to any **Claim** that directly or indirectly, arises out of, results from, is based on or alleges any liability or injury that is in any way connected with the practice of reuse or reprocessing of medical devices (sometimes referred to as single-use devices or SUDs) that are labeled, designated or intended for one time use.  However, BETA<sub>RMA</sub> has the right but not the duty to defend such a **Claim.**

19. This Contract does not apply to any **Claim** for injury or damage arising out of, attributable to, resulting from, or in any way related to directly or indirectly, Telemedicine, if the patient is outside of the state of California, or if the **Claim** or suit is brought outside of the state of California.  Telemedicine means the use of telecommunication, excluding telephone communications, to provide medical information or **Professional Services.**

20. This Contract does not apply to any **Claim** arising, directly or indirectly, in whole or in part, out of, attributable to, resulting from, or in any way related to:

    A.  war, including undeclared or civil war; or

    B.  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    C.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

    D.  the discharge of a nuclear weapon, even if it is accidental; or

    E.  **Terrorism**, including any action taken in hindering or defending against an actual or expected incident of **Terrorism**.

    This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

    However, this exclusion does not apply to a **Claim** based solely on a **Member's** alleged negligence in rendering or failing to render **Professional Services** to a victim of **Terrorism** or other acts specified in Clauses A through D above.

21. This Contract does not apply to any **Claim** based upon or attributable to or resulting from pricing, charges, rates or billing for service or goods, including but not limited to, actual or alleged unfair, unreasonable, unlawful or excessive prices, charges, rates or billings.

22. This Contract does not apply to any **Claim** for actual or alleged injury or damage arising out of, attributable to, resulting from, or in any way related to, directly or indirectly, any of the following:

    A.  any actual or alleged **Professional Services** for which the **Member** does not hold the license or certificate required by law at the time and place where the **Member** renders or fails to render such **Professional Services.** However, this exclusion shall not apply if at that time the **Member** reasonably believed in good faith that the **Member** possessed the required license or certificate and the **Member** provides documentation satisfactory to BETA<sub>RMA</sub> that substantiates such belief.

B. any facility or equipment operated by any **Member,** or operated pursuant to any contract with any **Member,** for which all licenses and permits required by law have not been secured as of the date of the **Occurrence** (under Section 3), negligent act, error or omission (under Section 2 and 5), or offense (under Section 4).

A license or permit will be deemed to have been secured and held as of the date of the application for it, if the application was made prior to the date of such **Occurrence**, act, error or omission, or offense, and such application was granted within sixty (60) calendar days following the date of the **Occurrence**, act, error or omission or offense.

23. Except to the extent such coverage is extended by amendment, this Contract does not apply to any **Claim** that, directly or indirectly or in whole or in part, arises out of any **Product** developed or created through healthcare research conducted by any **Member**.

24. This Contract does not apply to any damages directly or indirectly arising out of, resulting from or in any way related to any **Privacy Breach Wrongful Act**.

**EXCLUSIONS THAT APPLY TO SPECIFIC COVERAGE SECTIONS**

25. Sections 2 and 3 of this Contract do not apply to any **Claim** arising out of any **Member's** ownership, maintenance, use or entrustment to others of any **Automobile**, watercraft, helicopter or aircraft or the loading or unloading thereof, except for the loading and unloading of patients by a **Member**.  This exclusion does not apply to:

A. **Property Damage** to **Mobile Equipment**

B. **Property Damage** to an **Automobile** while it is parked or when being parked on, or on the ways immediately next to, premises that the **Named Member** or **Subsidiary** owns or rents.  Coverage for such **Property Damage** will be provided subject to a deductible of $500 per **Occurrence** and is not subject to Exclusion 26. If a **Claim** described in this exception includes both **Bodily Injury** and **Property Damage**, only the highest applicable deductible will apply, unless the Certificate of Participation specifies a $0 deductible, in which case a $0 deductible will apply.

C. **Bodily Injury** or **Property Damage** resulting from negligent maintenance of a helipad that the **Named Member** or a **Subsidiary** owns or leases.

26. Section 2 and 3 of this Contract do not apply to any **Claim** for **Property Damage** to any of the following:

A. property any **Member** owns, rents, occupies, or holds for sale or safekeeping;

B. property any **Member** controls, or plans to install, erect or use in construction;

C. premises any **Member** sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises;

D. personal property in any **Member's** care, custody or control;

E. that particular part of real property on which any **Member**, or any contractor or subcontractor working directly or indirectly for any **Member**, is working, if the **Property Damage** results from that work; or

F. that particular part of any property that must be restored, repaired or replaced because of faulty workmanship by any **Member** or on any **Member's** behalf.

Clauses B, D, E and F will not apply to liability for damage to the above property assumed under an elevator service agreement.  Also, this exclusion does not apply to damage to property of others

caused by an elevator on the **Named Member's** or **Subsidiary's** premises.  However, damage to the elevator itself is not covered.

Clauses B, D, E and F will also not apply to liability for damage to patients' property.

27. Section 3 of this Contract does not cover **Bodily Injury** or **Property Damage** arising out of rendering or failure to render **Professional Services**.

28. Sections 2, 3, and 4 of this Contract do not apply to any **Bodily Injury** or **Property Damage** resulting from the loss of use, recall or withdrawal, adjustment, inspection, repair or replacement, removal or disposal of any **Member's Product** from the market or from use by anyone for any reason.

29. Section 3 of this Contract does not apply to any **Bodily Injury** or **Property Damage** with respect to which the **Member** is also an insured under a nuclear energy policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

30. Section 3 of this Contract does not apply to any **Bodily Injury** or **Property Damage** (including, but not limited to, all forms of radioactive contamination of property) caused in whole or in part by the **Hazardous Properties** of **Nuclear Material** under any of the following circumstances:

    A.  if any **Member** is required to maintain financial protection for nuclear events, or any **Member** is entitled, or would have been entitled had this Contract not been issued, to indemnity for nuclear events from the United States of America;

    B.  the **Nuclear Material** is located at, or is discharged or dispersed from, any **Nuclear Facility** owned or operated by or on behalf of any **Member**;

    C.  the **Nuclear Material** is contained in **Spent Fuel** or **Nuclear Waste** that has at any time been possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any **Member**; or

    D.  the **Bodily Injury** or **Property Damage** arises out of services, materials, parts or equipment any **Member** furnishes in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**.  If the **Nuclear Facility** is in the United States of America, its territories or possessions or Canada, this clause D applies only to **Property Damage** to or at the **Nuclear Facility**.

    This exclusion does not apply to liability arising out of the practicing of nuclear medicine and activities related to nuclear medicine by the **Member**.

31. Section 4 of this Contract does not apply to any oral or written publication of false material by the **Member** or at the **Member's** direction with knowledge of its falsity.

32. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** if the first oral or written publication was made prior to the first date BETA<sub>RMA</sub> provided the **Member** uninterrupted coverage.

33. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** alleging:

    A.  the failure of goods, products or services to conform with advertised quality or performance; or

    B.  the false or misleading description of the price of goods, products or services.

34. Section 4 of this Contract does not apply to any **Claim** asserted by, on behalf of, with the assistance of or at the behest of any of the following persons or organizations: the **Named Member**, a **Subsidiary**, or any present or former director, trustee, officer, administrator, manager, department head, employee, **Volunteer** or member of a committee of the **Named Member** or a **Subsidiary**.

35. Section 4 of this Contract does not apply to any **Claim** for **Personal Injury** or **Advertising Injury** if the **Named Member** or any **Subsidiary** is in the business of advertising, broadcasting, publishing or telecasting.

36. Section 3 and 4.2 of this Contract do not apply to: (a) a denial, suspension, revocation, termination or limitation of medical staff privileges, or (b) any **Claim** by a patient, resident of a **Member's** facility or a person seeking care or treatment. However, clause (b) does not apply to sexual abuse, assault, battery, harassment, or molestation if the alleged perpetrator is a visitor, vendor, custodian, security guard or a person not covered by BETA<small>RMA</small> and the incident is not directly related to the rendering or failure to render **Professional Services**.

37. Section 5 of this Contract does not apply to any **Claim**:

    A. based in whole or in part on the termination of any **Employee Benefit Program**;

    B. alleging that a **Member** gained any personal profit or advantage to which that **Member** is not entitled;

    C. arising out of any **Member's** liability to return remuneration paid to that **Member** in violation of any law; or

    D. alleging fiduciary liability associated with any **Employee Benefit Program**.

38. Section 5 of this Contract does not apply to any **Claim** based upon or attributable to:

    A. investing, reinvesting, purchasing, acquiring, exchanging, selling, managing, handling or holding funds, including but not limited to liability under Section 53600.3 of the California Government Code;

    B. failure of investments or securities to perform as represented;

    C. advice given to participate or not participate in any **Employee Benefit Program**;

    D. failure to provide benefits because they are unfunded or not properly funded;

    E. any failure to effect and/or maintain insurance;

    F. any insurance company's failure to comply with the terms of its contract; or

    G. the insolvency of any insurance company.

## SECTION 7 – PROVISIONS APPLICABLE TO ALL COVERAGES

1. **WHO IS PROTECTED UNDER THIS CONTRACT**

   A. The term **Member** refers to the **Named Member** and each **Subsidiary** identified in the Certificate or by amendment, and each of the following persons, but only with respect to his or her legal liability when acting within the course and scope of his or her duties to the **Named Member** or **Subsidiary** and only to the extent the **Named Member** or **Subsidiary** is permitted or required by law to indemnify him or her:

      (1) any member of the board of directors or board of trustees, and any officer, administrator or department head of the **Named Member** or **Subsidiary**;

      (2) any employee (other than a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife) or **Volunteer** of the **Named Member** or **Subsidiary**;

      (3) any medical director, but only when performing teaching or administrative duties and not in connection with any **Direct Patient Care**; and

      (4) any member of the **Named Member's** or **Subsidiary's** medical staff when involved in the following, other than in connection with any **Direct Patient Care**:

         (a) any **Supervisory, Evaluation or Instructional Services** with respect to employees, trainees or medical staff members or applicants of the **Named Member** or **Subsidiary**, including proctoring of any medical staff member or applicant.

         (b) any **Supervisory, Evaluation or Instructional Services** with respect to residents, paramedics, trainees, members of the medical staff or applicants for medical staff membership or privileges.

         (c) Healthcare research, if before the research was commenced, the **Named Member** or **Subsidiary's** Institutional Review Board approved the research study or trial.

         Coverage will be extended to a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife for acts or omissions relating to or in connection with **Direct Patient Care**, including but not limited to healthcare research in connection with **Direct Patient Care**, only upon compliance with the requirements specified in Section 7.1.A.(8) below and BETArma's issuance of a certificate evidencing such coverage.

         **Direct Patient Care** includes, but is not limited to, any direct treatment, consultation, diagnostic tests or procedures, therapeutic procedures, pathological analysis or reports, or any other associated medical or health services.

         **Supervisory, Evaluation or Instructional Services** means that supervision, evaluation or instruction required by the **Named Member** or **Subsidiary** or as an obligation of medical staff membership and for which the staff physician volunteers or is paid for such services by the **Named Member** or **Subsidiary**.  The fact that the patient may also be obligated to pay for **Professional Services** rendered to the patient in the course of **Supervisory, Evaluation or Instructional Services** shall not reduce the coverage for a medical staff member's service solely as a proctor.

      (5) the **Named Member's** or **Subsidiary's** employee for any act, error or omission committed by a person whom he or she is supervising or proctoring.

(6)  any person:

    (a)  when acting as a member of or unpaid advisor to the **Named Member's** or a **Subsidiary's** board or any committee;

    (b)  when acting as a member of any committee of the **Named Member's** or a **Subsidiary's** medical or professional staff;

    (c)  when communicating information (other than legal advice) to the **Named Member** or a **Subsidiary** or its medical or professional staff for the purpose of aiding in the evaluation of the qualifications, fitness or character of an applicant for membership or privileges on such medical or professional staff or for purposes of initiating corrective action; or

    (d)  charged by the **Named Member** or a **Subsidiary** with the duty of acting as a hearing officer or agent of a judicial review committee executing directives of any such board or committee.  These individuals are not deemed to be independent contractors for the purpose of this Contract.  This provision does not apply to any settlement review panel or arbitration under any insurance or coverage contract.

