# EXHIBIT D

1

**MANLY, STEWART & FINALDI**
John C. Manly, Esq. (State Bar No. 149080)
Vince W. Finaldi, Esq. (State Bar No. 238279)
Alex E. Cunny, Esq. (State Bar No. 291567)
Jane E. Reilley, Esq. (State Bar No. 314766)
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

**FILED**
Superior Court of California
County of Los Angeles

RECEIVED
LOS ANGELES SUPERIOR COURT

MAY 08 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ , Deputy
Lori M'Greene

MAY 03 2019

S. DREW

2

3

4

5

6

**ARIAS SANGUINETTI WANG & TORRIJOS LLP**
Mike Arias (State Bar No. 115385)
Arnold Wang (State Bar No. 204431)
Alfredo Torrijos (State Bar No. 222458)
Katherine Harvey-Lee (State Bar No. 216135)
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045
Tel: 310-844-9696

7

8

9

**BY FAX**

10

Co-liaison attorneys for USC/TYNDALL PLAINTIFFS

11

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12

**IN AND FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| 13  JANE DOE 5, an individual; JANE DOE 6, an individual; JANE DOE 7, an individual; 14  JANE DOE 8, an individual; JANE DOE 9, an individual; JANE DOE 10, 15 | Lead Case No.:   BC705677 |
| | Judge:      Honorable Carolyn B. Kuhl  Department:   SSC-12 |
| 16      Plaintiffs, | Related to LASC Case Nos. BC706844; BC706849; BC706902; BC707321; |
| 17  v. | BC707655; BC707879; BC707880; BC707898; BC708525; BC708540; BC709671; BC709675; BC709765; |
| 18  DR. GEORGE TYNDALL, an individual; UNIVERSITY OF SOUTHERN 19  CALIFORNIA, a California Corporation; and DOES 1 through 500. 20 | BC709799; BC709897; BC709964; BC710178; BC710179; BC710279; BC710402; BC711667; BC711675; BC713383; BC713398; BC713449; BC714294; BC715073; BC715168; |
| 21      Defendants. | BC716639; BC711674; BC714157; BC707209; BC707887; BC711979; |
| 22 | BC713379; BC713757; BC714641; BC714641; BC714641; BC714892; |
| 23 | BC714893; BC714894; BC715160; BC715218; BC716625; BC71731O; |
| 24 | BC714891; BC722439; BC714642; BC711202; BC719408; BC722780; |
| 25 | BC715163; BC719105; BC719858; BC714643; BC720789; BC721320; |
| 26 | BC720105; 18STCV01202; 18STCV02975;18STCV01344;18STCV010 90; 18STCV03156; 18STCV01904; |
| 27 | |
| 28 | **MASTER COMPLAINT FOR DAMAGES FOR:** |

-1-
**MASTER COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16          AND RELATED CASES.

17

|     |                                                      |
| --- | ---------------------------------------------------- |
| 1)  | **VIOLATION OF UNRUH ACT** (*CIVIL CODE* § 51);      |
| 2)  | **VIOLATION OF BANE ACT** (*CIVIL CODE* §52.1);      |
| 3)  | **GENDER VIOLENCE** (*CIVIL CODE* § 52.4);           |
| 4)  | **SEXUAL HARASSMENT** (*CIVIL CODE* § 51.9);         |
| 5)  | **SEXUAL BATTERY** (*CIVIL CODE* § 1708.5);          |
| 6)  | **UNFAIR BUSINESS PRACTICES** (*BUSINESS & PROFESSIONS CODE* § 17200); |
| 7)  | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**    |
| 8)  | **CONSTRUCTIVE FRAUD** (*CIVIL CODE* § 1573);        |
| 9)  | **NEGLIGENCE;**                                      |
| 10) | **NEGLIGENT SUPERVISION;**                           |
| 11) | **NEGLIGENCE *PER SE*— CONDUCT IN VIOLATION OF MANDATED REPORTING LAWS;** |
| 12) | **NEGLIGENT HIRING/ RETENTION;**                     |
| 13) | **NEGLIGENT FAILURE TO WARN, TRAIN OR EDUCATE;**     |
| 14) | **INVASION OF PRIVACY;**                             |
| 15) | **AIDING AND ABETTING; AND**                         |
| 16) | **FRAUDULENT CONCEALMENT.**                          |

**DEMAND FOR JURY TRIAL.**

18          **COME NOW**, PLAINTIFFS, who complain and allege as follows:

19                    <u>**GENERAL ALLEGATIONS AS TO THE PARTIES**</u>

20          1.          This action seeks to vindicate the rights of hundreds of female patients who were

21   sexually abused, harassed, and molested at the hands of a serial sexual predator, Defendant DR.

22   GEORGE TYNDALL (hereinafter referred to as, "TYNDALL" or "THE PERPETRATOR"),

23   while they were seeking medical treatment at Defendant UNIVERSITY OF SOUTHERN

24   CALIFORNIA's (hereinafter referred to as "USC") Student Health Center. While they were

25   students, most of whom were young, each Plaintiff who has adopted this Master Complaint

26   ("PLAINTIFF") was forced to seek medical treatment from TYNDALL, due to the fact that he

27   was the only full-time gynecologist with regular availability on staff at USC's Student Health

28   Center and USC scheduled visits with him. TYNDALL used this position of trust and authority to

-2-

**MASTER COMPLAINT**

1    repeatedly sexually abuse his patients for nearly thirty years, by engaging in acts that include, but

2    are not limited to: forcing his patients to undress completely in front of him while he watched;

3    groping his patients' breasts; digitally penetrating his patients' vaginas and anuses, often without

4    wearing gloves and with unwashed hands; photographing his patients' genitals and naked bodies;

5    and making racist, misogynistic, and sexually-harassing comments to his patients. All of the

6    foregoing acts served no legitimate medical purpose, were generated by an outgrowth of his

7    workplace responsibilities, conditions or events, and were committed to satisfy TYNDALL's own

8    prurient sexual desires. Despite the fact that USC has publicly admitted that it received numerous

9    documented complaints of TYNDALL's sexually abusive behavior dating back to at least the year

10   2000, and that such complaints are now known to have existed as early as the year 1988, USC

11   actively and deliberately concealed TYNDALL's sexual abuse of female student patients for years,

12   continuing to grant TYNDALL unfettered sexual access to the young students in his and USC's

13   care, all to protect Defendant USC's reputation and financial coffers.

14            **DEFENDANT, DR. GEORGE TYNDALL—THE PERPETRATOR**

15        2.      TYNDALL, at all times mentioned herein, was and is an adult male individual,

16   whom the PLAINTIFF is informed and believes, and on that basis alleges, lived in the State of

17   California during the period of time during which the sexual abuse, harassment, and molestation

18   alleged herein took place, and is currently a citizen of the State of California.

19        3.      PLAINTIFF is informed and believes, and on that basis alleges, that TYNDALL

20   received his medical degree from the Medical College of Pennsylvania in 1985 and completed his

21   medical residency in Obstetrics and Gynecology at Kaiser Foundation Hospital in Los Angeles,

22   California, in 1989. Upon completion of his residency, TYNDALL was hired by USC as a full-

23   time gynecologist at USC's Student Health Center, and was employed in that capacity until June

24   30, 2017, when USC allowed TYNDALL to quietly resign, with a financial settlement paid by

25   USC, in a deliberate attempt to continue to conceal TYNDALL's sexual abuse from PLAINTIFF;

26   the Trojan family of students, alumni, donors, and supporters of USC in the community; law

27   enforcement; the California Medical Board; and the public at large.

28        4.      During his nearly thirty years at USC, PLAINTIFF is informed and believes, and

-3-

**MASTER COMPLAINT**

1   on that basis alleges, that TYNDALL sexually abused and molested hundreds of young female

2   students, including PLAINTIFF, through use of his position, authority and trust as the only full-

3   time gynecologist with regular availability employed by USC student health services. It was only

4   in June of 2017, when USC paid TYNDALL a substantial financial settlement so that he would

5   quietly resign—motivated by USC's desire to continue to actively conceal the myriad complaints

6   they had received of TYNDALL's sexually abusive behavior—that TYNDALL's systematic

7   sexual abuse and molestation of his young female patients finally ceased.

8       5.   At all times herein alleged, TYNDALL was an employee, agent, and/or servant of

9   USC and DOES 1 through 500, and/or was under their complete control and/or direct supervision.

10  At all times relevant hereto, TYNDALL was acting in the course and scope of his authority,

11  agency, service, and/or employment for USC.

12      6.   In the alternative, at all times herein alleged, TYNDALL was an apparent or

13  ostensible agent of USC and DOES 1 through 500. PLAINTIFF was led to believe that TYNDALL

14  was employed by USC and DOES 1 through 500, given that TYNDALL worked in the USC

15  Student Health Center, wore a USC doctor's name tag, and held himself out to be working for

16  USC and DOES 1 through 500.

17      7.   PLAINTIFF is informed and believes, and on that basis alleges, that TYNDALL

18  was retained by USC as a research assistant, and then as a Gynecological Physician and to provide

19  medical care and treatment to the young women attending USC and other nearby colleges as

20  undergraduate and graduate students, most of whom were very young adults and many of whom

21  had never received any gynecological treatment before, while in his care. It was through this

22  position of trust and confidence that TYNDALL exploited PLAINTIFF and perpetrated his sexual

23  abuse, molestation, and harassment upon PLAINTIFF. All of the sexually abusive and harassing

24  conduct alleged herein was done for TYNDALL's sexual gratification and was based upon the

25  gender of PLAINTIFF. TYNDALL's conduct alleged herein was generated by or an outgrowth of

26  his workplace responsibilities, conditions, or events.

27      8.   PLAINTIFF is informed and believes, and on that basis alleges, that TYNDALL

28  has been under criminal investigation by the Los Angeles Police Department since May of 2018,

-4-

1 and that the Los Angeles County District Attorney's office currently is seeking a criminal

2 indictment of TYNDALL via grand jury proceedings, based upon the sexually abusive conduct

3 alleged herein. PLAINTIFF is informed and believes, and on that basis alleges that, upon raiding

4 TYNDALL's self-storage facility in furtherance of its criminal investigation, the Los Angeles

5 Police Department discovered a trove of homemade pornography, including numerous

6 photographs of naked women taken during medical examinations at USC's Student Health Center.

7 These stored photographs are in addition to the photographs of patients USC admits that it found

8 long ago in TYNDALL's office at USC's Student Health Center. The Plaintiff is informed and

9 believes, and on that basis alleges, that these naked photographs were obtained by TYNDALL

10 under the guise of providing medical treatment, but in fact were not taken for any legitimate

11 medical purpose.

12  9. In the event that TYNDALL is prosecuted and convicted of a felony for the conduct

13 alleged herein, PLAINTIFF requests leave to amend the instant Complaint, such that a request for

14 attorneys' fees can be made against TYNDALL pursuant to *Code of Civil Procedure* § 1021.4.

15    **DEFENDANT, UNIVERSITY OF SOUTHERN CALIFORNIA**

16  10. PLAINTIFF is informed and believes, and on this basis alleges, that USC at all

17 times mentioned herein was and is a California Corporation, having its principal place of business

18 in the State of California, County of Los Angeles.

19  11. USC is a private research university, established in 1880, located in Los Angeles,

20 California. USC proclaims itself to be "one of the world's leading private research universities.

21 An anchor institution in Los Angeles, a global center for arts, technology and international

22 business, USC's diverse curricular offerings provide extensive opportunities for interdisciplinary

23 study and collaboration with leading researchers in highly advanced learning environments."

24 USC's Code of Ethics states: "we aspire to create an environment in which racism, sexism, ageism,

25 xenophobia and homophobia do not go unchallenged." Moreover, USC claims that its University

26 Policies "have been established to create a safe and productive academic and work environment.

27 All university employees and students are expected to be familiar with these policies and to follow

28 them." Further, USC purports to have a $5.1 billion endowment as of June 30, 2017, a $4.9 billion

1    budget for the 2017-2018 fiscal year, and $764 million in sponsored research for the 2017-2018

2    fiscal year.

3          12.    While charging its undergraduate students one of the highest tuition costs in the

4    United States—$74,825 in tuition and fees, per year, including a mandatory student health fee,—

5    USC holds itself out to be one of the world's most elite, prestigious and reputable higher learning

6    institutions. Importantly, USC promotes itself as not only an elite university but one which

7    uniquely provides a close-knit community. One is not merely a student at USC, but a part of the

8    USC family: The Trojan Family. Yet, in contravention to this family identity fostering expectations

9    of trust and protection, USC actively concealed the fact that it employed TYNDALL, a serial

10   sexual predator, as a gynecologist at its Student Health Center, and USC continued to permit him

11   unfettered sexual access to its young female students for nearly thirty years under the guise of

12   quality medical care. USC chose to protect its public image rather than protect the youngest, most

13   vulnerable members of its family.

14         13.    Furthermore, USC marketed and promoted its Engemann Student Health Center

15   and its predecessor institution ("Student Health Center"), as a safe, affordable and convenient

16   healthcare provider where its students, and students of other colleges, could obtain medical

17   treatment. The Student Health Center is an especially critical resource for young female students,

18   many of whom are living away from home for the first time and require safe, direct, and private

19   access to crucial gynecological and reproductive health treatment. USC's Student Health Center's

20   own website proclaims: "Structured for students currently registered for classes, our focus is to

21   help students maintain an optimum level of physical and mental health and to guide them in

22   maintaining a healthy lifestyle." USC "encourage[s] students to use [the Student Health Center] as

23   their primary source of health care while studying at USC." USC represents that the Student Health

24   Center provides "caring, comprehensive, gynecological care delivered by a team of specialists

25   [and] [r]outine gynecological examinations including pap smears, pelvic examination and breast

26   exams, are conducted by caring professionals experienced in woman's health." USC's Student

27   Health Center "serves those students who are registered for classes and who have paid the Student

28   Health Fee"; thus, USC requires its students to pay a premium above and beyond the $74,825 that

they pay in tuition and fees in order to receive medical treatment at the Student Health Center. USC does not waive or reduce their "Student Health Fee" even for those students who qualify as low-income, making clear that USC prioritizes its own financial gain over the health and safety of its students at every juncture.

14.     The Mission Statement of USC's Student Health Center states: "Student Health's mission is to provide high quality, cost-effective and client-oriented services and resources in health promotion, disease prevention, primary care and counseling to the student community. We help facilitate the completion of your academic career at USC by promoting a healthy lifestyle and caring for your physical and psychological illnesses and concerns." USC's Student Health Center also provided medical treatment to students of other area colleges, including but not limited to Mount Saint Mary's College, in order to generate even more revenue. In doing so, USC actively and fraudulently represented itself to be a safe, secure environment where other colleges could send their students for medical treatment without fear of being subjected to sexual abuse, assault, or harassment.