(7)  any person (other than a physician, surgeon, dentist, physician assistant, nurse anesthetists, nurse practitioner or nurse midwife) enrolled as a student in a formal training program offered by the **Named Member** or a **Subsidiary** or offered by a third party educational institution at a **Covered Location** pursuant to a written agreement with the **Named Member** or **Subsidiary**. However, coverage shall not apply if the third party educational institution has agreed in writing to obtain liability coverage for the students.

(8)  any physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife ("healthcare professional") who is employed by the **Named Member** or **Subsidiary** or provides **Professional Services** to the **Named Member** or **Subsidiary** on an independent contractor basis, subject, however, to the following:

    (a)  the healthcare professional must possess the proper credentials and the **Named Member** or **Subsidiary** must have appropriately granted privileges to the healthcare professional, if required at the applicable **Covered Location**;

    (b)  coverage is afforded only until the fifth (5th) calendar day after the healthcare professional's hire date or the effective date of his or her contract with the **Named Member** or **Subsidiary** or the termination of the **Contract Period**, whichever is earlier; and

    (c)  coverage will be extended beyond the fifth (5th) calendar day only upon the **Named Member's** or **Subsidiary's** submission of such underwriting information as may be required by BETAʀᴍᴀ, BETAʀᴍᴀ's issuance of a certificate evidencing coverage for the healthcare professional, and timely payment of the Contribution specified by BETAʀᴍᴀ.

If these requirements are not met or the healthcare professional is not deemed to be an acceptable underwriting risk by BETAʀᴍᴀ, the healthcare professional will have no coverage beyond the fifth (5th) calendar day.

(9)  the estates, heirs, executors, administrators and legal representatives of any individual **Member** in the event of the **Member's** death, but only to the extent the **Member** would otherwise be provided coverage under this Contract.

(10)  any individual who previously qualified as a **Member** under clauses (1) through (8) above prior to the termination of his or her relationship with the **Named Member** or **Subsidiary**, but only for **Claims** alleging acts or omissions occurring prior to the termination of the relationship specified in those subsections.

B.   If the **Named Member** or a **Subsidiary** is a limited liability company, the following are **Members**, but only to the extent that **Named Member** or **Subsidiary** is permitted or required by law to indemnify them:

(1)   its members, but only with respect to the conduct of its business; and

(2)   its managers, but only when acting within the course and scope of their duties to the **Named Member** or **Subsidiary**.

## 2.   OTHER PERSONS AND ENTITIES ELIGIBLE FOR PROTECTION UNDER THIS CONTRACT

The following persons and entities are covered as **Supplemental Members** under this Contract, subject to all of its terms and conditions, except any provision which is stated not to apply to **Supplemental Members**:

A.   the Lessor of equipment the **Named Member** or a **Subsidiary** leases, but only for **Bodily Injury** and **Property Damage** resulting solely from the acts, errors or omissions of the **Named Member** or **Subsidiary** in its use of the leased equipment. This extension of coverage applies only to Sections 2 and 3. This Contract does not apply to any **Bodily Injury** or **Property Damage** arising out of the acts, errors or omissions of the lessor or its agents or employees.

B.   the Lessor of premises the **Named Member** or a **Subsidiary** leases, but only for **Bodily Injury** and **Property Damage** resulting solely from the acts, errors or omissions of the **Named Member** or **Subsidiary** in its use of the leased premises. This extension of coverage applies only to Sections 2 and 3. This Contract does not apply to any **Bodily Injury** or **Property Damage** arising out of the acts, errors or omissions of the lessor or its agents or employees.

C.   any **Supplemental Member** to whom coverage is extended by amendment.

## 3.   COVERAGE IN THE EVENT OF ACQUISITIONS, MERGERS AND DISSOLUTIONS

A.   If the **Named Member** or **Subsidiary** acquires or forms any organization, other than a partnership or joint venture, over which the **Named Member** or **Subsidiary** maintains at least fifty percent (50%) ownership or control, the organization will qualify as a **Subsidiary** under this Contract for acts or omissions committed or begun on or after the date that the **Named Member** or **Subsidiary** acquired or formed the organization. However, coverage under this provision shall be in excess of any other valid and collectible insurance or other coverage available to the organization. Coverage under this provision is afforded only until the thirtieth (30th) calendar day after the **Named Member** or **Subsidiary** acquires or forms the organization or the end of the **Contract Period**, whichever is earlier.

B.   If, before or during the **Contract Period**, the **Named Member** or any **Subsidiary** is acquired by or merged with any other entity, or dissolved, coverage for the acquired, merged or dissolved entity will terminate and will continue only for **Claims** against the directors, officers, trustees and other individual **Members** of such **Named Member** or **Subsidiary**, and only for acts or omissions committed prior to the acquisition, merger or dissolution.

"Coverage," as used in this section, includes the obligation to defend **Claims** and to pay **Defense Expenses** and indemnification.

## 4.   SEPARATION OF MEMBERS' INTERESTS

Except with respect to the Limit of Liability and any rights or duties specifically assigned to the first **Named Member**, this coverage applies:

A.   as if each **Member** were the only **Member**; and

B.   separately to each **Member** against whom a **Claim** is made.

5. **WHERE THIS CONTRACT PROVIDES PROTECTION**

Except as provided in Section 2.1, 2.3, 2.4 and Section 6.19, this Contract will apply anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada.  As for **Claims** that are brought outside of the United States of America, its territories or possessions, Puerto Rico or Canada, BETARMA shall have the right but not the obligation to investigate and settle such **Claims** and/or to defend such **Claims**.

6. **BETARMA'S DUTY TO DEFEND**

A. BETARMA will defend any covered **Claim** against a **Member**, even if the allegations of the suit are groundless, false or fraudulent.  BETARMA will defend a **Claim** if the facts alleged by the **Claimant** create a potential for liability within the coverage of this Contract, even if BETARMA's obligation to indemnify is doubtful and is not ultimately established.  BETARMA has no duty to defend any **Claim** that is not covered by this contract.

B. BETARMA has the exclusive right, using counsel of BETARMA's choice, to investigate, negotiate and defend any **Claim**.  Notwithstanding any other provision of this Contract, a reservation by BETARMA of the right not to cover certain causes of action, certain alleged acts or omissions or certain allegations of damage shall not entitle a **Member** to select defense counsel to be paid for by BETARMA, nor shall BETARMA be obligated to pay for separate, independent or additional defense counsel in such circumstances.

C. BETARMA, in its sole, absolute and unreviewable discretion, may prosecute any appeal by the **Member** from an adverse judgment.  If the **Member** chooses to appeal in spite of BETARMA's decision not to appeal, BETARMA shall have no obligation to pay for any costs of appeal, including attorneys' fees or bond premiums, and shall not be obligated to pay any post-judgment interest on the judgment even though these amounts may be within its Limit of Liability.

D. BETARMA shall not be obligated to pay any **Defense Expenses** or to defend or to continue to defend any **Claim**, or to take or to continue to prosecute any appeal, once an applicable Limit of Liability shown on the Certificate, by amendment, or elsewhere has been exhausted.

7. **THE TOTAL BETARMA WILL PAY**

A. The most BETARMA will pay for any one **Claim** is the per-**Claim** Limit of Liability specified in the Certificate or by amendment.  If the Certificate specifies a Deductible amount for "Indemnity Only", the deductible amount will reduce the amount that BETARMA will pay on account of damages for a **Claim**. If the Certificate specifies a Deductible amount for "Indemnity & Expense", the Deductible amount will reduce the amount that BETARMA will pay on account of both **Defense Expenses** and damages for a **Claim**. Except as otherwise provided by amendment, **Defense Expenses** paid by BETARMA are in addition to the per-**Claim** Limit of Liability.

B. In no event shall BETARMA be obligated to defend or to continue to defend any **Claim**, to take or prosecute any appeal or to make any additional payments, including **Defense Expenses**, once an applicable Limit of Liability shown on the Certificate, by amendment, or elsewhere has been exhausted by payments of judgments or settlements.

C. The inclusion in a **Claim** of more than one **Member** or the making of **Claims** or the bringing of suits by more than one **Claimant** shall not increase the Limit of Liability. If two or more coverages under this Contract apply to a **Claim** (including coverages added by amendment), the most that BETARMA will pay is the highest applicable Limit of Liability.

D. When two or more **Claims** are treated as a single **Claim** under the definition of "**Claim**," one Deductible and one Limit of Liability shall apply to all such **Claims**.

E. Limits of Liability under multiple BETARMA Contracts may not be combined, added or stacked. The Aggregate Limit of Liability is the most that BETARMA will pay, regardless of the number or

duration of any and all **Claims**, **Occurrences**, injuries, acts, errors, omissions, offenses or successive periods of coverage involved.

F. This provision applies only to coverages that are provided on an Occurrence basis. If **Bodily Injury**, **Property Damage**, **Economic Damages, Personal Injury**, **Advertising Injury** and discrimination**,** acts, errors, omissions or offenses (collectively, "Injuries and Events") occur over a period of time within the **Contract Period** of two or more BETAʀᴍᴀ Contracts, all such Injuries and Events shall be deemed to occur during the first such Contract, and the most that BETAʀᴍᴀ will pay is the applicable Limit of Liability specified in that Contract.

G. It is the intention of BETAʀᴍᴀ and the **Members** that this Contract and a BETAʀᴍᴀ Directors, Officers and Trustees Liability Coverage Contract including Healthcare Entity Coverage or a BETAʀᴍᴀ Automobile Liability and Physical Damage Coverage Contract between BETAʀᴍᴀ and **Members** shall not provide any duplication or overlap of coverage for the same **Claim**. Nonetheless, if both this Contract and another such BETAʀᴍᴀ Coverage Contract, including amendments, do apply to a **Claim**, the terms, conditions and exclusions, including the Deductible and the Limits of Liability, of each such Coverage Contract shall apply, provided, however, that in no event shall the **Member** pay more than the highest Deductible, nor shall BETAʀᴍᴀ pay more than the highest applicable Limit of Liability.

## 8.  ADDITIONAL AMOUNTS BETAʀᴍᴀ WILL PAY

BETAʀᴍᴀ will pay the following additional amounts:

A. the cost of bonds legally required to release attachments, but only for bond amounts within the Limit of Liability, and all premiums on appeal bonds required to appeal a covered judgment. BETAʀᴍᴀ does not, however, have to apply for or furnish these bonds.

B. all expenses incurred by BETAʀᴍᴀ.

C. all costs taxed against a **Member** on a covered cause of action.

D. all prejudgment and post-judgment interest on only the part of any judgment that BETAʀᴍᴀ pays, and before BETAʀᴍᴀ has paid, offered to pay, or deposited in the court the part of the judgment that is within BETAʀᴍᴀ's applicable Limit of Liability.

## 9.  PAYMENTS REQUIRED FROM MEMBERS AND RIGHT TO AUDIT

A. Contribution.

The **Named Member** shall pay a Contribution based on the estimated exposures that are calculated from the reported census the **Named Member** provided to BETAʀᴍᴀ on or before the beginning of the **Contract Period**.  BETAʀᴍᴀ shall inform the **Named Member** of its Contribution for the **Contract Period** and installment Contribution.  The **Named Member** shall pay each installment Contribution in full on or before the due date shown on the invoice.

If BETAʀᴍᴀ does not receive the full installment Contribution by the late date shown on the invoice, a penalty equal to five percent (5%) of the original installment Contribution due shall be added to the Contribution.  A 10-Day Notice of Cancellation shall be mailed to the **Named Member** on the first business day after the late date canceling coverage if BETAʀᴍᴀ does not receive the full installment Contribution, including the five percent (5%) penalty, by the cancellation date stated on the 10-Day Notice of Cancellation ("10-Day" shall equal ten (10) calendar days).  An additional penalty equal to five percent (5%) of the original installment Contribution due will be charged to reinstate coverage, if BETAʀᴍᴀ elects in its sole, absolute and unreviewable discretion, to reinstate coverage.  The entire Contribution due to BETAʀᴍᴀ, including all penalties, must be received before coverage will be reinstated.

The **Named Member** must promptly report any exposure increases due to New Exposures during the course of the **Contract Period**. New Exposures shall mean an addition of a new location, new service, or a new physician, surgeon, dentist, physician assistant, nurse anesthetists, nurse practitioner or nurse midwife. If BETArma determines that a New Exposure materially changes Ratable Exposures, BETArma will invoice the **Named Member** for the additional Contribution for coverage of the New Exposure. Ratable Exposures include but are not limited to exposure data reported by the **Named Member** on the census report form.