15.     At all times during his employment with the Student Health Center, USC held TYNDALL out to be a trustworthy and legitimate gynecological physician; indeed, by making TYNDALL the only full-time gynecologist with regular availability on staff at USC's Student Health Center and scheduling patient visits with him, USC forced its young female students to place their trust and confidence in TYNDALL in order to receive medical care. While falsely representing that TYNDALL was a trustworthy, safe, and legitimate physician, USC concealed numerous complaints lodged by female student patients as well as concerns voiced by staff and nurses at the Student Health Center about TYNDALL's sexual abuse, which date back to at least 1988, before USC had even hired TYNDALL as a gynecologist in its Student Health Center.

16.     PLAINTIFF is informed and believes, and on this basis alleges, that USC received myriad complaints of TYNDALL's sexually abusive nature, and therefore knew of TYNDALL's dangerous propensity to sexually abuse his young female patients, as early as 1988. Indeed, in its publicly-released May 15, 2018 Statement of Facts, USC admitted that the school's "2016 investigation concluded that Dr. Tyndall had violated the university's policy on harassment by

-7-

**MASTER COMPLAINT**

1    making repeated racially discriminatory and sexually inappropriate remarks during patient

2    encounters. Additionally, medical assistants who assisted Dr. Tyndall during clinical visits

3    reported concerns during interviews about the way he conducted pelvic examinations. Specifically,

4    these medical assistants questioned Dr. Tyndall's practice of digital insertion prior to using a

5    speculum... During the 2016 investigation, a box of clinical photos of cervixes and surrounding

6    internal tissue from 1990-1991 were found during a search of Dr. Tyndall's office... [A] review of

7    the files kept by Dr. Larry Neinstein, the former health director from 1995-2014 (who is now

8    deceased), showed earlier patient complaints about Tyndall, including complaints about his

9    clinical practice. The files contained eight complaints logged between 2000 and 2014 that were

10   concerning... Several of the complaints were concerning enough that it is not clear today why the

11   former health center director permitted Tyndall to remain in his position."

12          17.     Despite the foregoing knowledge, PLAINTIFF is informed and believes, and on

13   this basis alleges, that USC never once reported TYNDALL to law enforcement, or to the Medical

14   Board of California, during TYNDALL's nearly thirty-year tenure at USC. As admitted by USC

15   in its May 15, 2018 Statement of Facts, "[r]ather than elevate these complaints [against

16   TYNDALL] for proper investigation, the former director's notes indicated that in each case he

17   took steps to address TYNDALL's behavior independently." USC's failure to report TYNDALL

18   is particularly egregious, in light of the fact that its President, C.L. Max Nikias, has publicly

19   admitted, in his May 18, 2018 letter to the USC Community, that Tyndall "should have been

20   removed and referred to authorities years ago...You deserved better, and we let you down."

21          18.     PLAINTIFF is informed and believes, and on this basis alleges, that USC benefitted

22   financially from retaining TYNDALL as a gynecologist with its Student Health Center by offering

23   his services to USC's female students and patients, at those students' and patients' expense.

24   PLAINTIFF further is informed and believes, and on this basis alleges, that USC benefitted

25   financially from actively concealing myriad complaints of sexual abuse and other inappropriate

26   conduct made by its female students against TYNDALL by protecting its own reputation and

27   financial coffers. USC's deliberate and fraudulent concealment included, but was not limited to,

28   paying TYNDALL a financial settlement so that he would quietly resign, after USC's 2016

-8-
**MASTER COMPLAINT**

1   investigation revealed that TYNDALL routinely made sexually and racially inappropriate remarks
2   to patients, kept a secret box full of photographs of his patients' genitals, and had documented
3   complaints against him lodged to USC dating back to at least the year 2000. USC hid the
4   complaints despite the fact that many of the complaints came directly from its own employees and
5   staff, including nurses and medical assistants who were physically present during the examinations
6   as "chaperones," and witnessed the sexual misconduct firsthand. USC paid TYNDALL this
7   financial settlement in a deliberate attempt to conceal from PLAINTIFF, and the public at large,
8   that TYNDALL was a serial sexual predator deliberately and/or recklessly placed within The
9   Trojan Family's midst, in order to avoid criminal consequences, civil liability, and irreparable
10  damage to its reputation.

11                          **DOE DEFENDANTS 1 THROUGH 500**

12          19.     Defendants DOES 1 through 500, inclusive, and each of them, are sued herein
13  under said fictitious names. PLAINTIFF is ignorant as to the true names and capacities of DOES
14  1 through 500, whether individual, corporate, associate, or otherwise, and therefore sue said
15  Defendants by such fictitious names. When their true names and capacities are ascertained,
16  PLAINTIFF will request leave of Court to amend this Complaint to state their true names and
17  capacities herein.

18          20.     TYNDALL, USC, and DOES 1 through 500, inclusive, are sometimes collectively
19  referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to
20  all specifically named Defendants as well as those fictitiously named herein.

21          21.     PLAINTIFF is informed and believes, and on this basis alleges, that at all times
22  mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences
23  herein alleged, and that PLAINTIFF's damages, as herein alleged, were proximately caused by all
24  said Defendants.

25          22.     At all times mentioned herein, each and every Defendant was an employee, agent
26  (actual and/or apparent or ostensive), and/or servant of USC and DOES 1 through 500, inclusive,
27  and/or was under their complete control and/or active supervision. Defendants are individuals,
28  corporations, partnerships, and/or other entities that engaged in, joined in, and conspired with other

1    Defendants and wrongdoers in carrying out the tortious and unlawful activities described in this

2    Complaint.

3         23.    PLAINTIFF is informed and believes, and on this basis alleges, that at all times

4    mentioned herein, there existed a unity of interest and ownership among Defendants such that any

5    individuality and separateness between Defendants ceased to exist. Defendants were the

6    successors-in-interest and/or alter egos of the other Defendants, in that they purchased, controlled,

7    dominated and operated each other without any separate identity, observation of formalities, or

8    other manner of division. To continue maintaining the facade of a separate and individual existence

9    between and among Defendants would serve to perpetrate a fraud and injustice.

10        24.    PLAINTIFF is informed and believes, and on this basis alleges, that at all times

11    mentioned herein, TYNDALL, USC and DOES 1 through 500 were the actual and/or apparent

12    agents, representatives and/or employees of each and every other Defendant. In doing the things

13    hereinafter alleged, Defendants were acting within the course and scope of said alternative

14    personality, capacity, identity, agency, representation, and/or employment and were within the

15    scope of their authority, whether actual or apparent.

16        25.    PLAINTIFF is informed and believes, and on this basis alleges, that at all times

17    mentioned herein, TYNDALL, USC, and DOES 1 through 500 were the trustees, partners,

18    servants, joint venturers, shareholders, contractors, actual and/or apparent agents and/or employees

19    of each and every other Defendant, and the acts and omissions herein alleged were done by them,

20    acting individually, through such capacity and within the scope of their authority, and with the

21    permission and consent of each and every other Defendant and that said conduct was thereafter

22    ratified by each and every other Defendant, and that each of them is jointly and severally liable to

23    PLAINTIFF.

24        26.    At all times material hereto, PLAINTIFF was a patient of USC's Student Health

25    Center and was under Defendants USC, TYNDALL's, and DOES 1 through 500's complete

26    control, dominion, and supervision. TYNDALL worked for, was employed by, and/or an actual

27    and/or apparent or ostensive agent/servant of the Defendants USC's Student Health Center and/or

28    DOES 1 through 500, when TYNDALL came into contact with the Plaintiff.

**MASTER COMPLAINT**

27.     PLAINTIFF is informed and believes, and on this basis alleges, that at all times material hereto, TYNDALL was under the direct supervision, management, agency, and control of Defendants USC and DOES 1 through 500, inclusive. PLAINTIFF is informed and believes, and on this basis alleges, that TYNDALL was hired, employed, supervised, and retained by Defendant USC, and DOES 1 through 500. In this capacity, TYNDALL's employment duties included providing gynecological care to young female patients, including PLAINTIFF. The purported care offered by TYNDALL included, but was not limited to, conducting gynecological examinations to the female patients of USC's Student Health Center and DOES 1 through 500, which included PLAINTIFF. PLAINTIFF was a patient of USC's Medical Center and DOES 1 through 500, and it is under these circumstances that PLAINTIFF came to be under the direction and control of TYNDALL, who used his position of authority and trust to sexually abuse PLAINTIFF.

28.     As a patient of USC's Student Health Center and DOES 1 through 500, PLAINTIFF was under TYNDALL's direct supervision, control, and care, which created a special, confidential, and fiduciary relationship between PLAINTIFF and TYNDALL. Because of such relationship, TYNDALL owed PLAINTIFF a duty of care. Additionally, as the employers and supervisors of TYNDALL, who had knowledge that he was in contact with and providing medical care to young female patients, Defendants USC and DOES 1 through 500 were also in a special, confidential, and fiduciary relationship with PLAINTIFF, and thereby owed PLAINTIFF a duty of care.

29.     By employing TYNDALL and assigning him to be the sole full-time gynecologist with regular availability at USC's Student Health Center and by scheduling patient visits with him, Defendants USC and DOES 1 through 500 represented to its students, its patients, and the community at large, that TYNDALL was safe, trustworthy, and of high moral and ethical repute, such that patients need not worry about entrusting TYNDALL with their gynecological care. Defendants did so in order to preserve their own public image and reputation, so that they could retain past patients and recruit new patients, and so that they could ensure that donations and other financial support would continue to flow into their coffers for their own financial gain.

-11-
**MASTER COMPLAINT**

1       30.     PLAINTIFF is informed and believes, and on that basis alleges, that Defendants

2   knew or should have known that TYNDALL had engaged in unlawful sexually-abusive conduct

3   in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose

4   these facts to PLAINTIFF and others, including the Medical Board of California and/or law

5   enforcement, but negligently and/or intentionally suppressed, concealed, or failed to disclose this

6   information. The duty to disclose this information arose from the special, trusting, confidential,

7   fiduciary relationship between Defendants and PLAINTIFF.

8       31.     The specific factual allegations that pertain to PLAINTIFF's case, beyond those

9   alleged herein, are set forth in PLAINTIFF's Notice of Adoption Form.

10      32.     PLAINTIFF is informed and believes, and on that basis alleges, that while

11  PLAINTIFF was a patient of Defendants USC, TYNDALL, and DOES 1 through 500, Defendants

12  USC and DOES 1 through 500 engaged in a pattern and practice of ignoring complaints, failing to

13  investigate sexual harassment and abuse complaints, deliberately concealing information from

14  abuse victims as well as law enforcement and the Medical Board of California, and contributed to

15  a sexually hostile environment on campus at USC.

16      33.     It is upon information, and therefore belief, that the improper handling of sexual

17  harassment and sexual abuse allegations was, and is, a systemic issue within Defendants USC and

18  DOES 1 through 500. This pattern and practice of mishandling sexual misconduct allegations was

19  evidenced by, *inter alia,* the U.S. Department of Education's 2013 investigation of USC's handling

20  of numerous rape cases, during which over 100 USC students came forward to complain of USC's

21  "gross mishandling" of those rape cases.

22      34.     Furthermore, PLAINTIFF is informed and believes, and on that basis alleges, that

23  USC's active concealment of the numerous complaints lodged against TYNDALL throughout

24  TYNDALL's employment illustrates that USC had—and continues to have—a culture of ignoring,

25  minimizing and sanitizing complaints made by sexual abuse victims and USC Student Health

26  Center staff members, including so-called "chaperones". By USC's own admission, in the course

27  of its belated 2016 investigation of complaints against TYNDALL, "a review of files kept by Dr.

28  Larry Neinstein, a former health center director from 1995-2014 (who is now deceased), showed

1    earlier patient complaints about TYNDALL, including complaints about his clinical practice. The

2    files contained eight complaints logged between 2000 and 2014 that were concerning." Even more

3    egregiously, a patient lodged a written complaint against TYNDALL to USC in 1988, before USC

4    hired TYNDALL as a full-time employee, yet USC still hired TYNDALL as its Student Health

5    Center's full-time gynecologist the following year. Despite the fact that TYNDALL's direct

6    supervisor, Dr. Neinstein, possessed documented complaints against TYNDALL dating back to at

7    least the year 2000, and that other complaints dating back to at least 1988 were also lodged with

8    USC against TYNDALL, USC continued to retain TYNDALL as a gynecologist at its Student

9    Health Center, thereby granting TYDNALL unfettered sexual access to its young female patients.

10        35.    PLAINTIFF is informed and believes, and on that basis alleges, that Defendants

11    knew, or should have known, of TYNDALL's propensity and disposition to engage in sexual

12    misconduct with young female patients before he sexually abused and molested PLAINTIFF, and

13    knew of the probability that he would sexually abuse patients with whom he came into contact,

14    including but not limited to PLAINTIFF. Namely, by USC's own admission, numerous

15    documented complaints were lodged with USC regarding TYNDALL's sexually abusive and

16    harassing behavior, which PLAINTIFF now knows on information and belief date back to at least

17    the year 1988. Moreover, PLAINTIFF is informed and believes that, on many of the occasions that

18    TYNDALL sexually abused a patient at USC's Student Health Center, a USC-employed

19    chaperone was present, witnessing the sexual abuse yet remaining silent and taking no real action

20    to stop TYNDALL's abusive conduct.

21        36.    Defendants failed to implement reasonable safeguards to avoid acts of unlawful

22    sexual conduct by TYNDALL in the future, which could have included avoiding placement of

23    TYNDALL in a position where contact and interaction with vulnerable patients and students is an

24    inherent function, and potential outgrowth of his employment responsibilities. Defendants ignored

25    and suppressed myriad reports of the past sexual misconduct TYNDALL had engaged in.

26        37.    PLAINTIFF is informed and believes, and on that basis alleges, that Defendants

27    were apprised, knew or should have known, and/or were put on notice of TYNDALL's past sexual

28    abuse of young patients, past complaints, investigations of such abuse, and/or his propensity and

-13-

**MASTER COMPLAINT**

1    disposition to engage in such unlawful activity and unlawful sexual activity with patients, such

2    that Defendants knew or should have known that TYNDALL would commit wrongful sexual acts

3    with young patients, including PLAINTIFF. PLAINTIFF is informed and believes, and on that

4    basis alleges, that personnel and/or employment records and other records of Defendants' reflect

5    numerous incidents of inappropriate sexual contact and conduct with patients by TYNDALL and

6    other professionals, employees, assistants, agents, supervisors, and others, on the physical

7    premises of such Defendants. Based on these records, Defendants knew and/or should have known

8    of TYNDALL's history of sexual abuse, past claims and/or past investigations, and his propensity

9    and disposition to engage in unlawful activity and unlawful sexual activity with patients, such that

10   Defendants knew or should have known that TYNDALL would commit wrongful sexual acts with

11   those patients, including PLAINTIFF.

12        38.    Because of the special relationship between PLAINTIFF and Defendants,

13   Defendants had an obligation and duty under the law not to hide material facts and information

14   about TYNDALL's past, and his deviant sexual behavior and propensities, from PLAINTIFF.