If Ratable Exposures materially change due to closure of a location, discontinuation of a service or termination of a physician, surgeon, dentist, physician assistant, nurse anesthetist, nurse practitioner or nurse midwife, the **Named Member** may receive a Contribution adjustment, subject to the BETArma Underwriting Department's approval.

At any time until sixty (60) calendar days after the Expiration Date of this Contract, the **Named Member** may make a written request to BETArma for adjustment of the Contribution based on the **Named Member's** audit of the exposure data. At any time until sixty (60) calendar days after the Expiration Date, BETArma may audit the exposure data submitted to BETArma and make adjustments to the Contribution. If the **Named Member** fails to disclose or misrepresents exposure data provided to BETArma, BETArma may audit prior years. If the **Named Member** fails to pay additional amounts invoiced by the due date of the invoice, BETArma may cancel any BETArma Coverage Contracts then in effect with ten (10) calendar days' written notice.

If the **Named Member** terminates this Contract at any time prior to the Expiration Date, earned Contribution shall be computed in accordance with the customary short rate table and procedure.

B.   Deductible and Other Payments.

   (1)   The **Named Member** is responsible for any Deductible amount that is specified in the Certificate.

      (a)   Deductibles paid by the **Member** are included as part of, and are not in addition to, the applicable Limits of Liability.

      (b)   If a **Member** elects to write off all or part of a bill for services, the amount written off shall not apply toward exhaustion of the Deductible.

      (c)   If the **Member** fails to pay a Deductible by the due date, a five percent (5%) penalty will be added to the amount owed to BETArma. If any part of the Deductible remains outstanding for more the thirty (30) calendar days, interest shall accrue on the outstanding balance at the rate of 1.5% per month.

   (2)   If BETArma pays any amount in settlement or satisfaction of any **Claim** within the Deductible, in excess of the Limit of Liability, or for which BETArma has no liability under this Contract, the **Member** shall reimburse BETArma for such amounts within thirty (30) calendar days of BETArma's request.

   (3)   Notwithstanding any other provision of this Contract, if a **Member** is required by law to seek recovery from an elected official of any payment, including **Defense Expenses**, which BETArma has paid, advanced or reimbursed, the **Member** shall repay all such sums to BETArma within thirty (30) calendar days of BETArma's request.

C.   Offsetting Sums.

   BETArma may reduce any amount owed to the **Named Member** by BETArma, or any credit against the **Named Member's** monthly Contribution, by the amount of any sum owed to BETArma which has remained unpaid for more than thirty (30) calendar days.

D.   BETArma's Right to Inspect and Audit.

(1) BETA<sub>RMA</sub> shall be permitted, but not obligated, to inspect the **Member's** property and operations at any time.  Neither BETA<sub>RMA'S</sub> right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on behalf of, or for any **Member's** benefit, to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

(2) BETA<sub>RMA</sub> may examine and audit a **Member's** books and records relevant to the subject matter of this Contract at any time during the **Contract Period**, and extensions thereof, and within one (1) year after the final termination of this Contract.

## 10. MEMBERS' DUTIES IN THE EVENT OF OCCURRENCE OR CLAIM

A. The **Member** must notify BETA<sub>RMA</sub>, as soon as practicable, of an **Occurrence**, act, error or omission or offense which may reasonably be expected to result in a **Claim**.  The notice must include:

(1) how, when and where the **Occurrence**, act, error or omission, or offense took place;

(2) the names and addresses of any injured persons and witnesses; and

(3) the nature of any injury or damage arising out of the **Occurrence**, act, error or omission, or offense.

Such notice is not considered a **Claim** for the purpose of determining coverage.

B. If a **Claim** is made or brought against the **Member**, the **Member** must:

(1) immediately record the specifics of the **Claim**, including the date received;

(2) notify BETA<sub>RMA</sub> as soon as possible;

(3) immediately forward to BETA<sub>RMA</sub> copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or suit;

(4) authorize BETA<sub>RMA</sub> to obtain all records and other information, including submitting to examination and interrogation by a representative of BETA<sub>RMA</sub>, under oath, if required;

(5) cooperate fully with BETA<sub>RMA</sub> in the investigation, settlement and defense of the **Claim** or suit, including attending hearings, depositions and trials, assisting in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, assisting in the conduct of suits, and giving a written statement or statements to BETA<sub>RMA</sub>; and

(6) assist BETA<sub>RMA</sub> fully to do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the **Member** may have, and authorize BETA<sub>RMA</sub> to exercise those rights in the **Member's** name.

C. No **Member** shall, except at the **Member's** own cost, admit liability for or settle any **Claim**, voluntarily make a payment, assume any obligation or incur any expense without the prior written consent of BETA<sub>RMA</sub>.

D. If a **Claim** involves both covered and noncovered allegations, theories of recovery or relief, BETA<sub>RMA</sub> shall be responsible only for that portion of the total amount that is covered by this Contract.  Each **Member** and BETA<sub>RMA</sub> shall use their best efforts to agree upon a fair and proper allocation of covered and noncovered sums.  Each **Member**, if requested by BETA<sub>RMA</sub>, shall use its best efforts to secure:

(1)  a special verdict and findings that segregate covered and noncovered allegations, theories of recovery or relief; and

(2)  a bifurcation of the trial or hearing as to covered and noncovered allegations, theories of recovery or relief.

Should a **Member** and BETA<sub>RMA</sub> be unable to resolve any disagreement regarding allocation of covered and noncovered sums, either may invoke the arbitration provisions of this Contract.

## 11.  SETTLEMENT OF CLAIMS AND PAYMENT OF JUDGMENTS

A.  Settlement of **Claims**

(1)  No settlement shall be made of any **Claim** against a **Member** without the **Member's** consent, except as provided in this Section.  Further, in granting or withholding such consent, the **Member** shall act reasonably and in good faith considering its and BETA<sub>RMA</sub>'s respective interests. If BETA<sub>RMA</sub> and the **Member** cannot agree on the appropriateness of the settlement, the matter shall be submitted to settlement review as follows:

(a)  if BETA<sub>RMA</sub> recommends settlement of a **Claim**, and if the **Member** desires to withhold consent to such settlement, the **Member** shall within seven (7) calendar days after notification of the recommendation appeal such recommendation to a settlement review panel.  The appeal shall be in writing and shall be submitted to the BETA<sub>RMA</sub> Claims Representative assigned to the **Claim**. The appeal shall indicate whether the **Member** requests to be present during the settlement review panel hearing. The settlement review panel shall be composed of:

(i)  a minimum of three (3) Members of the BETA Council, each of whom is appointed by the chairperson;

(ii)  one of the **Named Member's** administrators; and

(iii)  one of the **Named Member's** directors or trustees.

(b)  upon completion of the review, the settlement review panel shall determine whether the proposed settlement is reasonable and it shall immediately advise BETA<sub>RMA</sub> and the **Member** of its decision.

(c)  If the **Member** fails to timely appeal, BETA<sub>RMA</sub> will settle the **Claim** as proposed and submit National Practitioner Data Bank and licensing agency reports as required by law.  If the BETA Council Chairperson or the **Named Member** fails to appoint members to the settlement review panel within five (5) calendar days of receipt of notice of the appeal, the appeal may be decided by the members of the settlement review panel who have been appointed during that period.

(2)  The decision of the settlement review panel shall be binding upon both BETA<sub>RMA</sub> and the **Member**.

(3)  This Section 7.11.A does not apply to **Supplemental Members**, unless otherwise provided by amendment.

B.  Payment of Judgments

BETA<sub>RMA</sub> may seek periodic payment of a judgment when such payment is permitted by law.

## 12.  DISPUTES WITH BETA<sub>RMA</sub>

A. Legal Action Against BETA~RMA~.

    (1)   No person or entity may join BETA~RMA~ as a party or otherwise bring BETA~RMA~ into any **Claim**, suit, arbitration or other proceeding against the **Member**.

    (2)   No person or entity has a right under this Contract to sue or arbitrate with BETA~RMA~ on this Contract unless all of its terms have been fully complied with and either a final judgment against the **Member** after an actual trial or a written agreement signed by BETA~RMA~, the **Member** and the **Claimant** has been obtained.

    (3)   This Contract does not extend any rights to a **Claimant**.

B. **Arbitration of Disputes.**

*All disputes in any way concerning, arising out of or relating to this Contract that shall be submitted to binding arbitration, unless resolved through BETA~RMA~'s internal dispute resolution procedure established by the BETA Council.*

*Before requesting arbitration a Member must complete BETA~RMA~'s internal dispute resolution procedure established by the BETA Council.  Requests for binding arbitration must be made within thirty (30) calendar days after the internal dispute resolution hearing decision is provided in writing to the Named Member by BETA~RMA~.  If a request is not made within thirty (30) calendar days, the decision shall be final and binding.*

*The arbitration and discovery will be governed by the California Arbitration Act, Section 1280, et seq. of the Code of Civil Procedure, except to the extent that it is inconsistent with this Section. BETA~RMA~ and each Member waive the right to court remedies, including a jury trial.*

*In all such arbitrations the terms, conditions and exclusions of this Contract shall be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions and exclusions of the Contract.*

*In any arbitration, one Arbitrator will be chosen by all Members collectively, the other by BETA~RMA~, and a Neutral Arbitrator will be chosen by the mutual agreement of the two Arbitrators before they enter into arbitration.  If any party should fail to choose an Arbitrator within thirty (30) calendar days following a written request by the other party to do so, the requesting party may choose two Arbitrators.*

*Each party will present its case to the Arbitrators within thirty (30) calendar days following the date of appointment of the Neutral Arbitrator.  The Neutral Arbitrator shall be the judge of the relevance of the evidence offered and is not required to follow the strict rules of evidence.  The decision of the Arbitrators chosen by the parties shall be final and binding on the parties; but, if these Arbitrators fail to agree, the decision of the majority of the Arbitrators shall be final and binding upon the parties.  The Arbitrators shall be limited to the remedies that could be awarded by the Superior Court of the State of California. Judgment upon the final decision of the Arbitrators may be entered in any court of competent jurisdiction.*

*Each party shall bear the expense of its own Arbitrator, and shall jointly and equally bear with the other the expense of the Neutral Arbitrator and of the arbitration.  In the event that the two Arbitrators are chosen by one party, as provided above, the expense of the Arbitrators, the Neutral Arbitrator and the arbitration shall be equally divided between the parties.*

*Any arbitration proceedings shall take place in San Francisco, California.*

*The Arbitrators shall have no authority to review any matter as to which this Contract grants BETARMA sole discretion, including but not limited to the cost and terms of any extended reporting period. No Member may arbitrate, or contest in any court, any such exercise of discretion.*

## 13.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO BETARMA

A.  If BETARMA makes any payment under this Contract, BETARMA is entitled to the extent of its payment to take over the **Members'** rights of recovery against all others.  The **Members** must do nothing to make it harder for BETARMA to enforce those rights, and must sign and deliver any papers, and do anything else that may be necessary, to enable BETARMA effectively to bring suit in the name of the **Members**.  The obligations of the **Members** under this provision will survive the termination of the **Contract Period**.

B.  Any amount recovered pursuant to this Section shall be apportioned as follows:

   (1)  any recovery shall first be used in the repayment of expenses incurred toward recovery;

   (2)  next, to any damages and **Defense Expenses** paid by BETARMA;

   (3)  next, to any damages and **Defense Expenses** paid by the **Member** in excess of any Deductible amount;

   (4)  next, to any damages and **Defense Expenses** by an excess carrier on the **Member's** behalf;

   (5)  next, to any damages and **Defense Expenses** paid by any other insurer on the **Member's** behalf; and,

   (6)  finally, to the repayment of the **Member's** Deductible amount.

## 14.  APPLICABILITY OF INSURANCE OR OTHER COVERAGE A MEMBER MAY ALSO HAVE

A.  BETARMA Provides Initial Protection for Certain **Members**.

   With respect to all **Members** identified in Section 7 other than the **Named Member**, any **Subsidiary** and the persons identified in Sections 7.1.A(1) and 7.1.A(6)(a), this Contract provides protection prior to any applicable insurance or other coverage or self-insurance.