15   Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate

16   protective measures to safeguard patients who were reasonably likely to come in contact with

17   TYNDALL, including but not limited to PLAINTIFF Defendants willfully refused to notify

18   PLAINTIFF, give adequate warning, and/or implement appropriate safeguards, thereby creating

19   the peril that ultimately damaged PLAINTIFF.

20        39.    Additionally, USC's own Code of Conduct mandates that "no faculty member may

21   commit sexual assault, defined as any physical sexual act (including, but not limited to, actual or

22   attempted intercourse, sexual touching, fondling, or groping) perpetrated upon a person." USC's

23   own Code of Ethics further states: "At the University of Southern California, ethical behavior is

24   predicated on two main pillars: a commitment to discharging our obligations to others in a fair and

25   honest manner, and a commitment to respecting the rights and dignity of all persons. As faculty,

26   staff, students, and trustees, we each bear responsibility not only for the ethics of our own behavior,

27   but also for building USC's stature as an ethical institution." In direct contravention of their own

28   Codes, USC actively concealed TYNDALL's sexually abusive behavior for nearly thirty years,

1  thereby exposing the Plaintiff, along with hundreds of other young patients, to TYNDALL's sexual

2  abuse.

3      40.    PLAINTIFF is informed and believes, and on that basis alleges, that as part of

4  Defendants' conspiratorial and fraudulent attempt to hide TYNDALL's propensity to sexually

5  abuse and molest young patients from public scrutiny and criminal investigation, Defendants

6  implemented various measures designed to make TYNDALL's conduct harder to detect and

7  ensure that other patients with whom he came into contact, including PLAINTIFF, would be

8  sexually abused, including:

    a.  Permitting TYNDALL to remain in a position of authority and trust after Defendants knew or should have known that he sexually abused numerous young patients of USC's Student Health Center;

    b.  Placing TYNDALL in a separate and secluded environment at USC and granting him unfettered access and control over patients even when he was purporting to administer extremely sensitive gynecological treatment, thereby allowing TYNDALL to physically and sexually interact with the young patients of USC's Student Health Center, including PLAINTIFF;

    c.  Failing to disclose and actively concealing TYNDALL's prior record of misconduct, sexual abuse, harassment and molestation and his propensity to commit such acts towards patients in USC's Student Health Center, from its students, its patients, the public at large, and law enforcement;

    d.  Allowing TYNDALL to have unfettered and uncontrolled access to USC's Student Health Center's young patients, including PLAINTIFF;

    e.  Holding out TYNDALL to PLAINTIFF, other students and patients at USC and DOES 1 through 500, the alumni members of the Trojan family, and the public at large as a trustworthy and honest person of high ethical and moral repute who provided expert gynecological care and was capable and worthy of being granted unsupervised access to the patients of USC's Student Health Center;

    f.  Failing to promptly and properly investigate or otherwise confirm or deny such facts about TYNDALL, including prior complaints, claims, and investigations for sexual abuse;

    g.  Failing to promptly inform, and actively concealing from PLAINTIFF, law enforcement officials, and the Medical Board of California the fact that PLAINTIFF and others were or may have been sexually abused, harassed, and molested, after Defendants knew or should have known TYNDALL may have sexually abused PLAINTIFF or others, thereby (i) enabling PLAINTIFF to continue to be endangered and sexually abused, harassed, and/or molested and/or (ii) creating the circumstance where PLAINTIFF and others were less likely to receive proper medical treatment, thus exacerbating the harm to PLAINTIFF;

    h.  Holding out TYNDALL to PLAINTIFF and to the community as being in good standing and trustworthy;

-15-

**MASTER COMPLAINT**

i.   Cloaking TYNDALL's prior sexual misconduct with patients within the facade of normalcy, thereby disguising the nature of his sexual abuse and inappropriate contact with young patients;

j.   Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by TYNDALL, such as avoiding placement of TYNDALL in functions or environments in which his intimate contact with young patients was inherent; and

k.   Failing to put in place a system or procedure to supervise or monitor Defendants' physicians including TYNDALL, employees, chaperones, and agents (whether actual or ostensive/apparent) to insure they do not molest or abuse patients in Defendants' care, and that they further report all reasonable suspicions of sexual assault and battery to law enforcement pursuant to *Penal Code* § 11160 and to the Medical Board of California, as necessary.

41.   By and through his position within the Defendants' institutions, TYNDALL attained a position of influence over PLAINTIFF, and other young patients. Defendants' conduct created a situation of peril that was not, and could not, be appreciated by PLAINTIFF. By virtue of Defendants' conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and conceal TYNDALL's past and present conduct from the community, the Trojan Family, the public at large, and law enforcement, Defendants allowed TYNDALL to remain in a position of influence where his unsupervised or negligently-supervised conduct with patients resulted in the sexual abuse of those individuals, including PLAINTIFF, possible.

42.   By virtue of TYNDALL's position as the only full-time gynecological physician with regular availability at USC's Student Health Center, Defendants including TYNDALL demanded and required that PLAINTIFF respect TYNDALL. In fact, PLAINTIFF had no choice but to see TYNDALL, because USC and Defendant DOES 1-500 assigned and/or scheduled PLAINTIFF to TYNDALL as PLAINTIFF's treating physician when she sought gynecological treatment from USC's Student Health Center. Indeed, several of TYNDALL's victims specifically requested appointments with a gynecologist other than TYNDALL, but were told by Defendant USC that no other gynecologist than TYNDALL was available.

43.   The sexual abuse of PLAINTIFF by TYNDALL took place while TYNDALL was a gynecological physician employed, retained, and supervised by Defendants USC, DOES 1 through 500, and PLAINTIFF was a patient of USC's Student Health Center, while TYNDALL was serving as an agent and employee of Defendants in his capacity as a physician:

-16-

MASTER COMPLAINT

a. In his capacity as a physician with Defendants USC and DOES 1 through 500, TYNDALL was given custody and supervision of patients, often young, including PLAINTIFF. TYNDALL used this position to coerce and deceive his patients into conceding to his prurient sexual demands, using his authority and position of trust to exploit them physically, sexually, and emotionally;

b. As a patient of USC's Student Health Center, PLAINTIFF came into contact with TYNDALL, Defendants' gynecologist. PLAINTIFF is informed and believes, and on this basis alleges, that TYNDALL would use the guise of gynecological care and treatment to normalize intimate, inappropriate, and sexually abusive contact with PLAINTIFF and other patients. During this period, PLAINTIFF was a patient under TYNDALL's direct supervision and control.

c. PLAINTIFF is informed and believes, and on this basis alleges, that TYNDALL's physical and sexual abuse of the patients of USC's Student Heath Center commenced in or around 1989 and continued through in or around 2016. During this period, the patients of USC's Student Health Center were under TYNDALL's, Defendants USC's, and DOES 1 through 500's direct supervision and control. Using his position of trust and authority as a physician, and as an outgrowth of his position as a gynecologist, TYNDALL would interact with his young female patients under the guise of providing them care and treatments and examinations necessary for their health and well-being. Under these circumstances, TYNDALL would, among other abusive acts, force his patients to strip naked, grope their bare breasts, and digitally penetrate their vaginas, often in the presence of other medical professional staff and sometimes without gloves, for no legitimate medical purpose and solely to satisfy his own sexual desires. PLAINTIFF is informed and believes that TYNDALL's sexual abuse, molestation, and harassment of patients, including PLAINTIFF, occurred on the premises of Defendants USC and DOES 1 through 500.

d. TYNDALL's sexual abuse and harassment of PLAINTIFF, as well as his other young female patients, was done for TYNDALL's personal sexual gratification, was within the course and scope of his employment, was committed on the basis PLAINTIFF's gender, and annoyed, disturbed, irritated, and offended PLAINTIFF, as it would have any reasonable person. PLAINTIFF did not consent to the sexual abuse and harassment committed by TYNDALL.

44.     As set forth more fully herein above, TYNDALL did sexually abuse PLAINTIFF, who was a patient of TYNDALL and USC's Student Health Center at the time of the acts at issue. PLAINTIFF is informed and believes, and on that basis alleges, that such conduct by TYNDALL was based upon PLAINTIFF's gender, was done for TYNDALL's sexual gratification, and was an outgrowth of his position as a gynecologist. These actions upon PLAINTIFF were performed by TYNDALL without the valid consent of PLAINTIFF.

45.     During the time period that PLAINTIFF was being sexually abused by TYNDALL, Defendants had the authority and ability to prevent such abuse by removing TYNDALL from his position as a gynecological physician at Defendants USC and DOES 1 through 500. They failed

-17-

**MASTER COMPLAINT**

1   to do so, allowing TYNDALL's sexual abuse to occur and to continue unabated. PLAINTIFF is

2   informed and believes, and on this basis alleges, that this failure was a part of Defendants'

3   conspiratorial plan and arrangement to conceal TYNDALL's wrongful acts, to avoid and inhibit

4   detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of

5   student-patient sexual molestation and abuse, to preserve a false appearance of propriety, and to

6   avoid investigation and action by public authority including law enforcement or the Medical Board

7   of California. Such actions were motivated by a desire to protect the reputation of Defendants and

8   protect the monetary support of Defendants, while fostering an environment where such abuse

9   could continue to occur.

10   **PLAINTIFF'S DAMAGES**

11   **ECONOMIC AND NON-ECONOMIC DAMAGES**

12        46.    As a direct and proximate result of the sexual harassment and abuse of PLAINTIFF

13   by TYNDALL, and as a direct and proximate result of Defendants USC's and Does 1-500's

14   tortious acts, omissions, wrongful conduct, and breaches of their respective duties, PLAINTIFF

15   has suffered, and continues to suffer, substantial economic and non-economic damages as

16   specifically alleged in PLAINTIFF's Notice of Adoption form, including but not limited to:

17         a.   Loss of past and/or future earnings, in an amount to be proven at trial but in no
18              event less than the minimum jurisdictional amount of this Court;

19         b.   Loss of education, employment and/or professional development opportunities, in
                an amount to be proven at trial but in no event less than the minimum jurisdictional
20              amount of this Court;

21         c.   Cost of past and future medical and/or mental health treatment and/or medication,
                in an amount to be proven at trial but in no event less than the minimum
22              jurisdictional amount of this Court;

23         d.   Emotional distress;

24         e.   Anxiety;

25         f.   Depression;

26         g.   Lowered self-esteem;

27         h.   Difficulty in meaningfully interacting with others;

28         i.   Difficulty in meaningfully interacting with those in positions of authority over the
                Plaintiff, including but not limited to physicians, supervisors and employers;

-18-

**MASTER COMPLAINT**

j.   Trust issues;

k.   Trust issues with males;

l.   Trust issues with gynecologists;

m. Fear of seeking gynecological treatment;

n.   Struggles with interpersonal relationships;

o.   Difficulty communicating with others;

p.   Difficulty sleeping/disruptive sleeping;

q.   Nightmares;

r.   Headaches;
s.   Flashbacks and/or intrusive thoughts;

t.   Stress;

u.   Nervousness;

v.   Fear;

w.  Nausea;

x.   Hypertension;

y.   Disordered eating;

z.   Physical and/or nervous pain;

aa. Grief;

bb. Embarrassment;

cc. Humiliation;

dd. Shame;

ee. Loss of enjoyment of life; and

ff.  Additional damages, as specifically set forth in the corresponding Notice of Adoption Form.

## PUNITIVE DAMAGES

47.    PLAINTIFF reserves the right to seek leave of court to add punitive damages for any "professional negligence" claims through a duly noticed motion under Code of Civil Procedure § 425.13 to the extent PLAINTIFF asserts any such claims; PLAINTIFF also separately reserves the right to seek leave of court through a duly noticed motion to add punitive damages under

1  applicable law and statutes providing for punitive damages for the various other causes of action

2  alleged herein.

### STATUTE OF LIMITATIONS

### ADULT SEXUAL ABUSE

48.    PLAINTIFF was sexually abused by TYNDALL on USC's campus, while PLAINTIFF was a patient of USC's Student Health Center and while TYNDALL was employed as the Student Health Center's gynecological physician. USC actively concealed numerous complaints of TYNDALL's sexually abusive behavior in order to deceive PLAINTIFF into believing that his sexual abuse was a legitimate medical treatment. Then, in or around June of 2016, USC placed TYNDALL on administrative leave while it belatedly investigated allegations of sexually inappropriate comments made by TYNDALL to his patients. At the time TYNDALL was placed on administrative leave, USC deliberately concealed the fact that TYNDALL had been accused of sexual misconduct, such that this information was not made known to PLAINTIFF, the USC community, or the public at large.

49.    Approximately one year later, in or around June of 2017, USC paid TYNDALL a substantial financial settlement in exchange for his quiet resignation, in order to continue to fraudulently conceal TYNDALL's sexually abusive nature from the public and thereby insulate itself from civil liability. TYNDALL's sexual abuse of hundreds of his former patients was not revealed until May of 2018, when the national news media made TYNDALL's sexual misconduct known to the public. Because USC deliberately concealed the fact that TYNDALL was a serial sexual predator from PLAINTIFF, and from the public at large, PLAINTIFF's statute of limitations was equitably tolled and Defendants USC and Does 1 through 500 are equitably estopped from asserting the statute of limitations as a defense.

50.    Defendants USC's employees and DOES 1 through 500 acted wrongfully in ignoring and actively concealing myriad complaints of sexual misconduct lodged against TYNDALL, and further breached numerous mandatory duties owed to PLAINTIFFby holding TYNDALL out as a safe, legitimate medical professional and failing to warn PLAINTIFF of TYNDALL's proclivity to sexually abuse young patients. Moreover, PLAINTIFF was coerced

1   into not talking about the abusive acts she endured by the threatening and coercive actions of

2   TYNDALL, who placed PLAINTIFF under duress and imminent fear, and only came forward

3   once the coercive nature of his acts subsided, in or around May of 2018, due to Defendant USC's

4   and the media's revelation of his pattern of misconduct and the subsequent police investigation

5   allowing such victims, including PLAINTIFF, to come forward without fear of retribution by USC

6   and TYNDALL.

7        51.    Furthermore, PLAINTIFF was led to believe—and did reasonably believe—that

8   TYNDALL's sexual abuse was not, in fact, sexual abuse, but rather was legitimate gynecological

9   treatment, based upon the following:

    a.  USC actively concealed numerous complaints that it had received regarding TYNDALL's sexual misconduct, and held TYNDALL out to be a trustworthy, legitimate and safe gynecological physician, such that PLAINTIFF reasonably believed and trusted that TYNDALL's conduct was medically legitimate;

    b.  At the time, PLAINTIFF had no specialized medical training, knowledge, or experience regarding what legitimate gynecological examinations consisted of, and therefore did not and could not have known that TYNDALL's conduct was not, in fact, medically legitimate, but instead constituted sexual abuse;

    c.  PLAINTIFF had never before had any sort of gynecological treatment prior to being treated by TYNDALL, and therefore had no prior experience with medically-proper gynecological appointments with which to compare TYNDALL's purported treatment;

    d.  While TYNDALL was sexually abusing PLAINTIFF, a USC-employed chaperone was present in the examination room, observing TYNDALL's conduct yet doing nothing in response, thereby leading PLAINTIFF to reasonably believe that TYNDALL's conduct was medically legitimate;

    e.  PLAINTIFF attempted to report TYNDALL's misconduct to another employee and/or agent of USC, but no action was ever taken in response to that report, thereby leading PLAINTIFF to reasonably believe that her complaints were without merit;

    f.  USC continued to employ TYNDALL as a gynecologist and held him out as a caring, professional experienced in gynecological health.