B.  The Protection Afforded Under This Contract Is Excess Protection for Certain **Members**.

   With respect to the **Named Member**, any **Subsidiary** and the persons identified in Sections 7.1.A(1) and 7.1.A(6)(a), this Contract shall be excess of any valid and collectible insurance or other coverage or self-insurance obtained or maintained by the **Member** or for the **Member's** benefit, whether such coverage or insurance or self-insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other coverage or insurance or self-insurance is written only as specific excess coverage, insurance or self-insurance over and above the Limit of Liability provided under this Contract by reference to the Certificate number of this Contract.

## 15.  DELEGATION BY BETARMA AND ASSIGNMENT BY MEMBERS

A.  Delegation.

   Any or all Contract duties, obligations and responsibilities of BETARMA may be delegated or assigned to independent contractors and consultants retained or employed by BETARMA.

B. Assignment.

Any assignment of any right or interest under this Contract shall not bind BETARMA without its written consent.

## 16. GOVERNING LAW

This Contract in all respects shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law rules.

## 17. THE TERMS OF THIS CONTRACT SHALL CONFORM TO STATUTE

Any terms of this Contract that conflict with any applicable statute of the State of California are hereby amended to conform to such statute.

## 18. EFFECTIVE DATE OF THIS CONTRACT

This Contract shall be effective as of the Effective Date specified on the Certificate of Participation, but only if the Certificate has been signed by a duly authorized representative of BETARMA.

## 19. TERMINATION OF THIS CONTRACT

A. Termination by **Named Member**.

The **Named Member** may terminate this Contract by mailing to BETARMA -- at the address specified on the Certificate -- written notice stating when, not less than thirty (30) calendar days thereafter, the termination will be effective.

B. Termination by BETARMA.

(1) BETARMA may terminate this Contract for:

(a)  failure to pay any Contribution when due;

(b)  failure to reimburse BETARMA for payments made

(i)  within the Deductible,

(ii)  in excess of the Limit of Liability,

(iii)  for which BETARMA has no liability under this Contract, or

(iv)  which the **Member** is obligated to repay to BETARMA;

(c)  failure to abide by any provision of the Joint Powers Authority Agreement, as it may be amended, or this Contract;

(d)  failure to give prompt notification to BETARMA of any **Claim**; or

(e)  upon a majority vote of the BETA Council, for failure to implement loss control or risk management recommendations.

When termination is for any reason specified above, the **Named Member** shall be given ten (10) calendar days' written notice, return receipt requested, of termination. Proof of mailing shall be deemed proof of receipt.

(2)  BETA<small>RMA</small> may terminate this Contract for any reason other than those provided above by mailing written notice stating when, not less than ninety (90) calendar days thereafter, the termination shall be effective.

C.  Automatic Termination.

This Contract shall automatically terminate on the effective date of the **Named Member's** withdrawal or termination as a member of BETA<small>RMA</small>.

D.  Effect of Termination; Adjustment of Contribution.

(1)  Termination by either party shall extinguish the coverage provided to all **Members** as of the effective date of the termination.

(2)  The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and/or after the termination. Payment of all such sums due BETA<small>RMA</small> shall be made within thirty (30) calendar days of the time at which termination is effective or within thirty (30) calendar days of BETA<small>RMA</small>'s request, if the amount becomes due after the termination of the Contract.

(3)  Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETA<small>RMA</small> upon written notice, BETA<small>RMA</small> shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiaries** with regard to open **Claims**.

## 20.  LIMITED RIGHT TO EXTENDED REPORTING PERIOD

A.  Except as provided in this Section or by amendment, upon termination of coverage there is no extended reporting period available to **Members** for **Claims** first made after this Contract ends.

B.  If this Contract is terminated by BETA<small>RMA</small> or the **Named Member**, the **Named Member** shall have the right to purchase an extended reporting period upon payment of an additional Contribution.  This right will terminate, however, unless written notice of the **Named Member's** election is received by BETA<small>RMA</small> within thirty (30) calendar days of the effective date of the termination of this Contract.  The extended reporting period will provide coverage for **Claims** which are otherwise covered under this Contract and are first made and reported in writing to BETA<small>RMA</small> as soon as possible during the extended reporting period, but only with respect to negligent acts, errors, or omissions (under Section 2) occurring on or after the **Retroactive Date** and before the effective date of such termination.  The cost and terms of the extended reporting period shall be determined in the sole, absolute and unreviewable discretion of BETA<small>RMA</small> at the time the extended reporting period is requested.  This provision applies only to coverages that are provided on a "claims made and reported" basis.

C.  The **Named Member** does not have the right to purchase an extended reporting period if, on the date of termination, the **Named Member** has failed to pay any Contribution due under this Contract, or has failed to reimburse BETA<small>RMA</small> for any amount BETA<small>RMA</small> has paid on account of any settlement or as damages or **Defense Expenses** in excess of any applicable Limit of Liability, or has otherwise failed to pay any other amount due BETA<small>RMA</small>.

D.  The extension shall not increase the Limit of Liability specified in the Certificate.

E.  The extension will reinstate the Limit of Liability specified in the Certificate one time only.

## 21.  MEMBERS' AUTHORIZATION AND NOTICES TO MEMBERS

All **Members** agree that the **Named Member** will act on their behalf for receiving all notices from BETA<small>RMA</small>, and for the negotiation and acceptance of any modification to any provision of this Contract.

**22. LIMITS ON HOW THIS CONTRACT CAN BE CHANGED**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of BETARMA will not effect a waiver or change in any part of this Contract, nor estop BETARMA from asserting any right under the terms, conditions and limitations of this Contract. The terms, conditions and limitations of this Contract may only be waived or changed by written amendment.

**23. MEMBERS' REPRESENTATIONS ON WHICH BETARMA HAS RELIED**

All **Members** represent that the statements contained in the application, any updated or supplementary application and all materials submitted to BETARMA in connection with an application, are true, accurate and complete. All **Members** agree that:

A.  those statements are the basis of this Contract and are to be considered incorporated into and a part of this Contract;

B.  those statements are material to BETARMA'S acceptance of its obligations under this Contract; and

C.  this Contract is issued in reliance upon the truth, accuracy and completeness of those statements.

**24. NON-RENEWAL OF THIS CONTRACT**

A.  The **Named Member** may elect not to renew this Contract for any reason.

B.  BETARMA may elect not to renew this Contract for any reason.

   If BETARMA decides not to renew this Contract, BETARMA will mail or deliver written notice of the non-renewal to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified in the Certificate. If the notice is mailed, proof of mailing will be sufficient proof of notice. BETARMA need not mail or deliver such notice if the **Named Member** has informed BETARMA that the **Named Member** is obtaining replacement coverage.

   If BETARMA elects to renew this Contract without offering coverage to an Individual **Member**, BETARMA will mail or deliver written notice to the **Named Member** not less than sixty (60) calendar days before the Expiration Date specified on the Certificate. BETARMA need not give such notice of other intended changes to the renewal contract.

C.  Effect of Non-Renewal; Adjustment of Contribution.

   (1)  Non-renewal by either party shall extinguish the coverage provided to all **Members** as of the Expiration Date of this Contract.

   (2)  The **Named Member** shall remain liable for any unpaid Contribution, penalties, Deductibles, interest and other sums that have accrued before and after the Expiration Date. Payment of all such sums due BETARMA shall be made within thirty (30) calendar days of the time at which expiration is effective or within thirty (30) calendar days of BETARMA'S request, if the amount becomes due after the expiration of the Contract. Notwithstanding any other provision of this Contract, if the **Named Member** fails to pay all sums due BETARMA upon written notice, BETARMA shall have no further obligation to defend or indemnify the **Named Member** and **Subsidiaries** with regard to open **Claims**.

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**PROCEDURES REGARDING SETTLEMENT OF SECTION 2**
**CLAIMS AGAINST PHYSICIANS**

| Certificate Number: HCL-17-807 | Amendment No: H120-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed as follows:

1. The following procedures regarding settlement of **Claims**, and not the procedures regarding settlement of **Claims** and resolution of disputes set forth in Section 7, apply to settlement of **Claims** against physicians under Section 2 (Healthcare Entity Professional Liability).

2. No settlement shall be made of any such **Claim** on a physician's behalf without his or her consent, except as provided in this Amendment. Further, in granting or withholding such consent the physician shall act reasonably and in good faith considering his or her and BETARMA's respective interests. If the decision to settle a **Claim** is recommended by BETARMA, and if BETARMA and the physician cannot agree on the appropriateness of the settlement, the matter shall be submitted to a settlement review panel comprising three independent physicians in good standing who hold a valid license to practice medicine in the State of California and who actively practice the same medical specialty as the defendant physician.

   a. Upon receipt of BETARMA's recommendation to settle a **Claim**, if the physician desires to withhold consent to such settlement, the physician shall, within seven (7) calendar days after notification by BETARMA of the recommendation, appeal such recommendation to a settlement review panel. The appeal shall be in writing and shall be submitted to the Claims Representative assigned to the **Claim**. The appeal shall indicate whether the **Member** requests to be present during the settlement review panel hearing. If the **Member** fails to timely appeal, BETARMA will settle the **Claim** as proposed and submit National Practitioner Data Bank and licensing agency reports as required by law. The settlement review panel shall be composed of:

      (1) One physician selected by the defendant physician;
      (2) One physician selected by BETARMA; and
      (3) One physician selected by the mutual agreement of the two physicians selected by the defendant physician and BETARMA.

   b. Upon completion of the review, the settlement review panel shall determine whether the proposed settlement is reasonable, and it shall immediately advise BETARMA and the defendant physician of its decision.

3. The decision of the settlement review panel shall be binding upon both BETARMA and all **Members**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## RETROACTIVE DATES FOR MULTIPLE ENTITIES

| Certificate Number: HCL-17-807 | Amendment No: H201-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage under this Contract for the below-listed entities is subject to the Retroactive Dates listed below:

| NAME OF ENTITY | RETROACTIVE DATE | CANCEL DATE |
|---|---|---|
| *Keck Hospital of USC* | *04/01/09* | |
| *USC Kenneth Norris, Jr. Cancer Hospital* | *04/01/09* | |
| *USC Kenneth Norris, Jr. Cancer Hospital* | *01/01/83* | *12/16/03* |
| *USC Care Medical Non-Contracted, LLC.* | *07/01/09* | |
| *USC Care Medical Group, Inc.* | *07/01/79* | |
| *Health Research Associates, Inc.* | *02/24/97* | |
| *USC Verdugo Hills Hospital, LLC* | *02/25/13* | |
| *Verdugo Hills Hospital, Verdugo Hills Health Services, Verdugo Hills Support Services Corporation, Verdugo Hills Professional Buildings and Verdugo Hills Hospital Foundation* | *09/30/84* | |
| *USC Verdugo Hills Hospital* | *07/16/13* | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**GOOD SAMARITAN CARE**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H216-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that the following is added to Section 2 (What BETARMA Will Pay Subject To The Exclusions In Section 6 And The Total BETARMA Will Pay In Section 7):

6. BETARMA will pay those sums which a **Member** covered under this section becomes legally obligated to pay because of **Bodily Injury** that results from that **Member** providing or failing to provide **Professional Services** outside the scope of the **Member's** employment or contracted services with the **Named Member** in a bona fide medical emergency where the **Member** receives no remuneration.

   Coverage under this Amendment will apply anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada. BETARMA shall have the right but not the obligation to investigate, settle or defend **Claims** or suits brought outside of the United States of America, its territories or possessions, Puerto Rico or Canada.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ADDITIONAL MEMBER – SEPARATE LIMITS WITH CONTINUOUS COVERAGE**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H300-02 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed that Coverage afforded by this Contract is extended to:

*The Health Care Providers listed on the attached schedule and the individual's professional medical corporation, if any (each individual provider and his or her professional medical corporation are collectively the "Provider" in this Amendment)*

as a **Member**, as defined in Section 7.1, "Who is Protected Under This Contract," but only with respect to the Provider's legal liability when acting within the course and scope of the Provider's duties to the **Named Member** or **Subsidiary**.