     52.    Based upon the foregoing facts, PLAINTIFF was blamelessly ignorant of the true facts related to her abuse until she discovered those true facts in May of 2018, because it was not until May of 2018, when the allegations of sexual misconduct against TYNDALL received national media attention and became public knowledge, that PLAINTIFF knew or had reason to know that her claims against Defendants USC, TYNDALL, and DOES 1 through 500 had accrued.

-21-
**MASTER COMPLAINT**

1   PLAINTIFF did not and could not have reasonably discovered her abuse at an earlier date than she

2   did. Thus, PLAINTIFF's claims accrued in or around May of 2018.

3   **CHILDHOOD SEXUAL ABUSE—PLAINTIFF CURRENTLY UNDER THE AGE OF 26**

4        53.     PLAINTIFF is a victim of childhood sexual abuse who is currently under the age

5   of twenty-six years old. Thus, pursuant to *Code of Civil Procedure* § 340.1, which governs the

6   statute of limitations for civil actions arising from childhood sexual abuse, PLAINTIFF's action

7   is timely asserted against Defendants. In addition, all other allegations set forth in the preceding

8   Section of this Complaint regarding the accrual of applicable statutes of limitations for an adult

9   PLAINTIFF apply with equal force to PLAINTIFF.

10  **CHILDHOOD SEXUAL ABUSE—PLAINTIFF CURRENTLY OVER THE AGE OF 26**

11       54.     PLAINTIFF is a victim of childhood sexual abuse who is currently over the age of

12  twenty-six years old. Section 340.1(a) of the California Code of Civil Procedure provides, "in an

13  action for recovery of damages suffered as a result of childhood sexual abuse, the time for

14  commencement of the action shall be […] within three years of the date the plaintiff discovers or

15  reasonably should have discovered that psychological injury or illness occurring after the age of

16  majority was caused by the sexual abuse." In or around May of 2018, when the allegations of

17  sexual misconduct against TYNDALL received national media attention and became public

18  knowledge, or on some other date as specified in PLAINTIFF's Notice of Adoption PLAINTIFF,

19  for the first time, began to make a mental connection between her present physical, mental and

20  emotional problems and the sexual abuse that she suffered as a minor at the hands of TYNDALL,

21  while she was his patient at USC's Student Health Center. As set forth more fully in PLAINTIFF's

22  Notice of Adoption Form, it was only upon making this discovery that PLAINTIFF reasonably

23  determined and discovered that the psychological injury, illness, and suffering that she has endured

24  following the abuse by TYNDALL was actually caused by the childhood sexual harassment,

25  abuse, and molestation she suffered at the hands of the Defendants. Thus, pursuant to *Code of Civil*

26  *Procedure* § 340.1, which governs the statute of limitations for civil actions arising from childhood

27  sexual abuse, PLAINTIFF's action is timely asserted against Defendants. . In addition, all other

28  allegations set forth in the preceding Section of this Complaint regarding the accrual of applicable

1    statutes of limitations for an adult PLAINTIFF apply with equal force to PLAINTIFF.

2
                                **FIRST CAUSE OF ACTION**
3                  **VIOLATION OF UNRUH ACT (*CIVIL CODE* § 51 et seq.)**
4                  **(Against Defendants TYNDALL, USC, and DOES 1 through 500)**

5        55.    PLAINTIFF re-alleges and incorporates by reference herein each and every

6    allegation contained herein above as though fully set forth and brought in this cause of action.

7        56.    "All persons within the jurisdiction of this state have the right to be free from any

8    violence, or intimidation by threats of violence, committed against their persons or property" on

9    the basis of a protected status including sex, ancestry, national origin, disability, or medical

10   condition. Civ. Code §§ 51(b) and 51.7. A person is liable in a cause of action for sexual

11   harassment under this section when the plaintiff establishes the elements of Civil Code section

12   51.9, including but not limited to physician-patient relationship or substantially similar

13   relationship such as that between USC and Defendants DOES 1-500 as a health care provider to

14   patients. PLAINTIFF's civil rights were violated by USC, when USC, through its agents, actors

15   and employees, intentionally concealed complaints of sexual abuse, molestation and harassment

16   by TYNDALL from PLAINTIFF. PLAINTIFF had a right to be free from gender discrimination,

17   sexual molestation, abuse, and harassment under the Unruh Civil Rights Act.

18       57.    The Defendants USC, TYNDALL, and DOES 1 through 500 were acting under the

19   color of their authority and in the scope of their employment or agency (whether actual or

20   apparent/ostensive), during the instances when PLAINTIFF was a patient of TYNDALL at

21   Defendant USC and DOES 1 through 500.

22       58.    The USC denied PLAINTIFF full and equal accommodations, advantages,

23   facilities, privileges, and healthcare services on the basis of gender, by allowing TYNDALL

24   unfettered access to sexually abuse PLAINTIFF, by and through his position of authority as the

25   Student Health Center's sole full-time gynecologist with regular availability, by actively

26   concealing from PLAINTIFF its knowledge that TYNDALL was a serial sexual predator.

27       59.    By employing and retaining TYNDALL, first as a research assistant, and then as

28   the sole full-time gynecologist with regular availability in its Student Health Center, despite its

---

                                        -23-
                              **MASTER COMPLAINT**

1   knowledge of myriad reports of TYNDALL's sexually abusive nature, USC forced its students

2   and patients to seek necessary medical treatment from TYNDALL, thereby exposing the Plaintiff

3   to TYNDALL's sexual abuse. Thus, USC's retention of TYNDALL denied the Plaintiff, and all

4   of its other young students and patients seeking gynecological treatment, of full and equal access

5   to safe medical facilities, treatment and services, based upon gender.

6       60.    The substantial motivating reason for USC's conduct of actively concealing

7   numerous complaints of TYNDALL's sexually abusive nature was PLAINTIFF's gender as a

8   female, as USC knew that only its female students would seek gynecological treatment from

9   TYNDALL and, thus, would be unwittingly subjected to TYNDALL's sexual assaults.

10       61.    As a direct and proximate result of Defendants' tortious acts, omissions, wrongful

11   conduct and breaches of their duties, PLAINTIFF's employment and professional development

12   has been adversely affected. PLAINTIFF has lost wages and will continue to lose wages in an

13   amount to be determined at trial. PLAINTIFF has suffered substantial economic injury, all to

14   PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but

15   in no event less than the minimum jurisdictional amount of this Court.

16       62.    As a further direct and proximate result of Defendants' wrongful actions, as herein

17   alleged, PLAINTIFF has been hurt in her health, strength, and activity. PLAINTIFF has sustained

18   permanent and continuing injury to her nervous system and person, which has caused and

19   continues to cause great mental, physical, and nervous pain, emotional distress, suffering, fright,

20   upset, grief, worry, and shock in an amount according to proof at trial but in no event less than the

21   jurisdictional minimum requirements of this Court.

22       63.    As a further direct and proximate result of Defendants' wrongful actions, as herein

23   alleged, PLAINTIFF is entitled to damages as set forth in Cal. Civ. Code § 52, including special

24   and general damages to be determined by a jury, and attorneys' fees as may be determined by the

25   Court.

### SECOND CAUSE OF ACTION
**TOM BANE CIVIL RIGHTS ACT (*CIVIL CODE* §52.1)**
**(Against Defendants TYNDALL, USC, and DOES 1 through 500)**

26

27

28       64.    PLAINTIFF re-alleges and incorporates by reference herein each and every

1   allegation contained herein above as though fully set forth and brought in this cause of action.

2        65.    Defendants' actions, as alleged herein, have interfered and will continue to interfere

3   with PLAINTIFF's right to be free from gender discrimination in the form of sexual harassment

4   in the educational and collegiate setting, codified under 20 U.S.C. § 1681. Furthermore,

5   PLAINTIFF had a right to have USC respond immediately and investigate their sexual assaults,

6   molestation and harassment by TYNDALL.

7        66.    During PLAINTIFF's time as a patient of USC, Defendants engaged in oppressive

8   and unlawful tactics in ignoring, concealing, and ultimately suppressing the Plaintiff's complaints

9   of being sexually abused by TYNDALL. PLAINTIFF was threatened, intimidated, and coerced

10   into not reporting TYNDALL's sexually abusive acts by TYNDALL's own intimidating and

11   humiliating conduct, as well as the conspiratorial silence and inaction of USC's chaperones. These

12   intentional acts of concealment of TYNDALL's abusive behavior violated the PLAINTIFF's right

13   to be free from discrimination on the basis of her gender, under Title IX.

14        67.    Furthermore, PLAINTIFF was deprived of Due Process of law, when various

15   complaints to USC employees against TYNDALL failed to trigger any report, investigation, or

16   other action by USC, who was required to do so, both under its own policies and procedures, as

17   well as under federal mandate by Title IX and the Fourteenth Amendment. In addition, these

18   actions were contrary to PLAINTIFF's civil rights guaranteed under the Constitution of the State

19   of California.

20        Defendants' wrongful conduct was intended to, and did successfully, interfere with

21        PLAINTIFF's Constitutional Rights to (a) be free from gender discrimination and

22        harassment, and (b) Due Process under the United States' Constitution, specifically the

23        Fifth and Fourteenth Amendments.

24        68.    Defendants unlawfully and wrongfully used, or employed others to wrongfully use,

25   threats, intimidation, harassment, violence, and coercion over PLAINTIFF's person, to which the

26   PLAINTIFF had no relief except to submit to the Defendants' wrongful threats, intimidation,

27   harassment, violence, and coercion, which rendered PLAINTIFF's submission involuntary.

28        69.    Defendants' above-noted actions were the legal and proximate causes of physical,

-25-
**MASTER COMPLAINT**

1   psychological, emotional, and economic damages, and damage to PLAINTIFF who has suffered

2   and continues to suffer to this day.

3        70.   As a result of the above-described conduct, PLAINTIFF suffered and continues to

4   suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

5   distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life;

6   suffered and continues to suffer and was prevented and will continue to be prevented from

7   performing daily activities and obtaining the full enjoyment of life; has and will continue to sustain

8   loss of earning capacity; and has incurred and will continue to incur expenses for medical and

9   psychological treatment, therapy, and counseling. PLAINTIFF has suffered economic, vocational,

10  and employment losses as well.

11       71.   In subjecting PLAINTIFF to the wrongful treatment described herein, Defendants

12  acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of

13  the Plaintiff's rights, entitling PLAINTIFF to compensatory damages in a sum to be shown

14  according to proof, emotional distress damages in a sum to be shown according to proof, attorney's

15  fees, other damages pursuant to *Civil Code* section 52(b)(1), and a temporary restraining order or

16  a preliminary or permanent injunction ordering Defendants to refrain from conduct or activities as

17  alleged herein, stating "VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER

18  SECTION 422.77 OF THE PENAL CODE," and other such relief as the court deems proper.

19                        **THIRD CAUSE OF ACTION**
                          **GENDER VIOLENCE**
20                        **(Against Defendant TYNDALL)**

21       72.   PLAINTIFF re-alleges and incorporates by reference herein each and every

22  allegation contained herein above as though fully set forth and brought in this cause of action.

23       73.   TYNDALL's acts committed against PLAINTIFF, as alleged herein, including the

24  sexual harassment, molestation and abuse of PLAINTIFF, constitutes gender violence and a form

25  of sex discrimination in that one or more of TYNDALL's acts would constitute a criminal offense

26  under state law that has as an element the use, attempted use, or threatened use of physical force

27  against the person of another, committed at least in part based on the gender of the victim, whether

28

1     or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

2         74.     TYNDALL's acts committed against PLAINTIFF, as alleged herein, including the

3     sexual harassment, molestation and abuse of PLAINTIFF, constitutes gender violence and a form

4     of sex discrimination in that TYNDALL's conduct caused a physical intrusion or physical invasion

5     of a sexual nature upon the Plaintiff under coercive conditions, whether or not those acts have

6     resulted in criminal complaints, charges, prosecution, or conviction, which were in part based upon

7     PLAINTIFF's gender as a female.

8         75.     As a proximate result of TYNDALL's acts, PLAINTIFF is entitled to actual

9     damages, compensatory damages, injunctive relief, any combination of those, or any other

10     appropriate relief. PLAINTIFF is also entitled to an award of attorney's fees and costs pursuant to

11     *Civil Code* § 52.4, against TYNDALL.

12

13

14                      **FOURTH CAUSE OF ACTION**

              **SEXUAL HARASSMENT (*CIVIL CODE* §51.9)**

15                       **(Against All Defendants)**

16         76.     PLAINTIFF re-alleges and incorporates by reference herein each and every

17     allegation contained herein above as though fully set forth and brought in this cause of action.

18         77.     During PLAINTIFF's time as a patient of Defendants TYNDALL, USC and DOES

19     1 through 500, TYNDALL intentionally, recklessly, and wantonly made sexual advances,

20     solicitations, requests, demands for sexual compliance and/or engaged in other verbal or physical

21     conduct of a sexual nature or a hostile nature, including inappropriate touching and photographing

22     of PLAINTIFF's intimate parts for no medical purpose, based on Plaintiff's gender. All physical,

23     visual, and verbal conduct made by TYNDALL were unwelcome, pervasive and severe, all under

24     the supervision of Defendants, who were acting in the course and scope of their agency with

25     Defendants and each of them.

26         78.     The incidents of abuse outlined herein above took place while PLAINTIFF was

27     under the control of TYNDALL and Defendants USC and DOES 1 through 500, in their capacity

28     and position as supervisors of physicians, medical professionals, and staff at Defendants USC and

1    DOES 1 through 500, and while acting specifically on behalf of Defendants.

2       79.     During PLAINTIFF's time as a patient of Defendants TYNDALL, USC and DOES

3    1 through 500, TYNDALL intentionally, recklessly, and wantonly did acts which resulted in

4    harmful and offensive contact with intimate parts of PLAINTIFF's persons, including but not

5    limited to, using his position of authority and age to force PLAINTIFF to give into TYNDALL's

6    sexual suggestions.

7       80.     Because of the Plaintiff's relationships with TYNDALL and Defendants USC and

8    DOES 1 through 500, TYNDALL's status as the only full-time gynecologist with regular

9    availability employed by Defendant USC's Student Health Center, and Plaintiff's young age as

10    students of Defendant USC, the Plaintiff was unable to easily terminate the relationship they had

11    with the Defendants.