The Limits of Liability shown on the attached schedule apply on an individual basis to each Provider and are in addition to, the Limits of Liability stated on the Certificate of Participation. However, for all acts, errors and omissions of a Provider when acting in a capacity specified in Section 7.1.A (1), (3), (4), (5) and (6) of this Contract, the Limits of Liability stated on the Certificate of Participation shall apply.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

# AMENDMENT
## ADDITIONAL MEMBER – SEPARATE LIMITS WITH CONTINUOUS COVERAGE

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H300-02 |
|---|---|

| | |
|---|---|
| **Issued to:** University of Southern California | |
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

| Name | Specialty | Contribution Category | Limits of Liability<br>Per Claim / Aggregate | Effective Date | Retro Date | Cancel Date |
|---|---|---|---|---|---|---|
| Demeter, Milan | Otolaryngology (Major with Facial | 5 - Otolaryng (Incl Plast Sx) | $1,000,000/$3,000,000 | 07/01/17 | 04/30/15 | |
| Hubanks, John | Otolaryngology (Major with No | 4 - Otolaryngology | $1,000,000/$3,000,000 | 07/01/17 | 04/30/15 | |
| Stoneman, George | Otolaryngology (Major with No | 4 - Otolaryngology | $1,000,000/$3,000,000 | 07/01/17 | 04/30/15 | |

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ADDITIONAL MEMBERS - LOCUM TENENS**

| Certificate Number: HCL-17-807 | Amendment No: H303-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage afforded by this Contract is extended to:

   *The Health Care Providers listed on the attached schedule and the individual's professional medical* corporation, if any (each individual provider and his or her professional medical corporation are collectively the "Locum Tenens" in this Amendment)

as a **Member**, as defined in Section 7.1, "Who is Protected Under This Contract," but only with respect to the Locum Tenens′ legal liability when acting within the course and scope of the Locum Tenens′ duties to the **Named Member** or **Subsidiary**.

The Limits of Liability shown on the attached schedule apply on an individual basis to each Provider and are within, and not in addition to, the Limits of Liability stated on the Certificate of Participation. However, for all acts, errors and omissions of a Provider when acting in a capacity specified in Section 7.1.A (1), (3), (4), (5) and (6) of this Contract, the Limits of Liability stated on the Certificate of Participation shall apply.

Where the Limits of Liability shown on the attached schedule are described as "See Certificate", that means the Locum Tenens will share in the per-**Claim** and aggregate Limits of Liability stated on the Certificate of Participation of the **Named Member**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**DEFENSE COUNSEL**

| Certificate Number: HCL-17-807 | Amendment No: H312-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that section 7.6.B is deleted in its entirety and replaced by the following:

B. 1. **Selection of Defense Counsel**

a. **Claims Expected to be Within Deductible**. For **Claims** that are reasonably expected by BETARMA to be within the **Named Member's** Deductible, BETARMA shall retain defense counsel chosen by the **Named Member** to investigate, negotiate and defend those **Claims**.

b. **Claims Expected to Exceed Deductible**. For **Claims** that are reasonably expected by BETARMA to exceed the **Named Member's** Deductible, BETARMA shall select counsel to investigate, negotiate and defend those **Claims**, subject to the **Named Member's** consent, which shall not be unreasonably withheld.

c. **Claims Involving Defense Counsel Conflicts**. With respect to **Claims** described in Clause b above, if BETARMA reserves the right not to indemnify a **Member** on a coverage issue, other than punitive or exemplary damages or a **Claim** in excess of the Limit of Liability, and the outcome of that coverage issue can be controlled by the defense counsel selected under Clause b, the **Member** may exercise the right to select defense counsel, or may waive that right in writing.

Any defense counsel selected by the **Member** shall possess minimum qualifications established by BETARMA. These qualifications shall include, but are not limited to:

1. at least five years of civil litigation practice, which includes substantial defense experience in the subject at issue in the litigation; and

2. errors and omissions coverage with limits of liability of at least $1,000,000 per claim.

2. **Obligations of Member and Defense Counsel.**

All defense counsel shall comply with BETARMA's Litigation Management Guidelines. The **Member** and defense counsel selected shall disclose to BETARMA all information relating to the Claim and shall timely inform and consult with BETARMA on all matters relating to the **Claim**, except privileged communications relevant to coverage disputes. Defense counsel shall notify BETARMA that it is asserting this privilege and identify the nature of the information withheld.

Both defense counsel retained under Clause b and defense counsel retained under Clause c shall be allowed to participate in all aspects of the litigation. Each counsel shall cooperate fully in the exchange of information with the other counsel consistent with each counsel's ethical and legal obligation to the **Member**.

3. **BETARMA's Obligation to Pay Defense Counsel Fees.**

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

**AMENDMENT**

**DEFENSE COUNSEL**

| Certificate Number: | Amendment No: |
|---|---|
| HCL-17-807 | H312-01 |

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

BETARMA's obligation to pay fees to defense counsel selected by a **Member** is limited to the rates which are actually paid by BETARMA to attorneys retained by it in the ordinary course of business in the defense of similar actions in the county where the **Claim** arose or is being defended.

4. **Dispute Resolution.**

Any dispute concerning selection, obligations or fees of defense counsel that cannot be resolved by discussion and negotiation shall be resolved by final and binding arbitration pursuant to the provisions of Section 7.12, except that in the interest of quickly and efficiently resolving the dispute the arbitration shall be before a single neutral arbitrator chosen by the parties to the dispute.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**SUPPLEMENTAL MEMBER—PROFESSIONAL LIABILITY ONLY**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H313-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that the coverage afforded under Section 2 (Healthcare Entity Professional Liability) of this Contract is extended to any person or organization to whom the **Named Member** is obligated by written contract to provide such coverage as is afforded by Section 2 (the **"Supplemental Member"**), but only for legal liability arising out of the negligence or other fault of the **Named Member** or **Subsidiary**.

This Amendment does not extend coverage for the acts, errors or omissions of the **Supplemental Member** or its agents.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**MANDATORY SPECIAL PROVISIONS FOR NONPROFIT ENTITIES**

| Certificate Number: HCL-17-807 | Amendment No: H314-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that the Contract is amended as follows:

1. In the IMPORTANT NOTICE section, paragraph two is deleted and replaced with the following:

BETARMA is a California Joint Powers Authority formed to pool self-insured **Claims** and losses among public entities and nonprofit organizations providing healthcare services as authorized by California Government Code Sections 990.4(a), 990.8(c) and 6527 and subject to the provisions of Section 991.2. BETARMA is not subject to regulation as an insurer. As a public agency, BETARMA will be guided by legal principles relating to public agencies, rather than insurance law. This Contract is not an insurance policy, and the **Named Member** must be a member in good standing in BETARMA to participate in the Group Self-Insurance Program. The **Named Member** pays, when due, Contributions to BETARMA. In return, BETARMA provides healthcare entity professional liability protection under this agreement. However, the Contract includes limitations, restrictions and exclusions. In other words, this agreement does not protect all risks associated with your activities.

2. Section 6.11 is deleted in its entirety and replaced with the following:

11. This Contract shall not apply to any **Claim** against an individual **Member** alleging directly or indirectly or in whole or in part that he or she committed sexual harassment or sexual abuse, assault, battery or molestation, unless the healthcare senior executives (C-Suite) or Office of General Counsel of the **Named Member** first determines that it is in the best interests of the **Named Member** for BETARMA to defend the individual **Member** and requests that BETARMA do so.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**MEMBER – PROFESSIONAL LIABILITY ONLY**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H315-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage under Section 2 (Healthcare Entity Professional Liability) only, is extended to *temporary or leased employees, including medical doctors, nurse practitioners or physician assistants, through agencies*, ("**Member**") under Section 7.1 of the Contract, but only with respect to **Member's** legal liability when acting within the course and scope of **Member's** duties to the **Named Member** or **Subsidiary**.

It is further understood and agreed that this extension of coverage will not apply to a given healthcare professional if coverage is already extended to the healthcare professional by any other provision of the Contract, including any other amendment to the Contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**MEMBER – PROFESSIONAL LIABILITY ONLY**

| Certificate Number: HCL-17-807 | Amendment No: H315-02 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage under Section 2 (Healthcare Entity Professional Liability) only, is extended to *international visiting physicians for non-direct patient care while under the supervision of licensed faculty*, (**"Member"**) under Section 7.1 of the Contract, but only with respect to **Member's** legal liability when acting within the course and scope of **Member's** duties to the **Named Member** or **Subsidiary**.

It is further understood and agreed that this extension of coverage will not apply to a given healthcare professional if coverage is already extended to the healthcare professional by any other provision of the Contract, including any other amendment to the Contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**MEMBER – PROFESSIONAL LIABILITY ONLY**

| Certificate Number: HCL-17-807 | Amendment No: H315-03 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage under Section 2 (Healthcare Entity Professional Liability) only, is extended to *independent contractors as per contractual agreement, except physicians, surgeons, dentists, physician assistants, nurse anesthetists, nurse practitioners or nurse midwives,* ("**Member**") under Section 7.1 of the Contract, but only with respect to **Member's** legal liability when acting within the course and scope of **Member's** duties to the **Named Member** or **Subsidiary**.

It is further understood and agreed that this extension of coverage will not apply to a given healthcare professional if coverage is already extended to the healthcare professional by any other provision of the Contract, including any other amendment to the Contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**MEMBER – PROFESSIONAL LIABILITY ONLY**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H315-04 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage under Section 2 (Healthcare Entity Professional Liability) only, is extended to *volunteer healthcare professionals who required licensing or other certification, including physicians, surgeons, dentists, physician assistants, nurse anesthetists, nurse practitioners or nurse midwives, while rendering Professional Services,* ("**Member**") under Section 7.1 of the Contract, but only with respect to **Member's** legal liability when acting within the course and scope of **Member's** duties to the **Named Member** or **Subsidiary**.

It is further understood and agreed that this extension of coverage will not apply to a given healthcare professional if coverage is already extended to the healthcare professional by any other provision of the Contract, including any other amendment to the Contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## BLANKET CALIFORNIA LOCATIONS COVERAGE

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H320-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is hereby understood and agreed that Section 1.8 is deleted in its entirety and replaced with the following:

8. **Covered Locations** means:

   A. any location identified in the Certificate of Participation or by amendment; or
   B. any location in the state of California.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**PROFESSIONAL SERVICES DEFINITION EXTENSION–**
**PRACTICE EXAMINATIONS BY MEDICAL STUDENTS**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H336-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that Section 1.28 is deleted in its entirety and replaced with the following:

28. **Professional Services** means:

 A. medical, surgical, dental or nursing or other healthcare services or treatment to a patient, including custodial care and the furnishing of food or beverages in connection with the treatment;

 B. the furnishing or dispensing of drugs, or medical, dental or surgical supplies or appliances to a patient if the injury occurs after the **Member** has relinquished possession thereof;

 C. healthcare research involving a patient, study participant or trial participant if, before the research was commenced, the **Named Member** or **Subsidiary's** Institutional Review Board cleared the research study or trial;

 D. the handling or performing of post mortem examinations on human bodies; or

 E. services by any person as a member of the **Named Member's** or **Subsidiary's** formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee; or

 F. training practice examinations performed by medical students on actors portraying patients.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## AUDIT PROVISIONS – MODIFIED NEW EXPOSURE DEFINITION

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H337-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that Section 7.9.A is deleted in its entirety and replace with the following:

## 9. PAYMENTS REQUIRED FROM MEMBERS AND RIGHT TO AUDIT

A. Contribution.

The **Named Member** shall pay a Contribution based on the estimated exposure that are calculated from the reported census the **Named Member** provided to BETARMA on or before the beginning of the **Contract Period**. BETARMA shall inform the **Named Member** of its Contribution for the **Contract Period** and installment Contribution. The **Named Member** shall pay each Contribution in full on or before the due date shown on the invoice.

If BETARMA does not receive the full installment Contribution by the late date shown of the invoice, a penalty equal to five percent (5%) of the original installment Contribution due shall be added to the Contribution. A 10-Day Notice of Cancellation shall be mailed to the **Named Member** on the first business day after the late date canceling coverage if BETARMA does not receive the full installment Contribution, including the five percent (5%) penalty, by the cancellation date stated on the 10-Day Notice of Cancellation ("10-Day" shall equal ten (10) calendar days). An additional penalty equal to five percent (5%) of the original monthly Contribution due will be charged to reinstate coverage, if BETARMA elects in its sole, absolute and unreviewable discretion, to reinstate coverage. The entire Contribution due to BETARMA, including all penalties, must be received before coverage will be reinstated.

The **Named Member** must promptly report any exposure increases due to New Exposures during the course of the **Contract Period**. New Exposures shall mean an addition of a new location, or a new service. If BETARMA determines that a New Exposure materially changes Ratable Exposures, BETARMA will invoice the **Named Member** for the additional Contribution for coverage of the New Exposure. Ratable exposures include but not be limited to exposure data reported by the **Named Member** on the census report form.