12       81.     Because of TYNDALL's age and position of authority as a USC-employed

13    physician, physical seclusion of PLAINTIFF, PLAINTIFF's mental and emotional state, and

14    PLAINTIFF's young age, PLAINTIFF was unable to, and did not and could not, give consent to

15    such acts.

16       82.     Even though the Defendants knew or should have known of these activities by

17    TYNDALL, Defendants did nothing to investigate, supervise, or monitor TYNDALL to ensure

18    the safety of the patients in their charge.

19       83.     Because of PLAINTIFF's relationships with Defendants, as a patient of USC's

20    Student Health Center, the fact that TYNDALL was the Student Health Center's only full-time

21    gynecologist with regular availability, and PLAINTIFF's young age, PLAINTIFF was unable to

22    easily terminate the doctor-patient relationship.

23       84.     A corporation is a "person" within meaning of *Civil Code* section 51.9, which

24    subjects persons to liability for sexual harassment within a business, service, or professional

25    relationship, and such an entity defendant may be held liable under this statute for the acts of its

26    employees. *C.R. v. Tenet Healthcare Corp.*, (2009) 169 Cal.App.4th 1094. Further, principles of

27    ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is

28    alleged to have occurred herein.

85.     Defendants' conduct (and the conduct of their agents) was a breach of their duties to PLAINTIFF.

86.     As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent.

**FIFTH CAUSE OF ACTION**
**SEXUAL BATTERY: *Civil Code* § 1708.5**
**(Against All Defendants)**

87.     PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

88.     During PLAINTIFF's time as a patient of Defendants, TYNDALL intentionally, recklessly, and wantonly did acts which were intended to, and did, result in harmful and offensive contact with intimate parts of PLAINTIFF's person, during PLAINTIFF's time with Defendants USC and DOES 1 through 500, all while TYNDALL acted in the course and scope of his agency/employment with Defendants. USC and DOES 1 through 500 ratified or approved of that sexual contact.

89.     TYNDALL did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of PLAINTIFF's person, and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of PLAINTIFF's person that would offend a reasonable sense of personal dignity.

90.     Because of TYNDALL's position of authority over PLAINTIFF, and PLAINTIFF's mental and emotional state, and PLAINTIFF's young age, PLAINTIFF did not give meaningful consent to such acts.

91.     As a direct, legal, and proximate result of the acts of TYNDALL, PLAINTIFF sustained serious and permanent injuries to her person, in an amount to be shown according to

-29-
MASTER COMPLAINT

1 proof and within the jurisdiction of the Court.

2      92.    As a direct and proximate result of the conduct of Defendants, individually, jointly,

3 and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

4 anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

5 damages (both economic and noneconomic), and permanent disability, in the past, present, and

6 future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

7 continuing, and permanent.

8

9 **SIXTH CAUSE OF ACTION**<br>**UNFAIR BUSINESS PRACTICES (*BUSINESS & PROFESSIONS CODE* §17200)**<br>**(Against Defendants USC, TYNDALL, and DOES 1 through 500)**

10

11      93.    PLAINTIFF re-alleges and incorporates by reference herein each and every

12 allegation contained herein above as though fully set forth and brought in this cause of action.

13      94.    Defendants are each a person within the meaning of Business and Professions Code

14 section 17201. As a result of Defendants' violations of the Unfair Competition Law, PLAINTIFF

15 has lost money or property, including but not limited to the loss of Student Health Center fees paid

16 to Defendants USC and DOES 1-500.. PLAINTIFF is informed and believes, and on that basis

17 alleges, that TYNDALL and Defendants USC and DOES 1 through 500 have engaged in unlawful,

18 unfair, and deceptive business practices by enticing and encouraging students to utilize the services

19 of USC's Student Health Center, including the gynecological services of TYNDALL, and allowing

20 TYNDALL to engage in repeated sexual misconduct, abuse, and/or harassment of female patients,

21 including PLAINTIFF, and not only failing to take all reasonable steps to prevent harassment and

22 abuse from occurring but continuing to employ TYNDALL for nearly thirty years. The unlawful,

23 unfair, and deceptive business practices also included failing to adequately investigate, vet, and

24 evaluate individuals for employment with Defendants USC and DOES 1 through 500; and refusing

25 to design, implement, and oversee policies regarding sexual harassment and abuse of female

26 patients in a reasonable manner that is customary in similar educational environments.

27 PLAINTIFF is informed and believes, and on that basis alleges, that TYNDALL and Defendants

28 USC and DOES 1 through 500, have engaged in unlawful, unfair and deceptive business practices

-30-<br>**MASTER COMPLAINT**

1  including concealing sexual harassment, abuse, and/or molestation claims by student and/or

2  patients, such as PLAINTIFF, so as to retain other similarly situated individuals within Defendants

3  USC and DOES 1 through 500 who were not apprised of such illicit sexual misconduct by

4  TYNDAL.

5       95.  PLAINTIFF is informed and believes that Defendants engaged in a common

6  scheme, arrangement, or plan to actively conceal allegations against sexual abusers who were

7  employees, agents, members, and/or participants at Defendants USC and DOES 1 through 500,

8  including TYNDALL, such that Defendants USC and DOES 1 through 500 could maintain their

9  public image, and avoid detection of such abuse and abusers. The Plaintiff is informed and

10  believes, and based thereon alleges, that Defendants actively concealed these allegations, such that

11  Defendants would be insulated from public scrutiny, governmental oversight, and/or investigation

12  from various law enforcement agencies, all done in order to maintain the false sense of safety for

13  participants and their families and to perpetuate the program financially.

14       96.  By engaging in unlawful, unfair, and deceptive business practices, TYNDALL and

15  Defendants USC and DOES 1 through 500 benefitted financially to the detriment of its

16  competitors, who had to comply with the law.

17       97.  Unless restrained, Defendants USC and DOES 1 through 500 will continue to

18  engage in the unfair acts and business practices described above, resulting in great and irreparable

19  harm to the Plaintiff and/or other similarly situated participants and members.

20       98.  PLAINTIFF seeks restitution for all amounts improperly obtained by TYNDALL

21  and Defendants USC and DOES 1 through 500 through the use of the above-mentioned unlawful

22  business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of

23  PLAINTIFF and all other similarly situated patients who were also subjected to the TYNDALL

24  and Defendants USC and DOES 1 through 500 illegal and unfair business practices.

25       99.  Pursuant to section 17203 of the California *Business and Professions Code* and

26  available equitable powers, PLAINTIFF is entitled to a preliminary and permanent injunction,

27  enjoining Defendants TYNDALL, USC, and DOES 1 through 500 from continuing the unlawful

28  and unfair business practices described above. Further, PLAINTIFF seeks the appointment of a

**MASTER COMPLAINT**

1 | court monitor to enforce its orders regarding client safety.

2 |     100.   PLAINTIFF is entitled to recover reasonable attorneys' fees pursuant to the

3 | California *Business and Professions Code* and section 1021.5 of the *California Code of Civil*

4 | *Procedure.*

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendants USC, TYNDALL and DOES 1 through 500)**

    101.   PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

    102.   Defendants TYNDALL, USC, and DOES 1 through 500's intentional conduct toward PLAINTIFF, as described herein, was outrageous and extreme, particularly, as part of a trusted patient-physician relationship and within the Trojan family. Defendants' conduct exceeded all bounds of decency.

    103.   A reasonable person would not expect or tolerate the sexual harassment, molestation, and abuse of PLAINTIFF by TYNDALL, and Defendants' knowledge and callous indifference and ratification thereof. PLAINTIFF had great trust, faith and confidence in in Defendants, which, by virtue of TYNDALL and Defendants' wrongful conduct, turned to fear.

    104.   A reasonable person would not expect or tolerate Defendants putting TYNDALL, who was known to Defendants to have physically and sexually abused his patients, in a position of authority and medical care of PLAINTIFF and other female patients, which enabled TYNDALL to have access to other female patients so that he could continue to commit wrongful sexual acts, including the conduct described herein, with young female patients, including PLAINTIFF, under the guise of providing gynecological services. PLAINTIFF had great trust, faith, and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear.

    105.   A reasonable person would not expect or tolerate the Defendants and their agents to be incapable of supervising and/or stopping participants and members of Defendants, including TYNDALL, from committing wrongful sexual acts with other female patients, including PLAINTIFF, or to supervise TYNDALL. PLAINTIFF had great trust, faith, and confidence in

1   Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear. A reasonable person

2   would expect her physician to behave in accordance with proper medical procedure and standards

3   and not to do anything to intentionally deviate from that, particularly a deviation for the physician's

4   sexual gratification. A reasonable person would expect that her university – which offered and

5   touted its medical services for its students – would not hire or continue to employ a physician who

6   was a sexual predator and used his physician status to violate young women.

7        106.   Defendants' conduct described herein was intentional and malicious and done for

8   the purpose of causing, or with the substantial certainty that such conduct would cause,

9   PLAINTIFF to suffer humiliation, mental anguish, and emotional and physical distress.

10   TYNDALL's conduct was committed within the course and scope of his employment with USC

11   and DOES 1- 500.

12        107.   As a direct and proximate result of the conduct of Defendants, individually, jointly,

13   and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

14   anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

15   damages (both economic and noneconomic), and permanent disability, in the past, present, and

16   future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

17   continuing, and permanent.

18

19                          **EIGHTH CAUSE OF ACTION**
                               **CONSTRUCTIVE FRAUD**
20        **(Against Defendants USC, TYNDALL and DOES 1 through 500)**

21        108.   PLAINTIFF re-alleges and incorporates by reference herein each and every

22   allegation contained herein above as though fully set forth and brought in this cause of action.

23        109.   By holding TYNDALL out as an agent of Defendants, and by allowing him to

24   undertake the medical care of female patients such as PLAINTIFF, and encouraging students, such

25   as PLAINTIFF, to seek medical care at the USC Student Health Center from TYNDALL,

26   Defendants entered into a confidential, fiduciary, and special relationship with PLAINTIFF.

27        110.   By holding themselves out as a preeminent collegiate facility, thereby enticing

28   PLAINTIFF to attend USC, Defendants entered into a confidential, fiduciary, and special

-33-
**MASTER COMPLAINT**

1  relationship with PLAINTIFF. As PLAINTIFF's physician, TYNDALL had a special and

2  confidential relationship with PLAINTIFF.

3       111.   Defendants breached their confidential, fiduciary, and special duties to PLAINTIFF

4  by the wrongful and negligent conduct described above, and in so doing, gained an advantage over

5  PLAINTIFF in matters relating to PLAINTIFF's safety, security, and health. In particular, in

6  breaching such duties as alleged, Defendants were able to sustain USC's status as an institution of

7  high moral repute, and preserve their reputation, all at the expense of PLAINTIFF's further injury

8  and in violation of Defendants' mandatory duties.

9       112.   By virtue of their confidential, fiduciary and special relationship with PLAINTIFF,

10  Defendants owed PLAINTIFF a duty to:

    a.   Investigate, follow-up, or otherwise confirm or deny such claims of sexual abuse and inappropriate conduct made against TYNDALL;

    b.   Reveal such facts to PLAINTIFF, the USC community, the community at large, the medical community, and law enforcement agencies;

    c.   Refuse to place TYNDALL and other molesters in positions of trust and authority within Defendants' institutions;

    d.   Refuse to hold out TYNDALL and other molesters to PLAINTIFF, the public, the USC community, parents of USC's student patients, the medical community, and law enforcement agencies as being in good standing and trustworthy in keeping with him and his position as a physician, faculty and/or staff member, and authority figure;

    e.   Refuse to assign TYNDALL and other molesters to positions of power within Defendants USC and DOES 1 through 500, and over young female students; and

    g.   Disclose to PLAINTIFF, the public, the USC community, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that TYNDALL had engaged in with his patients.

    113.   Defendants' breach of their respective duties include:

    a.   Not making reasonable or prompt investigations of TYNDALL and/or his conduct in response to complaints;

    b.   Issuing no warnings about TYNDALL to patients;

    c.   Permitting TYNDALL to routinely be either unsupervised, or supervised only by untrained chaperones, who were consistently derelict in their duty to report TYNDALL's sexual abuse to law enforcemen, the Medical Board of California

    d.   Not adopting a policy to prevent TYNDALL from routinely having patients and students in his unsupervised control;

-34-

**MASTER COMPLAINT**

e.  Making no reports of any allegations of TYNDALL's abuse of patients prior to or during his employment and/or agency at Defendants USC and DOES 1 through 500 to the Medical Board of California and/or law enforcement;

f.  Assigning/scheduling and continuing to assign/schedule TYNDALL to duties and patients which placed him in positions of authority and trust over other patients, positions in which TYNDALL could easily isolate and sexually abuse and harass other patients; and

g.  Continuing to perpetrate the fraud that TYNDALL did not sexually abuse his patients when, in June of 2017, USC allowed TYNDALL to resign quietly, with a financial settlement, rather than reporting his sexually abusive conduct to law enforcement, the Medical Board, and/or the patients he sexually abused, including PLAINTIFF.

114.   At the time that Defendants engaged in such suppression and concealment of acts, such acts were done for the purpose of causing PLAINTIFF to forbear on her rights.

115.   Defendants' misconduct did reasonably cause PLAINTIFF to forbear on PLAINTIFF's rights.

116.   The misrepresentations, suppressions, and concealment of facts by Defendants were intended to and were likely to mislead PLAINTIFF and others to believe that Defendants had no knowledge of any charges against TYNDALL, or that there were no other charges of unlawful or sexual misconduct against TYNDALL or others and that there was no need for them to take further action or precaution.

117.   The misrepresentations, suppressions, and concealment of facts by Defendants was likely to mislead PLAINTIFF and others to believe that Defendants had no knowledge of the fact that TYNDALL was a molester, and was known to commit wrongful sexual acts with patients, including PLAINTIFF.

118.   Defendants knew or should have known at the time they suppressed and concealed the true facts regarding others' sexual molestations, that the resulting impressions were misleading.

119.   Defendants suppressed and concealed the true facts regarding TYNDALL with the purpose of: preventing PLAINTIFF and others from learning that TYNDALL and others had been and were continuing to sexually harass, molest and abuse patients, at TYNDALL and Defendants' control, direction, and guidance, with complete impunity; inducing people, including PLAINTIFF and other benefactors and donors to participate and financially support Defendants' program and

-35-

**MASTER COMPLAINT**

1    other enterprises of Defendants; preventing further reports and outside investigations into

2    TYNDALL and Defendants' conduct; preventing discovery of Defendants' own conduct; avoiding

3    damage to the reputations of Defendants; protecting Defendants' power and status in the

4    community; avoiding damage to the reputation of Defendants, or Defendants' institutions; and

5    avoiding the civil and criminal liability of Defendants, of TYNDALL, and of others.