If Ratable Exposures materially change due to closure of a location or discontinuation of a service, the **Named Member** may receive a Contribution adjustment, subject to the BETARMA Underwriting Department's approval.

At any time until sixty (60) calendar days after the Expiration Date of this Contract, the **Named Member** may make written request to BETARMA for adjustment of the Contribution based on the **Named Member's** audit of the exposure data. At any time until sixty (60) calendar days after the Expiration Date, BETARMA may audit the exposure data submitted to BETARMA and make adjustments to the Contribution. If the **Named Member** fails to disclose or misrepresents exposure data provided to BETARMA, BETARMA may audit prior years. If the **Named Member** fails to pay additional amounts invoiced by the due date of the invoice, BETARMA may cancel any BETARMA Coverage Contracts then in effect with ten (10) calendar days' written notice.

**BETA Risk Management Authority ("BETArma")**

A Public Entity

## AMENDMENT
## AUDIT PROVISIONS – MODIFIED NEW EXPOSURE DEFINITION

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H337-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

If the **Named Member** terminates this Contract at any time prior to the Expiration Date, earned Contribution shall be computed in accordance with the customary short rate table and procedure.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETArma

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

**AMENDMENT**
**USC CARE MEDICAL GROUP'S OBLIGATION TO INDEMNIFY**
**HEALTHCARE PROFESSIONALS**

| Certificate Number: HCL-17-807 | Amendment No: H346-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that Exclusion 1 shall not apply to any Contractual Obligation of the **Named Member** to defend or indemnify a Healthcare Professional for those sums which the Healthcare Professional is legally required to pay as damages for **Claims** arising out of his or her negligence in rendering or failing to render **Professional Services** before July 1, 2009 within the course and scope of the Healthcare Professionals. duties to a **Subsidiary** listed on the attached Schedule.

The following definitions apply to this Amendment:

1. "Contractual Obligation" means the **Named Member's** obligation pursuant to the indemnification provisions of an agreement pursuant to which a Healthcare Professional became an employee of the **Named Member** effective on or about July 1, 2009.

2. "Healthcare Professionals" means a licensed healthcare professional who was affiliated with a **Subsidiary** listed on the attached Schedule before July 1, 2009.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## USC CARE MEDICAL GROUP'S OBLIGATION TO INDEMNIFY
## HEALTHCARE PROFESSIONALS

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H346-01 |
|---|---|

**Issued to:** University of Southern California

| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |
|---|---|---|

| Name | Retro Date | Cancel Date |
|---|---|---|
| Doheny Eye Centers | 04/01/05 | 7/1/2009 |
| Doheny Eye Medical Group | 01/01/79 | 7/1/2009 |
| Doheny Laser Vision Center | 04/01/05 | 7/1/2009 |
| Doheny Retina Center | 11/01/06 | 7/1/2009 |
| Integrated Faculty Practice Plans, Inc. | 07/01/09 | |
| U.S.C.A.N. | 07/01/79 | 7/1/2009 |
| University Internists Medical Group | 07/01/79 | 7/1/2009 |
| University Internists Medical Group II | 07/01/79 | 7/1/2009 |
| University Neurologist | 07/01/79 | 7/1/2009 |
| University Pathology Associates, Inc. | 07/01/79 | 7/1/2009 |
| University Radiation Oncology Associates, Inc. | 10/26/92 | 7/1/2009 |
| University Radiology Oncology Associates, Inc. | 07/01/79 | 7/1/2009 |
| University Southern California Urological Associates, Inc. | 07/01/79 | 7/1/2009 |
| USC Advanced Bioimaging Associates, Inc. | 10/26/92 | 7/1/2009 |
| USC Cardiothoracic Surgeons, Inc. | 07/01/98 | 7/1/2009 |
| USC Care Medical Non-Contracted, LLC | 07/01/09 | |
| USC Colorectal Surgeons, Inc. | 08/01/03 | 7/1/2009 |
| USC Emergency Medicine Associates, Inc. | 10/26/92 | 7/1/2009 |

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## USC CARE MEDICAL GROUP'S OBLIGATION TO INDEMNIFY
## HEALTHCARE PROFESSIONALS

| Certificate Number: HCL-17-807 | Amendment No: H346-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

| Name | Retro Date | Cancel Date |
|---|---|---|
| USC Emergency Physicians | 07/01/79 | 7/1/2009 |
| USC Family Medicine, Inc. | 10/26/92 | 7/1/2009 |
| USC Fertility | 07/01/05 | 7/1/2009 |
| USC Gynecologic Oncology Associates | 01/01/06 | 7/1/2009 |
| USC Head & Neck Associates Medical Group, Inc. | 07/01/79 | 7/1/2009 |
| USC Head & Neck Group, Inc. | 05/01/93 | 7/1/2009 |
| USC Imaging Associates | 10/26/92 | 7/1/2009 |
| USC Internal Medicine, Inc. | 10/26/92 | 7/1/2009 |
| USC Neurosurgeons, Inc. | 10/26/92 | 7/1/2009 |
| USC Neurosurgical Medical Group | 07/01/79 | 7/1/2009 |
| USC OB-GYN, Inc. | 07/01/05 | 7/1/2009 |
| USC Obstetricians and Gynecologists, Inc. | 04/01/93 | 7/1/2009 |
| USC Obstetrics and Gynecology Associates | 07/01/79 | 7/1/2009 |
| USC Occupational Therapy Faculty Practice, Inc. | 09/01/86 | 1/1/2017 |
| USC Orthopedic Medical Group | 07/01/79 | 7/1/2009 |
| USC Orthopedic Surgery Associates, Inc. | 07/29/91 | 7/1/2009 |
| USC Perinatal Group | 07/01/05 | 7/1/2009 |
| USC Physical Therapy Associates, Inc. | 09/01/86 | 1/1/2017 |

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## USC CARE MEDICAL GROUP'S OBLIGATION TO INDEMNIFY
## HEALTHCARE PROFESSIONALS

| Certificate Number: HCL-17-807 | Amendment No: H346-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

| Name | Retro Date | Cancel Date |
|---|---|---|
| USC Psychiatric & Behavioral Science Assoc., Inc. | 07/01/79 | 7/1/2009 |
| USC Psychiatry & Psychology Associates, Inc. | 10/26/92 | 7/1/2009 |
| USC Radiation Oncology Associates, Inc. | 06/01/93 | 7/1/2009 |
| USC Radiology Associates, Inc. | 07/01/79 | 7/1/2009 |
| USC Refractive Surgery Medical Associates | 07/01/96 | 7/1/2009 |
| USC Surgeons, Inc. | 10/26/92 | 7/1/2009 |
| USC Surgical Associates Medical Group | 07/01/79 | 7/1/2009 |
| USC Urological Associates, Inc. | 07/01/85 | 7/1/2009 |
| USCAN Anesthesiology Medical Group, Inc. | 10/26/92 | 7/1/2009 |
| USCP Medical Faculty Practice Groups | 10/26/92 | 7/1/2009 |

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## SECTION 2 COVERAGE FOR OUTSIDE OF CALIFORNIA

| Certificate Number: HCL-17-807 | Amendment No: H362-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

1. Section 2 (Healthcare Entity Professional Liability) only is extended to *all USC healthcare providers except for the USC Care Medical Group physicians*, while rendering or failing to render **Professional Services** outside of California, (**"Member"**) under Section 7.1 of the Contract, but only with respect to the **Member's** legal liability when acting within the course and scope of his or her duties to the **Named Member** or **Subsidiaries**.

2. Coverage under this Amendment will apply anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada. BETARMA shall have the right but not the obligation to investigate, settle or defend **Claims** or suits brought outside of the United States of America, its territories or possessions, Puerto Rico or Canada.

3. It is further understood and agreed that the Limits of Liability applicable are *$2,000,000* per **Claim** and *$6,000,000* in the aggregate, unless otherwise required to comply with state statue, on an individual basis for each Healthcare Provider and are within, and not in addition to, the Limits of Liability stated on the Certification of Participation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

**AMENDMENT**

**COVERAGE FOR USC CARE MEDICAL GROUP, INC FOR PROFESSIONAL
SERVICES OUTSIDE OF CALIFORNIA**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H363-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed as follows:

1. For purposes of Section 2 (Healthcare Entity Professional Liability), the term **"Covered Location"** includes any location outside of the state of California where a USC Care Medical Group, Inc. physician **Member** renders or fails to render **Professional Services** as part of his or her work with another institution or organization, on behalf of the **Named Member** or a **Subsidiary**.

2. Coverage under this Amendment applies to a **Covered Location** anywhere in the world, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada. BETARMA shall have the right but not the obligation to investigate, settle or defend **Claims** or suits brought outside of the United States of America, its territories or possessions, Puerto Rico or Canada.

3. The coverage that this Amendment provides is excess of any other valid and collectible insurance, whether such other coverage is stated to be primary, contributory, excess, contingent or otherwise.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**CONSULTS OUTSIDE OF CALIFORNIA**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H364-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage afforded under Section 2 of this Contract applies to **Professional Services** rendered as part of a telephone conversation or a message using any electronic medium between a licensed healthcare practitioner covered under this Contract and a patient or other healthcare provider regardless of the location of the patient or other healthcare provider at the time the **Professional Services** are rendered, provided a **Claim** or suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETAʀᴍᴀ")**
A Public Entity

**AMENDMENT**
**BLANKET SPECIAL EVENT – PROFESSIONAL LIABILITY ONLY**

| Certificate Number: HCL-17-807 | Amendment No: H373-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

A) It is understood and agreed that the coverage afforded under Section 2 (Healthcare Entity Professional Liability) of this Contract is extended to Healthcare Providers as **Members**, but only with respect to the Provider's legal liability when acting within the course and scope of the Provider's duties to the **Named Member** or **Subsidiary** for **Special Events**.

B) However, unless approved in advance of the event or activity by BETAʀᴍᴀ, coverage afforded by this Amendment does not apply to **Special Event** activities that are: 1) not on behalf of the **Named Member** or **Subsidiary**, except for volunteer professional services described in C)(1)c) below, or 2) outside of the State of California.

C) Additional Definition

  (1) **Special Event** means: a) health or medical services related activity such as health fair or community-based health services event that the **Named Member** or **Subsidiary** has approved; b) an event or activity that is usual and customary to the **Named Member** or **Subsidiary's** business; c) volunteer professional services such as high school level sporting events or recreational summer camps that have been approved by the **Named Member** or **Subsidiary**; d) any event or activity approved by BETAʀᴍᴀ in advance of the event or activity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETAʀᴍᴀ

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**COVERED SUBSIDIARIES LIST**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H374-01 |
|---|---|

| **Issued to:**  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that coverage is afforded by this Contract to the following **Subsidiaries**:

*Health Research Associates, Inc., Keck Hospital of USC, USC Kenneth Norris, Jr. Cancer Hospital, USC Care Medical Group, Inc., USC Verdugo Hills Hospital, LLC, and USC Verdugo Hills Hospital*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

### AMENDMENT
### VERDUGO HILLS
### PROFESSIONAL LIABILITY CLAIMS

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H381-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

In consideration of the Contribution set forth on the Certificate of Participation, it is understood and agreed as follows:

1. Coverage under Section 2 - Healthcare Entity Professional Liability - is extended to:

   a. the following **Subsidiaries**: Verdugo Hills Health Services, Verdugo Hills Hospital, Verdugo Hills Support Services Corporation, Verdugo Hills Professional Buildings and Verdugo Hills Hospital Foundation (collectively "Verdugo Hills"); and

   b. the **Named Member** and **Subsidiaries** for such liability as they may have as legal successors to Verdugo Hills.

2. For the purpose of this Amendment only, Section 1.30 is amended to read as follows:

   **Retroactive Date** is the date specified for each **Subsidiary** on Amendment H201. No coverage is provided by this Contract with regard to any act, error or omission occurring prior to the **Retroactive Date**.

3. The Deductible for **Claims** based on actual or alleged negligence by Verdugo Hills in rendering or failing to render **Professional Services** before July 16, 2013, shall be $100,000 per **Claim**, indemnity and expense, subject to the Annual Aggregate specified in the Certificate of Participation. The Deductible for all other **Claims** shall be as specified in the Certificate of Participation.