6         120.   At all times mentioned herein, Defendants, and in particular Defendants

7    TYNDALL, USC and DOES 1, and DOES 1 through 500, with knowledge of the tortious nature

8    of their own and TYNDALL conduct, knowingly conspired and gave each other substantial

9    assistance to perpetrate the misrepresentations, fraud and deceit alleged herein—covering up the

10   past allegations of sexual misconduct lodged against TYNDALL, and allowing TYNDALL to

11   remain in his position as a physician, faculty member, and doctor, so they could maintain their

12   reputations and continue with their positions within the organization.

13        121.   PLAINTIFF and others were misled by Defendants' suppressions and concealment

14   of facts, and in reliance thereon, were induced to seek medical care at the Student Health Center

15   and induced not to act (report to the proper authorities, or charges or a lawsuit), exactly as intended

16   by Defendants. Specifically, PLAINTIFF was induced to believe that there were no allegations of

17   criminal or sexual abuse against TYNDALL and that he was safe to be around patients. Had

18   PLAINTIFF, and others, known the true facts about TYNDALL, they would have not participated

19   further in activities of Defendants, or continued to financially support Defendants' activities. They

20   would have reported the matters to the proper authorities, to other patients so as to prevent future

21   recurrences; parents would not have allowed their children, some of them minors, to be alone with,

22   or have any relationship with TYNDALL; they would not have allowed young female students,

23   including PLAINTIFF, to attend or be under the control of Defendants; they would have

24   undertaken their own investigations which would have led to discovery of the true facts; and they

25   would have sought psychological counseling for PLAINTIFF, and for other patients, who had been

26   abused by TYNDALL.

27        122.   By giving TYNDALL the position of physician and faculty and/or staff member,

28   and continuing to employ him for nearly thirty years, Defendants impliedly represented that

1    TYNDALL was safe and morally fit to give medical care and provide gynecological treatment.

2        123.    When Defendants made these affirmative or implied representations and non-

3    disclosures of material facts, Defendants knew or should have known that the facts were otherwise.

4    Defendants knowingly and intentionally suppressed the material facts that TYNDALL had, on

5    numerous prior occasions, sexually, physically, and mentally abused patients of Defendants,

6    including PLAINTIFF, and knew of or learned of conduct, or should have known of conduct by

7    TYNDALL which placed Defendants on notice that TYNDALL had previously been suspected of

8    felonies, including unlawful sexual conduct with patients, and was likely sexually abusing patients

9    in his care.

10       124.    Because of PLAINTIFF's young age, and because of the status of TYNDALL as a

11   trusted authority figure to PLAINTIFF, PLAINTIFF was vulnerable to TYNDALL. TYNDALL

12   sought PLAINTIFF out, and was empowered by and accepted PLAINTIFF's vulnerability.

13   PLAINTIFF's vulnerability also prevented PLAINTIFF from effectively protecting herself from

14   the sexual advances of TYNDALL.

15       125.    Defendants had the duty to obtain and disclose information relating to sexual

16   misconduct of TYNDALL.

17       126.    Defendants misrepresented, concealed, or failed to disclose information relating to

18   sexual misconduct of TYNDALL.

19       127.    Defendants knew that they had misrepresented, concealed, or failed to disclose

20   information related to sexual misconduct of TYNDALL.

21       128.    PLAINTIFF justifiably relied upon Defendants for information relating to sexual

22   misconduct of TYNDALL.

23       129.    Defendants TYNDALL, USC, and DOES 1 through 500, in concert with each other

24   and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby

25   they would misrepresent, conceal, or fail to disclose information relating to the sexual misconduct

26   of TYNDALL, the inability or unwillingness of Defendants to supervise or stop TYNDALL from

27   sexually harassing, molesting, and abusing PLAINTIFF, and their own failure to properly

28   investigate, supervise, and monitor his misconduct with patients.

130.   By so concealing, Defendants committed at least one act in furtherance of the conspiracy.

131.   As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent.

132.   In addition, when PLAINTIFF finally discovered the fraud of Defendants, and continuing thereafter, PLAINTIFF experienced recurrences of the above-described injuries. PLAINTIFF experienced extreme and severe mental anguish and emotional distress that PLAINTIFF had been the victim of Defendants' fraud; that PLAINTIFF had not been able to help other young female patients to avoid being molested because of the fraud, and that because of the fraud, PLAINTIFF had not been able to receive timely medical treatment needed to deal with the problems PLAINTIFF had suffered and continues to suffer as a result of the sexual harassment, molestation, and abuse.

### NINTH CAUSE OF ACTION
### NEGLIGENCE
**(Against Defendants USC and DOES 1 through 500)**

133.   PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

134.   Prior to and after the first incident of TYNDALL's sexual harassment, molestation, and abuse of PLAINTIFF, through the present, Defendants knew and/or should have known that TYNDALL had and was capable of sexually, physically, and mentally abusing and harassing PLAINTIFF or other victims.

135.   Defendants each had special duties to protect PLAINTIFF and other young patients, when such individuals were entrusted to Defendants' care. PLAINTIFF's medical care, welfare, and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted

1  care of PLAINTIFF. As such, Defendants owed PLAINTIFF a special duty of care that medical

2  professionals dealing with vulnerable medical patients, owe to protect them from harm. The duty

3  to protect and warn arose from the special, trusting, confidential, and fiduciary relationship

4  between Defendants and PLAINTIFF.

5      136.   Defendants breached their duties of care to PLAINTIFF by allowing TYNDALL

6  to come into contact with PLAINTIFF and other patients without effective supervision; by failing

7  to adequately hire, supervise and retain TYNDALL, whom they permitted and enabled to have

8  access to PLAINTIFF; by concealing from PLAINTIFF, the public, and law enforcement that

9  TYNDALL was sexually harassing, molesting, and abusing patients; and by holding TYNDALL

10  out to PLAITNIFF as being of high moral and ethical repute, a quality physician in good standing,

11  and trustworthy.

12      137.   Defendants breached their duties to PLAINTIFF by failing to investigate or

13  otherwise confirm or deny such facts of sexual abuse by TYNDALL; failing to reveal such facts

14  to PLAINTIFF, the community, and law enforcement agencies; and by placing TYNDALL into a

15  position of trust and authority, holding him out to PLAINTIFF and the public as being in good

16  standing and trustworthy.

17      138.   Defendants breached their duty to PLAINTIFF by failing to adequately monitor

18  and supervise TYNDALL and failing to prevent TYNDALL from committing wrongful sexual

19  acts with medical patients, including PLAINTIFF. Defendants' voluminous past records of sexual

20  misconduct by TYNDALL caused Defendants to know, or gave them information where they

21  should have known, of TYNDALL's incapacity to serve as a physician and faculty member at

22  Defendants' institutions, providing for the physical care of young females.

23      139.   As a direct and proximate result of the conduct of Defendants, individually, jointly,

24  and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

25  anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

26  damages (both economic and noneconomic), and permanent disability, in the past, present, and

27  future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

28  continuing, and permanent.

**TENTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION**
**(Against Defendants USC and DOES 1 through 500)**

140.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

141.    By virtue of PLAINTIFF's special relationships with Defendants, and Defendants' employment of TYNDALL, Defendants owed PLAINTIFF a duty to provide reasonable supervision of TYNDALL, to use reasonable care in investigating TYNDALL background, and to provide adequate warning to PLAINTIFF and other female patients of TYNDALL's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of student patients, Defendants USC and DOES 1 through 500 had a duty to protect, supervise, and monitor both PLAINTIFF from being preyed upon by sexual predators, and to supervise and monitor TYNDALL such that he would not be placed in seclusion with vulnerable medical patients, including PLAINTIFF.

142.    As representatives of Defendants USC and DOES 1 through 500, where many of the patients thereof are vulnerable young women entrusted to these Defendants, these Defendants' agents expressly and implicitly represented that physicians, faculty, and staff, including TYNDALL, were not a sexual threat to those individuals and others who would fall under TYNDALL influence, control, direction, and care.

143.    Defendants, by and through their respective agents, servants, and employees, knew or should have known of TYNDALL's dangerous and exploitive propensities and that TYNDALL was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise TYNDALL in his position of trust and authority as a physician, faculty member, and authority figure over patients and young women, where he was able to commit wrongful acts of sexual misconduct against PLAINTIFF. Defendants failed to provide reasonable supervision of TYNDALL, failed to use reasonable care in investigating TYNDALL and any and all complaints and/or concerns of TYNDALL's alleged medical care, and failed to provide adequate warning to PLAINTIFF of TYNDALL's dangerous propensities and unfitness. Defendants further failed to

1    take reasonable steps to ensure the safety of patients, including the Plaintiff, from sexual

2    harassment, molestation, and abuse.

3        144.   At no time during the periods of time alleged did Defendants have in place a

4    reasonable system or procedure to investigate, supervise, and monitor physicians, faculty

5    members, or staff, including TYNDALL, that could prevent pre-sexual grooming, sexual

6    harassment, molestation, and abuse of patients of USC's Student Health Center, nor did they

7    implement a system or procedure to oversee or monitor conduct toward patients and others in

8    Defendants' care.

9        145.   Defendants were aware or should have been aware of how vulnerable medical

10   patients were to sexual harassment, molestation and abuse by physicians, doctors, faculty members

11   and other persons of authority within Defendants' entities.

12       146.   Defendants were put on notice, knew, and/or should have known that TYNDALL

13   had previously engaged and was continuing to engage in unlawful sexual conduct with minors and

14   patients and had committed other felonies for his own personal sexual gratification, and that it was

15   foreseeable that he was engaging, or would engage, in illicit sexual activities with the Plaintiff,

16   and others, under the cloak of the authority, confidence, and trust, bestowed upon him through

17   Defendants.

18       147.   Defendants were placed on actual or constructive notice that TYNDALL had

19   molested other student-patients during his employment with Defendants. Defendants were

20   informed of molestations of patients committed by TYNDALL prior to the Plaintiff's sexual abuse,

21   and of conduct by TYNDALL that would put a reasonable person on notice of such propensity to

22   molest and abuse young female students.

23       148.   Even though Defendants knew or should have known of these illicit sexual

24   activities by TYNDALL, Defendants did not reasonably investigate, supervise, or monitor

25   TYNDALL to ensure the safety of the patients.

26       149.   Defendants' conduct was a breach of their duties to PLAINTIFF.

27       150.   Defendants each breached their duty to PLAINTIFF by, *inter alia*, by failing to

28   adequately monitor and supervise TYNDALL and stop TYNDALL from committing wrongful

-41-

**MASTER COMPLAINT**

1   sexual acts with patients, including the Plaintiff.

2   151.   As a direct and proximate result of the conduct of Defendants, individually, jointly,

3   and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

4   anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

5   damages (both economic and noneconomic), and permanent disability, in the past, present, and

6   future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

7   continuing, and permanent.

8

9                      **ELEVENTH CAUSE OF ACTION**
                       **NEGLIGENCE *PER SE*—CONDUCT IN**
10                **VIOLATION OF MANDATED REPORTING LAWS**
                       **(Against USC and DOES 1 through 500)**

11   152.   PLAINTIFF re-alleges and incorporates by reference herein each and every

12   allegation contained herein above as though fully set forth and brought in this cause of action.

13   153.   Under applicable law, Defendants, by and through their employees and agents,

14   were medical care providers and were under a statutory duty to report known or suspected incidents

15   of sexual molestation or abuse of patients or any individuals in their care to the appropriate

16   authorities, and not to impede the filing of any such report.

17   154.   Defendants knew or should have known that their gynecological physician,

18   TYNDALL, and other staff of Defendants, had sexually molested, abused or caused touching,

19   battery, harm, and/or other injuries to young female students including PLAINTIFF, giving rise to

20   a duty to report such conduct.

21   155.   TYNDALL's actions were anti-female and not only sexually abusive but

22   considered hate violence under the law and Defendants were required to report such conduct.

23   156.   Defendants knew, or should have known, in the exercise of reasonable diligence,

24   that an undue risk to patients, including PLAINTIFF, existed because Defendants did not comply

25   with mandatory reporting requirements.

26   157.   By failing to report the continuing molestations and abuse by TYNDALL, which

27   Defendants knew or should have known about, and by ignoring the fulfillment of the mandated

28

-42-

**MASTER COMPLAINT**

1    compliance with the reporting requirements, Defendants created the risk and danger contemplated

2    by the applicable mandated reporting laws, and as a result, unreasonably and wrongfully exposed

3    PLAINTIFF and other patients to sexual molestation and abuse.

4         158.    PLAINTIFF was a member of the class of persons for whose protection applicable

5    mandated reporting laws were specifically adopted to protect.

6         159.    Had Defendants adequately reported the molestation of PLAINTIFF and other

7    patients, as required by applicable mandated reporting laws, further harm to PLAINTIFF and other

8    individuals would have been avoided.

9         160.    As a proximate result of Defendants' failure to follow the mandatory reporting

10   requirements, Defendants wrongfully denied PLAINTIFF and other female patients the

11   intervention of law enforcement and the appropriate authorities. Such public agencies would have

12   changed the then-existing arrangements and conditions that provided the access and opportunities

13   for the molestation of PLAINTIFF by TYNDALL.

14        161.    The physical, mental, and emotional damages and injuries resulting from the sexual

15   molestation of PLAINTIFF by TYNDALL, were the type of occurrence and injuries that the

16   applicable mandated reporting laws were designed to prevent.

17        162.    As a result, Defendants' failure to comply with the mandatory reporting

18   requirements constituted a per se breach of Defendants' duties to PLAINTIFF.

19        163.    Defendants each breached their duty to PLAINTIFF by, *inter alia*, failing to

20   adequately monitor and supervise TYNDALL and stop TYNDALL from committing wrongful

21   sexual acts with patients, including the Plaintiff.

22        164.    As a direct and proximate result of the conduct of Defendants, individually, jointly,

23   and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

24   anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

25   damages (both economic and noneconomic), and permanent disability, in the past, present, and

26   future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

27   continuing, and permanent.

28

-43-
**MASTER COMPLAINT**

## TWELFTH CAUSE OF ACTION
### NEGLIGENT HIRING/RETENTION
**(Against Defendants USC and DOES 1 through 500)**

165.   The Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

166.   By virtue of PLAINTIFF's special relationship with Defendants, and Defendants' relation to TYNDALL, Defendants owed the Plaintiff a duty to not hire or retain TYNDALL, given his dangerous and exploitive propensities, which Defendants knew or should have known about had they engaged in a reasonable, meaningful, and adequate investigation of his background prior to his hiring or retaining him in subsequent positions of employment.

167.   Defendants expressly and implicitly represented that the staff, physicians, and faculty members, including TYNDALL, were not a sexual threat to patients and others who would fall under TYNDALL influence, control, direction, and guidance.