4. This Amendment shall not increase the Limits of Liability specified in the Certificate of Participation or any other amendment.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ADDITIONAL MEMBER – USC VERDUGO HILLS HOSPITAL EMERGENCY ROOM
ON-CALL PHYSICIANS AND VOLUNTEER EMERGENCY ROOM PHYSICIANS**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H386-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed as follows:

1. Coverage is extended under Section 2 (Healthcare Entity Professional Liability) only to certain USC Verdugo Hills Hospital's emergency room on-call physicians or volunteer emergency room physicians as a **Member**, but only with respect to the following:

   (a) the **Member's** legal liability when acting within the scope of the **Member's** duties of providing emergency room services at USC Verdugo Hills Hospital, to other than the **Member's** own private patients, commencing with an initial emergency room visit and any subsequent hospital admission including subsequent surgical or delivery procedures and/or in-hospital follow-up care deemed necessary, resulting from and limited to the medical condition which initiated such initial emergency room visit;
   (b) coverage does not extend to out-of hospital treatment or telephone only consultation unless such consultation is first preceded by an actual in-hospital emergency treatment of the patient by such **Member**; and
   (c) coverage applies only to any **Member** directed by the **Named Member** or **Subsidiary** to perform such services.

2. As a condition of such coverage, the patient medical record must include the following minimum information:

   (a) Name of the **Member** for whom coverage is to be extended;
   (b) Admitting diagnosis; and
   (c) Documentation of medical procedures performed

3. It is further understood and agreed that the **Member's** Limit of Liability is *$1,000,000* per **Claim** and *$3,000,000* in the aggregate for all **Claims** first made against the **Member** during the **Contract Period** and reported to BETARMA in accordance with the terms of this Contract. The Limits of Liability are within and not in addition to the per **Claim** and aggregate Limit of Liability stated on the Certificate of Participation.

4. The coverage provided by this amendment should be deemed primary to any other insurance available to the **Member**. No coverage is extended under any other amendments or sections of this Contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

AMENDMENT

**UNIVERSITY OF SOUTHERN CALIFORNIA REIMBURSEMENT OF LEGAL EXPENSE FOR LICENSING OR REGULATORY BOARD OR AGENCY PROCEEDINGS**

| Certificate Number: HCL-17-807 | Amendment No: H432-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

**THIS AMENDMENT PROVIDES FOR REIMBURSEMENT OF LEGAL EXPENSE ONLY, ON A CLAIMS MADE AND REPORTED BASIS, RESULTING FROM A COVERED EVENT FIRST INSTITUTED AGAINST THE MEMBER DURING THE CONTRACT PERIOD AND REPORTED TO BETARMA NO LATER THAN THIRTY (30) CALENDAR DAYS AFTER THE TERMINATION OF THE CONTRACT PERIOD. THE COVERED EVENT MUST RESULT FROM ACTS THAT TAKE PLACE ON OR AFTER THE INDIVIDUAL MEMBER′S RETROACTIVE DATE AND BEFORE THE TERMINATION DATE OF THIS CONTRACT. PLEASE READ THIS AMENDMENT CAREFULLY.**

(Please note that terms in boldface are defined in Section F below or in Section 1 of the Contract. If there is a conflict between this Amendment and the Contract, the terms and conditions stated in this Amendment shall apply to the benefit provided by this Amendment.)

**A. BETARMA′s Basic Obligation: Legal Expense that BETARMA Will Reimburse is Subject to the Self-Insured Retention Stated in Section D Below, Unless Excluded Under Section B Below.**

BETARMA will reimburse each **Member** for **Legal Expense** incurred to defend a **Covered Event** arising out of the Individual **Member′s Professional Services** rendered on behalf of the **Named Member** or **Subsidiary** on or after the **Member′s** Retroactive Date. This Amendment applies only to **Covered Events** that are first instituted against the **Member** during the **Contract Period** and are reported in writing to BETARMA as soon as possible, and in no event later than thirty (30) calendar days after the termination of the **Contract Period**.

**B. EXCLUSIONS**

The **Legal Expense** reimbursement provided by this Amendment does not apply to:

   (1) Any **Covered Event** which arises out of any act, omission, circumstance or event occurring prior to the Effective Date of this Amendment, if:

   (a) On or before that date the **Member** was aware, or could have reasonably foreseen that the act, omission, circumstance or event could give rise to a **Covered Event**; and

   (b) BETARMA was not notified that the act, omission, circumstance or event could give rise to a **Covered Event**, in writing, prior to the Effective Date of this Amendment.

   (2) Any **Covered Event** solely involving actual or alleged:

   (a) Fraud involving medical benefit billing or willful non-compliance with Medi-Cal, Medicaid, Medicare or any similar statutes, regulations, or procedures. Medical benefit billing includes presenting or causing or

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

AMENDMENT

**UNIVERSITY OF SOUTHERN CALIFORNIA REIMBURSEMENT OF LEGAL EXPENSE FOR LICENSING OR REGULATORY BOARD OR AGENCY PROCEEDINGS**

| Certificate Number: HCL-17-807 | Amendment No: H432-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

allowing to be presented to a government health benefit payor or program any claim or document seeking payment or reimbursement for **Professional Services**;

(b) The timely completion of medical records; or

(c) Any application for initial placement on a medical staff.

(3) Any administrative or judicial proceeding convened to weigh the merits of a **Claim** by a third party for compensation arising out of injury or damage alleged to have been caused or contributed to by the **Member**.

(4) Any criminal action or proceeding against a **Member**. A criminal action or proceeding means any governmental action or proceeding for enforcement of criminal laws, including offenses for which conviction could result in imprisonment or fines.

(5) Any **Covered Event** conducted solely to determine the **Member's** entitlement to any fee or charge, whether paid or unpaid.

(6) Any **Covered Event** which arises out of the payment for services rendered to patients or the refund thereof, with respect to approval of admissions to a healthcare facility.

(7) The payment of any fines, recoupments, civil penalties, compensatory, punitive or exemplary damages, trebled damages or any other award or relief.

## C. CONDUCT OF DEFENSE

(1) BETARMA shall have no obligation to defend a **Member** in a **Covered Event**. The **Member** shall have the sole duty to defend a **Covered Event** and the sole right to select legal counsel. The **Member** hereby agrees to:

(a) Consult with BETARMA with respect to the selection of such counsel;

(b) Employ counsel only under reasonable fee arrangements;

(c) Direct such counsel to furnish periodic status reports to BETARMA with respect to the defense of the **Covered Event**;

(d) Furnish BETARMA with reasonable documentation of all **Legal Expense**; and

(e) Direct defense counsel to comply with all applicable provisions of BETARMA's Litigation Management

**BETA Risk Management Authority ("BETA**RMA**")**

A Public Entity

**AMENDMENT**

**UNIVERSITY OF SOUTHERN CALIFORNIA REIMBURSEMENT OF LEGAL EXPENSE**
**FOR LICENSING OR REGULATORY BOARD OR AGENCY PROCEEDINGS**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H432-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

Guidelines and to obtain such compliance by defense counsel.

(2) BETA**RMA**'s obligation to reimburse **Legal Expense** for a **Covered Event** shall commence at such time as BETA**RMA** receives written notification of the **Covered Event** from the **Named Member**, subject to satisfactory compliance with Section C. BETA**RMA** shall have no obligation to reimburse **Legal Expense incurred** by the **Member** prior to such notification.

(3) BETA**RMA** shall reimburse **Legal Expense** up to the maximum limit upon satisfactory proof of payment by the **Member**.

## D. LEGAL EXPENSE LIMITS OF THIS AMENDMENT

The maximum **Legal Expense** reimbursable is *$25,000* per **Covered Event** subject to a $1,000 per **Covered Event** self-insured retentions, regardless of the number of acts, omissions or incidents alleged in a **Covered Event**; provided, however, that in no event shall BETA**RMA**'s obligation for **Legal Expense** in all **Covered Events** first reported to BETA**RMA** during this **Contract Period** exceed *$25,000* in the aggregate per **Member** or *$500,000* in the aggregate for all **Members**.

Self-insured retentions paid by the **Member** are included as part of, and are not in addition to, the reimbursable **Legal Expense** per **Covered Event**.

The per-**Covered Event** reimbursable **Legal Expense** under this benefit shall apply separately to each individual **Member**.

## E. FALSE OR FRAUDULENT CLAIMS

If a **Member** commits fraud in reporting or submitting any **Covered Event** or request for reimbursement, regarding the amount thereof or otherwise, this Contract shall be void for that **Member**.

## F. ADDITIONAL DEFINITIONS

(1) **Covered Event** means a notice of investigation, an initial letter of inquiry or an administrative or judicial proceeding instituted by a government body responsible for licensure, regulation and professional discipline of physicians and other healthcare providers to examine allegations of:

(a) Improper professional conduct or competence in rendering or failing to render **Professional Services**; or

(b) The performance of **Professional Services** in violation of recognized standards of practice or established guidelines for the appropriate utilization of such services.

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**UNIVERSITY OF SOUTHERN CALIFORNIA REIMBURSEMENT OF LEGAL EXPENSE**
**FOR LICENSING OR REGULATORY BOARD OR AGENCY PROCEEDINGS**

| Certificate Number: HCL-17-807 | Amendment No: H432-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

**Covered Event** is considered to have been instituted at the time the **Member** receives a notice of investigation, an initial letter of inquiry or a notice of an administrative or judicial proceeding from one of the agencies specified in Section F. Additional Definitions, (1) above.

All proceedings, including any appeals, arising from the same or substantially similar or causally or logically related incidents or events shall be considered one **Covered Event**, regardless of the number of patients, complainants, boards, departments, agencies, or claimants involved.

(2) **Legal Expense** means the fees and expenses for legal services actually rendered by a licensed attorney or law firm engaged to prepare and conduct the defense of a **Covered Event**. It does not include any fine, penalty, award or judgment levied against the **Member**, or any fee or expense exceeding the reasonable and customary charges for similar legal services.

(3) For purposes of this Amendment only, the definition of **Member** in Section 7.1.A is amended to include the following:

(11) any individual who previously qualified as a **Member** under clauses (1) through (8) above prior to the termination of his or her relationship with the **Named Member** or **Subsidiary**, but only for **Covered Events** alleging or resulting from his or her acts or omissions occurring prior to the termination of the relationship specified in those subsections.

(12) any USC Care Medical Group healthcare provider when rendering **Professional Services** at Los Angeles County Hospital, subject to the requirements of Section 7.1.A.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
### PRODUCTS DEVELOPED THROUGH HEALTHCARE RESEARCH

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H437-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed that Exclusion 23 is deleted and is replaced by the following:

Except as provided in this Amendment, this Contract does not apply to any **Claim** that, directly or indirectly or in whole or in part, arises out of any **Product** developed or created through healthcare research conducted by any **Member**. However, this exclusion shall not apply to professional liability allegations made against a **Member** arising out of the **Member'**s care or treatment of a patient when the care or treatment includes utilization of a **Product** that was developed or created through healthcare research conducted by that **Member** or another **Member**. BETARMA will provide coverage for such professional liability allegations to the extent provided in Section 2 - Healthcare Entity Professional Liability - and subject to provisions of this Amendment and the other conditions and exclusions of this Contract.

If a **Claim** contains both professional liability and products liability allegations, then, notwithstanding any other provision of this Contract, BETARMA shall have no obligation to defend the **Claim**. Instead, BETARMA shall be obligated to pay only that portion of the total amount of damages, settlements, **Defense Expenses** and other costs and expenses (collectively "Loss") excess of the Deductible, incurred directly because of covered professional liability allegations that do not arise out of or relate to the **Product** ("Covered Loss"). The **Named Member**, and not BETARMA, shall be responsible for the balance of the Loss. The **Named Member** and BETARMA shall use their best efforts to agree on a fair and proper allocation of Covered Loss and Loss for which the **Named Member** is responsible.