168.   At no time during the periods of time alleged did Defendants have in place a reasonable system or procedure to investigate, supervise and monitor its Medical Center or Student Health Center physicians and healthcare professionals, including TYNDALL, to prevent pre-sexual grooming or sexual harassment, molestation, and abuse of patients, nor did they implement a system or procedure to oversee or monitor conduct toward patients and/or others in Defendants' care.

169.   Defendants were aware or should have been aware how vulnerable young female students were to sexual harassment, molestation, and abuse by faculty members, physicians, and other persons of authority within the control of Defendants, prior to the PLAINTIFF's sexual abuse by TYNDALL.

170.   Defendants were put on notice, and should have known, that TYNDALL had previously engaged and continued to engage in unlawful sexual conduct with patients, and was committing other felonies for his own personal gratification, and should have known it would have been foreseeable that he was engaging, or would engage, in illicit sexual activities with PLAINTIFF, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants.

171.  Defendants were placed on actual and/or constructive notice that TYNDALL had sexually abused or was sexually abusing and harassing female patients, both before his employment within Defendants, and during that employment. Defendants had knowledge of inappropriate conduct and molestations committed by TYNDALL before and during his employment, yet chose to allow him to remain unsupervised where he sexually abused the Plaintiff.

172.  Even though Defendants knew or should have known of these sexually illicit activities by TYNDALL, Defendants failed to use reasonable care in investigating TYNDALL and did nothing to reasonably investigate, supervise, or monitor TYNDALL to ensure the safety of the patients.

173.  Defendants' conduct was a breach of their duties to PLAINTIFF.

174.  As a direct and proximate result of the conduct of Defendants, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent.

**THIRTEENTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE**
**(Against Defendants USC and DOES 1 through 500)**

175.  PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

176.  Defendants owed PLAINTIFF a duty to take reasonable protective measures to protect PLAINTIFF and other patients from the risk of sexual harassment, molestation, and abuse by TYNDALL by properly warning, training, or educating the Plaintiff and other about how to avoid such a risk.

177.  Defendants breached their duty to take reasonable protective measures to protect PLAINTIFF and other patients from the risk of sexual harassment, molestation and abuse by

1   TYNDALL, such as the failure to properly warn, train, or educate PLAINTIFF and other patients

2   about how to avoid the particular risk of sexual misconduct that TYNDALL posed.

3       178.    Defendants breached their duty to take reasonable protective measures to protect

4   the Plaintiff and other patients from the risk of sexual harassment, molestation and abuse by

5   TYNDALL, by failing to supervise and stop employees of Defendants, including TYNDALL,

6   from committing wrongful sexual acts with patients, including PLAINTIFF.

7       179.    As a result of the above-described conduct, PLAINTIFF has suffered, and continues

8   to suffer, severe emotional distress and physical pain, emotional anguish, fear, anxiety,

9   humiliation, embarrassment, and other physical and emotional injuries, damages (both economic

10  and noneconomic), and permanent disability, in the past, present, and future, for which this claim

11  is made. The injuries suffered by PLAINTIFF is substantial, continuing, and permanent.

12

13                          **FOURTEENTH CAUSE OF ACTION**
                                **INVASION OF PRIVACY**
14                  **(Against Defendants USC, TYNDALL and DOES 1 through 500)**

15      180.    PLAINTIFF re-alleges and incorporates by reference herein each and every

16  allegation contained herein above as though fully set forth and brought in this cause of action.

17      181.    As a medical patient seeking gynecological treatment at USC's Student Health

18  Center, PLAINTIFF had a reasonable expectation of privacy in such treatment. Indeed, all

19  Californians enjoy a right to privacy, including medical privacy, under the California Constitution,

20  Article 1, Section 1.

21      182.    PLAINTIFF alleges that TYNDALL intruded upon PLAINTIFF's solitude,

22  seclusion or private affairs and concerns by photographing PLAINTIFF's gynecological and/or

23  other examinations, treatment, care, and/or PLAINTIFF's body, without authorization or consent

24  under the guise said photographs were for legitimate medical purposes and medically necessary.

25  This intrusion is highly offensive to reasonable individuals, such as PLAINTIFF, and was totally

26  unwarranted and unjustified, constituting invasion of privacy and a violation of the Health

27  Insurance Portability and Accountability Act ("HIPAA").

28      183.    TYNDALL carried out such actions and conduct as an employee, agent, and/or

1    representative of USC and under one of USC's programs, which provides medical treatment to

2    students, athletes and the public.

3         184.    USC is liable and vicariously liable for TYNDALL's conduct.

4         185.    As a direct and proximate result of the conduct of Defendants, individually, jointly,

5    and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

6    anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

7    damages (both economic and noneconomic), and permanent disability, in the past, present, and

8    future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

9    continuing, and permanent.

10

11                          **FIFTEENTH CAUSE OF ACTION**
                               **AIDING AND ABETTING**
12                  **(Against Defendants USC and DOES 1 through 500)**

13        186.    PLAINTIFF re-alleges and incorporates by reference herein each and every

14   allegation contained herein above as though fully set forth and brought in this cause of action.

15        187.    USC and DOES 1 through 100, inclusive, knew that TYNDALL had engaged in

16   and would engage in battery, willful misconduct, gross negligence, invasion of privacy, sexual

17   harassment, assault, and abuse and other conduct that put the safety, health, and welfare of

18   PLAINTIFF at risk.

19        188.    USC and DOES 1 through 100, inclusive, gave substantial assistance to TYNDALL

20   in performing such battery, willful misconduct, gross negligence, invasion of privacy, sexual

21   harassment, assault, and abuse and other conduct that put the safety, health, and welfare of

22   PLAINTIFF at risk.

23        189.    USC and DOES 1 through 100, inclusive, and their employees, personnel, medical

24   staff, and managing agents were on actual and constructive notice of TYNDALL's prior

25   misconduct and abusive behavior, as more fully set forth herein above, and had received multiple

26   complaints and allegations regarding TYNDALL's conduct and behavior.

27        190.    USC and DOES 1 through 100, inclusive, and their employees, personnel, medical

28   staff, and managing agents were aware that such conduct and behavior by TYNDALL, as more

-47-
**MASTER COMPLAINT**

1  fully set forth herein above, represented a routine practice by TYNDALL.

2  191.   USC and DOES 1 through 100, inclusive, and their employees, personnel, medical

3  staff, and managing agents did not take action or in any way appropriately respond to the

4  complaints and allegations raised regarding the conduct and behavior of TYNDALL and permitted

5  TYNDALL continued unfettered access to young and vulnerable female patients through the USC

6  Student Health Center.

7  192.   As a direct and proximate result of the conduct of Defendants, individually, jointly,

8  and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

9  anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

10  damages (both economic and noneconomic), and permanent disability, in the past, present, and

11  future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

12  continuing, and permanent.

13

14  **SIXTEENTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
15  **(Against Defendants USC and DOES 1 through 500)**

16  193.   PLAINTIFF re-alleges and incorporates by reference herein each and every

17  allegation contained herein above as though fully set forth and brought in this cause of action.

18  194.   At all relevant times, PLAINTIFF was a patient of USC's Student Health Center

19  on the USC campus.

20  195.   USC had a fiduciary relationship with the Plaintiff based upon the facts stated

21  herein. Defendant USC and DOES 1 through 500 were duty bound to act with the utmost good

22  faith for the benefit of PLAINTIFF, given that USC voluntarily undertook the responsibility of

23  providing PLAINTIFF with gynecological treatment, and PLAINTIFF did seek gynecological

24  treatment, at USC's Student Health Center.

25  196.   USC intentionally failed to disclose to PLAINTIFF that it had received numerous

26  complaints about TYNDALL's prior misconduct towards female patients during gynecological

27  examinations. Moreover, USC failed to take any disciplinary action against TYNDALL, failed to

28  adequately investigate the complaints against TYNDALL and failed to notify law enforcement

-48-
**MASTER COMPLAINT**

1    and the California Medical Board of TYNDALL's prior misconduct toward patients for over thirty

2    years, and instead made false representations that that TYNDALL was a competent medical doctor

3    who was trustworthy to perform safe routine gynecological examinations within the appropriate

4    standards of care through the USC Student Health Center.

5        197.    When USC concealed such information and made such representations described

6    herein, PLAINTIFF reasonably relied upon such false representations. As a result of Defendant

7    USC' actions, PLAINTIFF did not know of the concealed facts. Defendant USC intended to

8    deceive PLAINTIFF by concealing the facts. Had Defendant USC disclosed the omitted

9    information, PLAINTIFF reasonably would have behaved differently, and would not have

10   undergone gynecological examination with TYNDALL.

11       198.    As a direct and proximate result of the conduct of Defendants, individually, jointly,

12   and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional

13   anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

14   damages (both economic and noneconomic), and permanent disability, in the past, present, and

15   future, for which this claim is made. The injuries suffered by PLAINTIFF are substantial,

16   continuing, and permanent.

17                     **ADDITIONAL CAUSES OF ACTION**

18       199.    PLAINTIFF may plead and incorporate additional causes of action not contained

19   herein in PLAINTIFF's adoption form.

20

21       **WHEREFORE**, PLAINTIFF prays for a jury trial and for judgment against Defendants

22   as follows:

23                     **FOR ALL CAUSES OF ACTION**

24       1.    For past, present, and future non-economic damages in an amount to be determined

25   at trial;

26       2.    For past, present, and future special damages, including but not limited to past,

27   present, and future lost earnings, economic damages and others, in an amount to be determined at

28   trial;

3.    Any appropriate statutory damages;

4.    For costs of suit;

5.    For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

6.    For attorney's fees pursuant to California *Code of Civil Procedure* sections 1021.5, *et seq.*, *Civil Code* sections 52, *et seq.*, 51, *et seq.*, 42 U.S.C. § 1988 or as otherwise allowable by law;

7.    For declaratory and injunctive relief, including but not limited to court supervision of Defendant USC; and

8.    For such other and further relief as the Court may deem proper.

Dated: May 3, 2019                          **MANLY, STEWART & FINALDI**

                                            By:    /s/ John C. Manly
                                                   JOHN C. MANLY, Esq.
                                                   Attorneys for the USC/TYNDALL
                                                   PLAINTIFFS


                                            **ARIAS SANGUINETTI WANG &
                                            TORRIJOS**


                                            By:    /s/ Mike Arias
                                                   MIKE ARIAS, Esq.
                                                   Attorneys for the USC/TYNDALL
                                                   PLAINTIFFS

1

## DEMAND FOR JURY TRIAL

2        PLAINTIFF hereby demands a trial by jury.

3   Dated: May 3, 2019                    **MANLY, STEWART & FINALDI**

4
                                 By:      /s/ John C. Manly
5                                         JOHN C. MANLY, Esq.
                                          Attorneys for the USC/TYNDALL
6                                         PLAINTIFFS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the county of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 19100 Von Karman Ave., Suite 800, Irvine, CA 92612.

On May 3, 2019, I served the foregoing document described as **MASTER COMPLAINT FOR DAMAGES** on the interested parties in this action.

**[X]**    by placing **[ ]** the original **[X]** a true copy thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

**[X]    BY ELECTRONIC SERVICE:** Pursuant to the Court's Electronic Case Management Order, I institute service of the foregoing document by submitting an electronic version of the document via file transfer protocol (FTP) to Case Anywhere through the upload feature at www.caseanywhere.com. Service will be deemed effective as provided for in the Electronic Case Management Order.

**[X]    (State)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**[ ]    (Federal)**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 3, 2019, Irvine, California.

*Kathy Frederiksen*
Kathy Frederiksen

-3-

5/3/2019                                            Case Anywhere

# Electronic Service List

| | |
|---|---|
| Case: | **Doe 5, et al. v. Dr. George Tyndall, et al.** |
| Case Info: | **BC705677 and Related Cases, Los Angeles Superior Court** |
| View Service List For: | **All Cases Listed on Drop-Down Menu (Aggregate Service List)** |

**Allred, Maroko & Goldberg**
Nathan Goldberg, Esq. (ngoldberg@amglaw.com)
Dolores Leal, Esq. (dleal@amglaw.com)
Michael Maroko, Esq. (mmaroko@amglaw.com)
6300 Wilshire Blvd., Suite 1500
Los Angeles, CA 90048
Phone: (323) 653-6530
Fax: (323) 653-1660

*Representing:* Plaintiffs (BC706902; BC716639; 18STCV01904;
18STCV07174; 19STCV00688; 19STCV07992)
*(BC705677, et al.)*

**Arias Sanguinetti Wang & Torrijos LLP**
Mike Arias, Esq. (mike@asstlawyers.com)
Katherine Harvey-Lee, Esq. (kate@aswtlawyers.com)
Alfredo Torrijos, Esq. (alfredo@asstlawyers.com)
Arnold Wang, Esq. (arnold@asstlawyers.com)
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Phone: (310) 844-9696
Fax: (310) 861-0168

*Representing:* Plaintiffs (BC707655; BC707879; BC715163;
BC721320)
Plaintiffs Liaison Co-Counsel
*(BC705677, et al.; Plaintiff Discovery)*

**Becker Law Group**
Todd Becker, Esq. (becker@beckerlawgroup.com)
117 E. Colorado Blvd., Suite 500
Pasadena, CA 91105
Phone: (626) 777-7700
Fax: (626) 714-7603

*Representing:* Plaintiffs (BC711674)
*(BC705677, et al.)*

**Booth & Koskoff**
Roger Booth, Esq. (rbooth@boothkoskoff.com)
Andrew Pruitt, Esq. (apruitt@boothkoskoff.com)
Carly Sanchez, Esq. (csanchez@boothkoskoff.com)
21250 Hawthorne Blvd., Suite 475
Torrance, CA 90503
Phone: (310) 515-1361
Fax: (310) 540-0433

*Representing:* Plaintiffs (BC706844)
*(BC705677, et al.)*

**Boucher LLP**
Shehnaz Bhujwala, Esq. (bhujwala@boucher.la)
Raymond Boucher, Esq. (ray@boucher.la)
Alexander Gamez, Esq. (gamez@boucher.la)
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Phone: (818) 340-5400
Fax: (818) 340-5401

*Representing:* Discovery Working Group Co-Chair
Plaintiffs (18STCV01344)
*(BC705677, et al.)*

**Boucher LLP**
Shehnaz Bhujwala, Esq. (bhujwala@boucher.la)
Alexander Gamez, Esq. (gamez@boucher.la)
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Phone: (818) 340-5400
Fax: (818) 340-5401

*Representing:* Discovery Working Group Co-Chair
Plaintiffs (18STCV01344)
*(Plaintiff Discovery)*

**Carpenter, Zuckerman & Rowley, LLP**
John Carpenter, Esq. (carpenter@czrlaw.com)
Carlos Hernandez, Esq. (chernandez@czrlaw.com)
Robert Ounjian, Esq. (robert@czrlaw.com)
Nicholas Rowley, Esq. (nick@tl4j.com)
8827 West Olympic Boulevard
Beverly Hills, CA 90211
Phone: (310) 273-1230
Fax: (310) 858-1063