*Example: A USC physician covered by this Contract participates in developing a hip replacement device, and the physician also subsequently performs a procedure in which the device is implanted into the body of a patient. The hip replacement fails, which causes the patient to suffer bodily injury. If the patient brings a* **Claim** *asserting both professional negligence and products liability resulting in bodily injury, this Contract will apply to the Covered Loss only. BETARMA and the* **Named Member** *will use their best efforts to make a fair and proper allocation of Covered Loss and the Loss for which the* **Named Member** *is responsible.*

If the **Named Member** and BETARMA cannot agree upon such an allocation:

   1. BETARMA shall advance on a current basis **Defense Expenses** which BETARMA believes to be covered under this Contract until a different allocation is negotiated or determined by arbitration;

   2. The **Member** and BETARMA shall submit the dispute to final and binding arbitration pursuant to the provisions of this Contract, except that, in the interest of quickly and efficiently resolving the dispute, completion of BETARMA's internal dispute resolution process shall not be required and the arbitration shall be before a single arbitrator chosen by BETARMA and the **Named Member**; and

   3. No presumption as to allocation shall exist in any arbitration.

Any negotiated or arbitrated allocation of **Defense Expenses** on account of a **Claim** shall be applied

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

## AMENDMENT
## PRODUCTS DEVELOPED THROUGH HEALTHCARE RESEARCH

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H437-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

retroactively to all **Defense Expenses** on account of that **Claim**, notwithstanding any previous advancement made on a different basis. Any allocation or advancement of **Defense Expenses** on account of a **Claim** shall not create any presumption with respect to the allocation of other Loss on account of the **Claim.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**CONTINUOUS COVERAGE FOR DEPARTED SLOTS**

| Certificate Number: HCL-17-807 | Amendment No: H438-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is agreed and understood that coverage afforded by this contract is extended to:

1. The Health Care Providers listed on the schedules attached to the H305 Amendments listed below, as **Member(s)**, as defined in Section 7.1, "Who is Protected Under This Contract," but only with respect to the Provider′s legal liability when acting within the course and scope of the Provider.s duties to the **Named Member** or **Subsidiary** during the period set forth and only to the extent the **Named Member** or **Subsidiary** is permitted or required by law to indemnify the Provider.

2. The Limits of Liability for each H305 Amendment slot will be $1,000,000 per **Claim** and $3,000,000 in the aggregate. Each H305 Amendment slot limit will be shared by all the applicable Providers listed on the corresponding slot schedule attached to each H305 Amendment listed below. Each H305 Amendment slot limit is in addition to, the Limits of Liability stated on the Certificate of Participation. However, for all acts, errors and omissions of a Provider when acting in a capacity specified in Section 7.1.A(1),(3),(4),(5) and (6) of this Contract, the Limits of Liability stated on the Certificate of Participation shall apply.

3. Except for the Health Care Providers under the **Member′s** Slot Coverage to whom coverage extended by any other provisions of the Contract, including any other amendment to the Contract.

4. It is further agreed and understood that if this Contract is terminated, all coverage for the **Member(s)** listed on Amendment No. H305 will cease unless the **Named Member** purchases an Extended Reporting Period in accordance with Section 7.20 . Limited Right to Extended Reporting Period.

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

## AMENDMENT
## CONTINUOUS COVERAGE FOR DEPARTED SLOTS

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H438-01 |
|---|---|

| | |
|---|---|
| **Issued to:** University of Southern California | |

| | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

| Slot Department/Name | HCL-14-807 Amendment No. | Retroactive Date | Termination Date |
|---|---|---|---|
| CVTI Cardiology - Fellow Slot #1 | H305-01 | 12/01/06 | 07/01/15 |
| Endocrinology - Fellow Slot #1 | H305-02 | 04/01/07 | 07/01/15 |
| Plastic Surgery - Resident Slot #1 | H305-03 | 07/01/01 | 07/01/15 |
| Colon Rectal Surgery - Resident Slot #1 | H305-06 | 11/01/02 | 07/01/15 |
| Reproductive Endocrinology - Fellow Slot #1 | H305-07 | 07/01/01 | 07/01/15 |
| Maternal Fetal Medicine - Fellow Slot #2 | H305-08 | 07/01/04 | 07/01/15 |
| Dermatology - Resident Slot #1 | H305-09 | 03/01/05 | 07/01/15 |
| Breast Surgery - Fellow Slot #1 | H305-10 | 07/01/06 | 07/01/15 |
| Diagnostic & Interventional Radiology - Fellow Slot #1 | H305-11 | 07/01/05 | 07/01/15 |
| Diagnostic & Interventional Radiology - Fellow Slot #2 | H305-12 | 07/01/07 | 07/01/15 |
| Vascular & Interventional Radiology - Fellow Slot #4 | H305-13 | 07/01/02 | 07/01/15 |
| Diagnostic Radiology - Resident Slot #5 | H305-15 | 07/01/03 | 07/01/15 |
| Evaluation & Treatment Center - Faculty Slot | H305-16 | 03/01/05 | 12/01/06 |
| Rheumatology - Fellow Slot | H305-17 | 07/01/07 | 07/01/15 |
| Psychiatry - Resident Slot | H305-18 | 11/13/07 | 07/01/15 |
| Plastic Surgery - Resident Slot #2 | H305-19 | 01/10/05 | 07/01/07 |
| Anesthesiology - Resident Slot | H305-20 | 07/01/10 | 07/01/15 |
| Nephrology - Fellow Slot | H305-21 | 07/01/91 | 07/01/15 |
| Urology - Resident Slot | H305-22 | 11/19/13 | 07/01/15 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**CLAIMS AGAINST INDIVIDUAL PROVIDERS AND CLAIMS AGAINST**
**NAMED MEMBER OR SUBSIDIARY BASED ON SAME OR RELATED ACTS**

| Certificate Number: HCL-17-807 | Amendment No: H441-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| Effective Date: 07/01/17 at 12:01 a.m. | Expiration Date: 07/01/18 at 12:01 a.m. | Additional Contribution: Per Contract |

It is understood and agreed as follows:

1. If BETARMA is notified of a **Claim** against a physician, surgeon or other individual healthcare provider who is covered under this Contract with Limits of Liability less than the Limits of Liability that apply to the **Named Member** or **Subsidiary** that holds legal responsibility for the acts of the individual provider ("the Provider"), and in the same **Contract Period** or a later **Contract Period**, BETARMA is notified of a **Claim** against the **Named Member** or **Subsidiary** based on the same acts, errors or omissions or series of related acts errors or omissions as the **Claim** against the Provider, the **Claim** against the **Named Member** or **Subsidiary** shall be deemed to have been made against the **Named Member** or **Subsidiary** and reported to BETARMA on the same date as the **Claim** against the Provider.

2. When a **Claim** to which Section 2–Healthcare Professional Liability–applies is made against a Provider for acts, errors or omissions within the scope of his or her duties to the **Named Member** or a **Subsidiary**, the Provider's written notice to BETARMA of the **Claim** shall be deemed to constitute written notice by the **Named Member** or **Subsidiary** of specific circumstances that may be reasonably expected to give rise to a **Claim** against the **Named Member** or **Subsidiary** pursuant to Section 1.5.B. of this Contract. If a covered **Claim** against a Provider results in a verdict or judgment in excess of the Limits of Liability available to the Provider under this Contract and the Provider tenders the excess verdict to the **Named Member** or a **Subsidiary**, the Limits of Liability available to the **Named Member** or **Subsidiary** under this Contract shall be available for the **Claim**, whether or not the **Claimant** has made a demand for damages against the **Named Member** or **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**

A Public Entity

**AMENDMENT**
**TELEMEDICINE ACTIVITIES**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H444-01 |
|---|---|

| Issued to: University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is understood and agreed as follows:

1. Exclusion 19 is hereby deleted.

2. USC Care Medical Group will require that all healthcare providers secure the approval of University of Southern California's Integrated Credentialing Committee before performing any **Professional Services** outside the State of California that include Telemedicine activities. University of Southern California's Integrated Credentialing Committee will track information relating to healthcare providers' **Professional Services** that include Telemedicine activities outside the State of California and will periodically report that information to BETARMA.

3. As used in this Amendment, Telemedicine means the use of telecommunication, excluding telephone communications, to provide medical information or **Professional Services**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETARMA")**
A Public Entity

**AMENDMENT**
**ADDITIONAL MEMBER - PROFESSIONAL LIABILITY ONLY WITH  SUBLIMITS**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H447-01 |
|---|---|

| Issued to:  University of Southern California | | |
|---|---|---|
| **Effective Date:** 08/07/17 at 12:01 a.m. | **Expiration Date:** 08/08/17 at 12:01 a.m. | **Additional Contribution:** Per Contract |

1. COVERAGE EXTENSION: It is understood and agreed that coverage under Section 2 (Healthcare Entity Professional Liability), only, is extended to *Venkatersh Ramaiah, M.D., as proctor for Transcarotid Artery Revascularization procedure*, ("**Member**") under Section 7.1 of the Contract, but only with respect to the **Member's** legal liability when acting within the course and scope of the **Member's** duties to the **Named Member** or **Subsidiary**.

2. LIMITS OF LIABILITY: It is further understood and agreed that the limit of liability for covered **Claims** under this Amendment is *$1,000,000* per **Claim** and *$3,000,000* in the aggregate. These Limits are within, not in addition to, the aggregate Limit of Liability stated on the Certificate of Participation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETARMA

**BETA Risk Management Authority ("BETA**ʀᴍᴀ**")**
A Public Entity

**AMENDMENT**
**EXTENDED REPORTING PROVISION APPLICABLE TO USC PHYSICIANS**

| Certificate Number:<br>HCL-17-807 | Amendment No:<br>H452-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

It is agreed and understood that Section 7 (Provisions Applicable To All Coverages), Item 20 Limited Right To Extended Reporting Period is amended as following.

## F. ADDITIONAL EXTENDED REPORTING PERIOD BENEFITS

a. Waiver of Extended Reporting Period Amendment Contribution in the Event of Disability

(1) If a covered physician becomes totally and permanently disabled during the **Contract Period** as a result of bodily injury and is therefore completely unable to continue practicing as a physician or surgeon, BETAʀᴍᴀ will provide the physician with an Extended Reporting Period Amendment without cost. However, BETAʀᴍᴀ must receive a written request from the **Named Member** that the physician is totally or permanently disabled for this benefit within ninety (90) calendar days following the physician′s disability effective date.

(2) BETAʀᴍᴀ will require the **Named Member** notify us if at any time in the future he or she resumes practicing as a physician at the **Named Member** facility.

b. Waiver of Extended Reporting Period Amendment Contribution in the Event of Death

In the event of a covered physician′s death during the **Contract Period** an Extended Reporting Period Amendment will be issued to the physician′s estate without any Contribution charge. This Extended Reporting Period Amendment will become effective on the date of the physician′s death. However, BETAʀᴍᴀ must receive a written request from the **Named Member** within ninety (90) calendar days after the physician′s death.

c. Waiver of Extended Reporting Period Amendment Contribution upon Retirement at Age 55

(1) If during the **Contract Period**, a covered physician chooses to retire completely from the practice of medicine, he or she may be eligible for a full waiver of the physician′s Extended Reporting Period Amendment Contribution. To be eligible the physician must at the time of the requested cancellation date:

   - Have been a **Member** for at least 12 months with BETAʀᴍᴀ;
   - Be at least 55 years of age;
   - Have had professional liability coverage for the previous sixty (60) consecutive months,
     including the last twelve (12) months with BETAʀᴍᴀ; and
   - Retire completely from the practice of medicine.

(2) BETAʀᴍᴀ must receive a written request for this benefit within ninety (90) days following the physician′s retirement date. If at any time in the future he or she resumes practicing as a physician to any extent, the physician will lose the right to this waiver as of the date he or she resumes practice and at such time will have the right to purchase an additional Extended Reporting Period Amendment upon payment of the full

**BETA Risk Management Authority ("BETA**RMA**")**
A Public Entity

**AMENDMENT**
**EXTENDED REPORTING PROVISION APPLICABLE TO USC PHYSICIANS**

| **Certificate Number:** HCL-17-807 | **Amendment No:** H452-01 |
|---|---|

| **Issued to:** University of Southern California | | |
|---|---|---|
| **Effective Date:** 07/01/17 at 12:01 a.m. | **Expiration Date:** 07/01/18 at 12:01 a.m. | **Additional Contribution:** Per Contract |

Contributions.

d. Waiver of Extended Reporting Period Amendment Contribution at Age 65

If during the **Contract Period**, a covered physician has reached age 65 and has been a **Member** with BETA RMA for at least sixty (60) consecutive months immediately prior to reaching age 65 or greater, the physician will receive a full unrestricted waiver of his or her Extended Reporting Period Amendment Contribution as of the cancellation date.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
Authorized Representative of BETA RMA