*Representing:* Plaintiffs (BC706902; BC716639; 18STCV01904;
18STCV07174; 19STCV00688; 19STCV07992)
*(BC705677, et al.)*

**Cifarelli Law Firm**
Thomas Cifarelli, Esq. (tomc@cifarellilaw.com)

*Representing:* Plaintiffs (BC708525; BC711202; BC719858)
*(BC705677, et al.)*

5/3/2019                                                        Case Anywhere

7700 Irvine Center Drive, Suite 150
Irvine, CA 92618
Phone: (949) 502-8600
Fax: (949) 502-8603

**D. Miller & Associates, PLLC**
Andy Rubenstein, Esq. (andy@dmillerlaw.com)
2610 W. Sam Houston Pkwy S, Suite 200
Houston, TX 77042
Phone: (713) 850-8600

*Representing:* Plaintiffs (BC714641; BC714642; BC714643;
BC714891; BC714892; BC714893; BC714894)
*(BC705677, et al.)*

**Fraser Watson & Croutch LLP**
Stephen Fraser, Esq. (sfraser@fwcllp.com)
Alexander Watson, Esq. (awatson@fwcllp.com)
100 West Broadway, Suite 650
Glendale, CA 91210
Phone: (818) 543-1380
Fax: (818) 543-1389

*Representing:* University of Southern California
University of Southern California Board of Trustees
University of Southern California dba USC
Engemann Student Health Center, dba Eric Cohen
Student Health Center of USC
*(BC705677, et al.; Plaintiff Discovery)*

**Gammill Law, APC**
David Gammill, Esq. (david@gammill.law)
Zack Muljat, Esq. (zack@gammill.law)
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266
Phone: (310) 750-4149

*Representing:* Plaintiffs (18STCV01202)
*(BC705677, et al.)*

**Genie Harrison Law Firm, APC**
Genie Harrison, Esq. (genie@genieharrisonlaw.com)
Sherri Nazarian, Esq. (sherri@genieharrisonlaw.com)
Amber Phillips, Esq. (amber@genieharrisonlaw.com)
523 West 6th Street, Suite 707
Los Angeles, CA 90014
Phone: (213) 805-5301
Fax: (213) 805-5306

*Representing:* Discovery Working Group Co-Chair
Plaintiffs (BC710402)
*(BC705677, et al.; Plaintiff Discovery)*

**Girardi & Keese**
David Lira, Esq. (dlira@girardikeese.com)
Alexandra Steel, Esq. (asteele@girardikeese.com)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Phone: (213) 977-0211
Fax: (213) 481-1554

*Representing:* Plaintiffs (BC710279; BC719105)
*(BC705677, et al.)*

**Grewal Law PLLC**
Nolan Erickson, Esq. (nerickson@4grewal.com)
John Fraser, Esq. (jfraser@4grewal.com)
Manvir Grewal, Sr., Esq. (mgrewal@4grewal.com)
2290 Science Parkway
Okemos, MI 48864
Phone: (517) 393-3000
Fax: (517) 393-3003

*Representing:* Plaintiffs (18STCV05165)
*(BC705677, et al.)*

**Hagens Berman Sobol Shapiro LLP**
Christopher Pitoun, Esq. (christopherp@hbsslaw.com)
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Phone: (213) 330-7150
Fax: (213) 330-7152

*Representing:* Plaintiffs (BC709675)
*(BC705677, et al.)*

**Hagens Berman Sobol Shapiro LLP**
Elizabeth Fegan, Esq. (beth@hbsslaw.com)
455 North Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
Phone: (708) 628-4949
Fax: (708) 628-4950

*Representing:* Plaintiffs (BC709675)
*(BC705677, et al.)*

**Hilliard Martinez Gonzales, LLP**
Robert Hilliard, Esq. (bobh@hmglawfirm.com)
T. Christopher Pinedo, Esq. (cpinedo@hmglawfirm.com)
719 S. Shoreline Boulevard
Corpus Christi, TX 78401
Phone: (361) 882-1612
Fax: (361) 882-3015

*Representing:* Plaintiffs (BC709675)
*(BC705677, et al.)*

5/3/2019                                                    Case Anywhere

**Hodes Milman, LLP**
Daniel Hodes, Esq. (dhodes@hml.law)
Jeffrey Milman, Esq. (jmilman@hml-lawyers.com)
9210 Irvine Center Drive
Irvine, CA 92618
Phone: (949) 640-8222
Fax: (949) 640-8294

*Representing:* Plaintiffs (BC708525; BC711202; BC719858)
[Attorney Hodes]
Plaintiffs (BC714641; BC714642; BC714643;
BC714891; BC714892; BC714893; BC714894)
[Attorney Milman]
*(BC705677, et al.)*

**Janet, Janet & Suggs, LLC**
Seth Cardeli, Esq. (scardeli@jjsjustice.com)
Andrew Janet, Esq. (asjanet@jjsjustice.com)
Howard Janet, Esq. (hjanet@jjsjustice.com)
Giles Manley, Esq. (gmanley@jjsjustice.com)
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
Phone: (410) 653-3200
Fax: (410) 653-9030

*Representing:* Plaintiffs (BC707655; BC707879; BC715163;
BC721320)
Plaintiffs Liaison Co-Counsel
*(BC705677, et al.)*

**Kohn Swift & Graf PC**
Aarthi Manohar, Esq. (amanohar@kohnswift.com)
Jonathan Shub, Esq. (jshub@kohnswift.com)
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: (215) 238-1700
Fax: (215) 238-1968

*Representing:* Plaintiffs (BC713383)
*(BC705677, et al.)*

**Law Office of Anthony T. DiPietro, P.C.**
Anthony DiPietro, Esq. (anthony@atdlaw.com)
The Woolworth Building
233 Broadway, Suite 880
New York, NY 10279
Phone: (212) 233-3600

*Representing:* Plaintiffs (BC719408)
*(BC705677, et al.)*

**Law Offices of Alexander M. Schack**
Shannon Nocon, Esq. (shannonnocon@amslawoffice.com)
Alexander Schack, Esq. (alexschack@amslawoffice.com)
Natasha Serino, Esq. (natashaserino@amslawoffice.com)
16870 W Bernardo Drive, Suite 400
San Diego, CA 92127
Phone: (858) 485-6535
Fax: (858) 485-0608

*Representing:* Plaintiffs (BC720789)
*(BC705677, et al.)*

**Law Offices of Anthony DeMarco**
Anthony DeMarco, Esq. (anthony@demarcolawfirm.com)
Courtney Kiehl, Esq. (courtney@demarcolawfirm.com)
650 Sierra Madre Villa Avenue, Suite 203
Pasadena, CA 91107
Phone: (626) 844-7700

*Representing:* Plaintiffs (BC715168)
*(BC705677, et al.)*

**Law Offices of Kevin T. Barnes**
Kevin Barnes, Esq. (barnes@kbarnes.com)
Gregg Lander, Esq. (lander@kbarnes.com)
1635 Pontius Avenue, Second Floor
Los Angeles, CA 90025
Phone: (323) 549-9100
Fax: (323) 549-0101

*Representing:* Plaintiffs (BC707887; BC708540; BC711675;
BC711979; BC713398; BC713757)
*(BC705677, et al.)*

**Lex Opus**
Mohammed Ghods, Esq. (mghods@lexopusfirm.com)
Jeremy Rhyne, Esq. (jrhyne@lexopusfirm.com)
Sandra Vivonia, Esq. (svivonia@lexopusfirm.com)
2100 N. Broadway, Suite 210
Santa Ana, CA 92706
Phone: (714) 558-8580
Fax: (714) 558-8579

*Representing:* Plaintiffs (19STCVO5716)
*(BC705677, et al.)*

**Manly, Stewart & Finaldi**
Alex Cunny, Esq. (acunny@manlystewart.com)
Vince Finaldi, Esq. (vfinaldi@manlystewart.com)
John Manly, Esq. (jmanly@manlystewart.com)
Jane Reilley, Esq. (jreilley@manlystewart.com)
19100 Von Karman Avenue, Suite 800
Irvine, CA 92612
Phone: (949) 252-9990
Fax: (949) 252-9991

*Representing:* Plaintiffs (BC705677; BC706844; BC707880;
BC707898; BC709671;BC713379; BC715160;
BC717310; 18STCV01090)
Plaintiffs Liaison Co-Counsel
*(BC705677, et al.; Plaintiff Discovery)*

5/3/2019                         Case Anywhere

**Marc J. Bern & Partners LLP**
Marc Bern, Esq. (mbern@bernllp.com)
Dale Ratner, Esq. (dratner@bernllp.com)
One Grand Central Place
60 E 42nd Street, Suite 950
New York, NY 10165
Phone: (212) 702-5000

*Representing:* Plaintiffs (BC719408)
                 (BC705677, et al.)

**McNicholas & McNicholas, LLP**
Michael Kent, Esq. (mjk@mcnicholaslaw.com)
Patrick McNicholas, Esq. (pmc@mcnicholaslaw.com)
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90024
Phone: (310) 474-1582
Fax: (310) 475-7871

*Representing:* Plaintiffs (BC711674)
                 (BC705677, et al.)

**Oakwood Legal Group, LLP**
Brennan Huelse, Esq. (brennan@oakwoodlegal.com)
Demetrios Papanikolas, Esq. (demetrios@oakwoodlegal.com)
Raymond Zolekhian, Esq. (raymond@oakwoodlegal.com)
470 South San Vicente Blvd., 2nd Floor
Los Angeles, CA 90048
Phone: (310) 205-2525
Fax: (310) 773-5573

*Representing:* Plaintiffs (BC707209; BC709799; BC709897;
                 BC709964; BC711667; BC714157; BC715073;
                 BC715218)
                 (BC705677, et al.)

**Owen, Patterson & Owen**
Tamiko Herron, Esq. (tamiko@owenpatterson.com)
Susan Owen, Esq. (susy@owenpatterson.com)
23822 W. Valencia Blvd., Suite 303
Valencia, CA 91355
Phone: (661) 799-3899
Fax: (661) 799-2774

*Representing:* Plaintiffs (BC707321; BC714294)
                 (BC705677, et al.)

**Pierce Skrabanek, PLLC**
Michael Pierce, Esq. (michael@pstriallaw.com)
3701 Kirby Drive, Suite 760
Houston, TX 77098
Phone: (832) 690-7000
Fax: (832) 616-5576

*Representing:* Plaintiffs (BC714641; BC714642; BC714643;
                 BC714891; BC714892; BC714893; BC714894)
                 (BC705677, et al.)

**Quinn Emanuel Urquhart & Sullivan, LLP**
Tara Lee, Esq. (taralee@quinnemanuel.com)
Michael Williams, Esq. (michaelwilliams@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Phone: (213) 443-3000
Fax: (213) 443-3100

*Representing:* Board of Trustees of the University of Southern
                 California
                 University of Southern California
                 (BC705677, et al.; Plaintiff Discovery)

**Rosen Saba, LLP**
Krystle Meyer, Esq. (kmeyer@rosensaba.com)
Ryan Saba, Esq. (rsaba@rosensaba.com)
9350 Wilshire Boulevard, Suite 250
Beverly Hills, CA 90212
Phone: (310) 285-1727
Fax: (310) 285-1728

*Representing:* Plaintiffs (BC722780)
                 (BC705677, et al.)

**Schimmel & Parks**
Michael Parks, Esq. (mwparks@spattorneys.com)
Arya Rhodes, Esq. (arhodes@spattorneys.com)
Alan Schimmel, Esq. (aischimmel@spattorneys.com)
15303 Ventura Boulevard, Suite 650
Sherman Oaks, CA 91403
Phone: (818) 464-5061
Fax: (818) 464-5091

*Representing:* Plaintiffs (BC713449)
                 (BC705677, et al.)

**Scolinos, Sheldon & Nevell**
Todd Nevell, Esq. (tnevell@ssn-law.net)
Daniel Sheldon, Esq. (dsheldon@ssnlaw.com)
301 N. Lake Avenue, 7th Floor
Pasadena, CA 91101
Phone: (626) 793-3900
Fax: (626) 568-0930

*Representing:* Plaintiffs (BC716625)
                 (BC705677, et al.)

**Slater Slater Schulman LLP**
Adam Slater, Esq. (usclitigation@sssfirm.com)

*Representing:* Plaintiffs (BC719408)
                 (BC705677, et al.)

5/3/2019                                                          Case Anywhere

909 Third Avenue, 28th Floor
New York, NY 10022
Phone: (212) 922-0906

**Taylor & Ring**                                      *Representing:* Plaintiffs (BC706849; BC710178; BC710179;
Louanne Masry, Esq. (masry@taylorring.com)                            BC720105; BC722439)
David Ring, Esq. (ring@taylorring.com)                               *(BC705677, et al.)*
1230 Rosecrans Avenue, Suite 360
Manhattan Beach, CA 90266
Phone: (310) 209-4100
Fax: (310) 208-5052

**Taylor DeMarco LLP**                                 *Representing:* George Tyndall, M.D.
Cherie Lieurance, Esq. (clieurance@taylordemarco.com)                *(BC705677, et al.; Plaintiff Discovery)*
N. Denise Taylor, Esq. (dtaylor@taylordemarco.com)
Sage Zermeno-Romero, Esq.
(szermenoromero@taylordemarco.com)
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
Phone: (213) 687-1600

**The Cook Law Firm, P.C.**                            *Representing:* Plaintiffs (BC709765)
Philip Cook, Esq. ☏ (pcook@cooklawfirm.la)                          *(BC705677, et al.)*
Bridget Hirsch, Esq. (bbhirsch@cooklawfirm.la)
601 S. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Phone: (213) 988-6100
Fax: (213) 988-6099

**The Senators (Ret.) Firm, LLP**                      *Representing:* Plaintiffs (BC705677; BC706844; BC707880;
Ronald Labriola, Esq. (ron@thesenatorsfirm.com)                      BC707898; BC709671;BC713379; BC715160;
Thomas Moore, Esq. (tmoore@thesenatorsfirm.com)                      BC717310; 18STCV01090)
19100 Von Karman Avenue, Suite 850                                   Plaintiffs Liaison Co-Counsel
Irvine, CA 92612                                                    *(BC705677, et al.)*
Phone: (949) 557-5800
Fax: (949) 676-6769

**The Zalkin Law Firm, P.C.**                          *Representing:* Plaintiffs (18STCV01506)
Alexander Zalkin, Esq. (alex@zalkin.com)                            *(BC705677, et al.)*
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Phone: (858) 259-3011
Fax: (858) 259-3015

**Tojarieh Law Firm, PC**                              *Representing:* Plaintiffs (BC707887; BC708540; BC711675;
Joseph Tojarieh, Esq. (jft@tojariehlaw.com)                         BC711979; BC713398; BC713757)
10250 Constellation Blvd., Suite 100                                *(BC705677, et al.)*
Los Angeles, CA 90067
Phone: (310) 553-5533
Fax: (310) 553-5536