Paul H. Burleigh, Bar No. 112512
KLINEDINST PC
777 S. Figueroa, Suite 2800
Los Angeles, California 90017
(213) 406-1100/FAX (213) 406-1101
pburleigh@klinedinstlaw.com

Ronald P. Schiller (*pro hac vice*)
Sharon F. McKee (*pro hac vice*)
Thomas N. Brown (*pro hac vice*)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200/FAX (215) 568-0300
rschiller@hangley.com
smckee@hangley.com
tbrown@hangley.com

Attorneys for Plaintiff
IRONSHORE SPECIALTY INSURANCE COMPANY

(*Additional counsel on next page*)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, et al.,<br><br>  Defendants. | Case No. 2:21-cv-01272–DDP (ASx)<br><br>Hon. Dean D. Pregerson<br><br>**RULE 26(f) JOINT REPORT**<br><br>Date:  June 5, 2023<br>Time: 11 a.m.<br>Courtroom:  9C |

Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
Stacey Zill (SBN 177268)
ISAACS FRIEDBERG LLP
555 South Flower Street, Suite 4250
Los Angeles, California 90071
(213) 929-5550/FAX (213) 955-5794
jisaacs@ifcounsel.com, jfriedberg@ifcounsel.com
szill@ifcounsel.com

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA


N. Denise Taylor (SBN 101434)
TAYLOR DEMARCO LLP
1000 Wilshire Blvd., 19th Floor
Los Angeles, California 90017-2427
(213) 687-1601/FAX (213) 687-1620
dtaylor@taylordemarco.com

Attorneys for Defendant
GEORGE R. TYNDALL

Pursuant to Federal Rule of Civil Procedure 26(f), Central District Local Rule 26-1, and this Court's Order Setting Scheduling Conference, Plaintiff Ironshore Specialty Insurance Company ("Ironshore") and Defendants the University of Southern California ("USC") and George R. Tyndall (collectively referred to as the "parties") hereby submit this Joint Report of Meeting under Rule 26(f), which took place by telephone on May 11, 2023.

1. **Statement of the Case**

**Ironshore's Contentions**

This is an insurance dispute concerning an excess healthcare professional liability coverage policy that Ironshore issued to USC for the policy period of July 1, 2017 to July 1, 2018 (the "Ironshore Policy"). The Ironshore Policy provides limits of $20 million each occurrence and aggregate excess of $80 million each occurrence and $90 million aggregate.

This coverage dispute arises out of claims asserted by former patients of Dr. Tyndall, whom USC employed as a staff physician. The patients alleged that Dr. Tyndall had sexually abused or harassed them in the guise of performing gynecological examinations. Without admitting liability, USC and Dr. Tyndall settled the underlying lawsuits and claims (the "Tyndall Litigation"). Ironshore paid its $20 million limit toward the Tyndall Litigation settlements subject to a full reservation of Ironshore's right to seek reimbursement.

In this action, Ironshore seeks a declaration that Ironshore did not have a duty to defend or indemnify USC in the Tyndall Litigation under the terms of the Ironshore Policy and Section 533 of the California Insurance Code. (Count I.) As described in more detail in the Complaint, Ironshore contends that coverage is not available for the various putative claims made in the Tyndall Litigation for intentional acts or otherwise that sound in non-negligent conduct, and that coverage is further barred or limited by exclusions for contractual liability, for violations of

the Sections 17000 and 17200 of the California Business & Professions Code, and for Unauthorized Personal Information Disclosure. Furthermore, there is no coverage under the Ironshore Policy because the Tyndall Litigation does not qualify as a **Claim** first made in the 2017-18 policy period: a reasonable person in USC's position as of June 30, 2017 would have believed that claims might be made against USC, its Trustees and/or Dr. Tyndall. Indeed by that time, USC was determined to terminate Dr. Tyndall, if it could not obtain his resignation, after a multi-prong internal investigation revealed evidence so concerning to USC regarding Dr. Tyndall's practices in conducting gynecological examinations that USC refused to allow Dr. Tyndall to return to work. These facts are also relevant to Count II, where Ironshore seeks, in the alternative, to rescind the Ironshore Policy on the ground that USC failed to disclose all facts material to the risk: specifically, the allegations of racial discrimination and sexual abuse and harassment made against Dr. Tyndall, the results of USC's internal investigations, and USC's decision to terminate Dr. Tyndall's employment. Ironshore has addressed these issues in greater detail in its successful opposition to USC's motion to dismiss Count II. (ECF Nos. 34, 80.)

In "USC's Contentions" below, USC discloses to Ironshore for the first time that it seeks to litigate two other, completely separate coverage claims (the Kelly and Christensen claims) in the guise of "setoff." USC did not raise this during the parties' May 11 conference, or its proposal of bifurcation, and as USC acknowledges Ironshore has not been given an opportunity to make coverage determinations about these indemnification claims. The Kelly claim involves allegations against a different doctor who allegedly abused scores of other patients. The Christensen case is apparently a medical malpractice claim that would raise its own distinct coverage issues. Nor can one assume (as USC does) that USC can simply swap out the Kelly or Christensen claims for the Tyndall claims given that

USC also has hundreds of millions of dollars in General Liability coverage that may apply first, introducing other exhaustion issues, and there may be other coverage and exhaustion issues even as to the Professional Liability coverage but which implicate different facts, policy terms and law. This litigation should remain focused on the issue at hand: a declaration of Ironshore's rights and duties with respect to the Tyndall claims.

Ironshore filed the Complaint on February 11, 2021. USC filed a motion to dismiss Count II [ECF No. 30], which the Court denied [ECF No. 80]. The case was stayed during the pendency of the underlying actions. On February 27, 2023, the stay was lifted as to document discovery only, and the parties were directed not to depose Dr. Tyndall absent further order of the Court. [ECF No. 108.] USC filed an answer to the Complaint on April 13, 2023. [ECF No. 113.] Dr. Tyndall has not answered the Complaint.

**USC's Contentions**

In its Complaint, Ironshore is seeking rescission of the Healthcare Professional Liability ("HPL") policies it issued to USC for the time period July 1, 2017 - July 1, 2018 based on USC's alleged failure to disclose its awareness regarding allegations against Dr. Tyndall. However, USC did not have a duty to make any such disclosures because (a) Ironshore did not request such information, (b) USC had no reason to believe the allegations it was aware of would be material to plaintiffs, and (c) USC was not aware at the time that Dr. Tyndall had allegedly engaged in sexual abuse, as opposed to making inappropriate comments and other forms of sexual harassment. Indeed, USC had no reason to believe that it would receive any lawsuits or claims regarding Dr. Tyndall, let alone claims hitting plaintiffs' layer of excess HPL coverage, which began at $80,000,000.

The underlying lawsuits were filed only after the *Los Angeles Times* ran a highly publicized article detailing Dr. Tyndall's alleged misconduct. Had it not

3

been for the *Los Angeles Times* article, it is extremely unlikely that USC would have been sued, and USC could not have anticipated that such an article would be published when it bound coverage for the July 1, 2017 - July 1, 2018 policy year. The *Los Angeles Times* article was published in May 2018, and was based on a non-public investigation which began earlier in 2018. USC did not learn that the *Los Angeles Times* was investigating Dr. Tyndall until March 2018. In its Complaint, Ironshore implicitly admits that USC could not have expected to receive any Tyndall related claims but for the publication of *Los Angeles Times* article, stating, "USC believed that ***if the allegations of improper medical care and of sexual and racial harassment over multiple years were to be disclosed to the public*** that Dr. Tyndall and USC would be sued by former patients." (Complaint, ¶ 112)(emphasis added). The implication of course is that USC had no reason to expect that it would be sued over Dr. Tyndall's alleged conduct unless the alleged misconduct received widespread public attention. This is fatal to Ironshore's claims because USC did not know and could not have known that the *Los Angeles Times* would run an article on Tyndall at the time it bound coverage.

Dr. Tyndall had been a USC physician for approximately 27 years, from approximately 1989 to 2017. In all that time, USC did not receive a single lawsuit or demand for payment based on alleged sexual misconduct, harassment, discrimination, or malpractice by Dr. Tyndall.

The lawsuits against Dr. Tyndall allege misconduct spanning most of the time Dr. Tyndall practiced at USC. However, when USC bound coverage, the statute of limitations for an action seeking damages for sexual assault was only two years. Cal. Civ. Proc. Code §335.1. It was not until late 2019 – after the *Los Angeles Times* article was published and lawsuits had been filed - that California enacted a new statute of limitations for sexual assault, which revived time-barred claims "arising out of a sexual assault or other inappropriate contact, communication, or

4

activity of a sexual nature by a physician occurring at a student health center between January 1, 1988, and January 1, 2017," and extended the limitations period for sexual assault occurring on or after plaintiff's 18th birthday to the later of 10 years of the date of the last act or attempted act, or 3 years from the date plaintiff discovers or reasonably should have discovered that an injury or illness resulted from an act or attempted act.  Cal. Civ. Proc. Code §340.16.  USC could not have foreseen these statutory enactments when it bound coverage.

In early 2017, Dr. Tyndall was terminated after USC determined that he had violated university policy on racial and sexual harassment and failed to meet professional medical standards.  However, USC did not find, and was not aware, that Tyndall had sexually abused patients, as later alleged by the *Los Angeles Times* and in the underlying lawsuits.

Furthermore, Plaintiffs' purported interest in the personnel action against Dr. Tyndall smacks of Monday morning quarterbacking.  Although the HPL policies at issue provide coverage for sexual abuse, their primary purpose is to insure USC and its physicians against medical malpractice claims.  USC is one of Southern California's major medical providers, which owns and operates Keck Medicine of USC, the Norris Comprehensive Medical Center, the Engemann Student Health Center and other medical facilities.  Accordingly, the information that USC provided to its HPL carriers before binding coverage was focused on its medical operations and the malpractice claims it had received, not personnel actions or findings of misconduct by physicians or other employees.  Neither Ironshore nor any other insurer contends that the information provided by USC was false, or that USC's HPL carriers asked for but did not receive information about USC's personnel actions or findings of sexual harassment.

Accordingly, Ironshore cannot demonstrate that USC concealed information about Dr. Tyndall, as it alleges.

5

Ironshore's declaratory relief claims assert that various terms of the policies preclude coverage for certain claims or portions of claims. Most of the underlying lawsuits fit squarely within the coverage grants of the HPL policies. In addition, the settlements of the underlying lawsuits totaled in excess of $1 billion, more than enough to exhaust Ironshore's coverage obligations even if Ironshore is able to establish that some portion of the settlements should be allocated to claims which are not covered, a position USC disputes.

USC has also asserted an affirmative defense of setoff to establish that Ironshore would not be entitled to reimbursement even if Ironshore could establish that the covered portion of the Tyndall claims was insufficient to exhaust the policy limits, because Ironshore also had coverage obligations with respect to other claims, for which Ironshore never made any insurance payments (because the Tyndall claims exhausted the policies). The claims giving rise to the offset defense are lawsuits involving alleged sexual abuse and other misconduct by Dr. Dennis Kelly, including lawsuits filed in the Superior Court for the County of Los Angeles and related under Case No. 19STCV04543 (the "Kelly Claims"), and the medical malpractice lawsuit entitled *Kenneth Christensen; Kimberly Christensen v. Rahul Doshi M.D.; Keck Hospital of USC and Does 1-100*, Los Angeles Superior Court Case No. BC 706883 (the "Christensen Claim"). USC believes that discovery related to the Kelly and Christensen Claims should be stayed and its setoff defense bifurcated, as that defense will be moot if the Court finds in USC's favor on the Tyndall claims. USC disagrees with Ironshore's position that it is not proper to address the *Christensen* and *Kelly* Claims in this action. Ironshore's concerns regarding addressing the *Kelly* and *Christensen* Claims in this action should be alleviated by USC's request for bifurcation.

### 2. Timing and Form of Initial Disclosures

Ironshore and USC have agreed to exchange their initial disclosure statements on or before May 26, 2023.

### 3. Discovery Plan

Ironshore and USC have conferred about a discovery schedule, but have not reached agreement on all points, as set forth below. Dr. Tyndall's position is that he cannot agree to a discovery schedule that applies to him, and in particular, the proposed discovery and expert cut off dates below, given the stays on discovery that remains in place, pending his criminal matter. It is Ironshore's position that, although Dr. Tyndall may not be deposed absent further order of the Court [ECF No. 108], he can otherwise participate in setting a schedule and in other pretrial matters.

USC's proposal with respect to the dates suggested below is based on the assumption that this action will eventually be consolidated with the two related cases involving USC's healthcare professional liability insurers. The schedule would require all dispositive motions, oppositions and replies be filed on the same date. Accordingly, USC has proposed an extended amount of time to file oppositions and replies because it will be required to work on and file the motions with respect to each party simultaneously. Should the cases be consolidated, USC requests leave to file a separate motion for summary judgment against each of the three insurers, rather than to file only one motion that pertains to all three. Each of the three plaintiffs should be permitted to file one motion for summary judgment.

As to Dr. Tyndall, USC suggests that the action be stayed and severed so that USC's case may proceed to trial. Alternatively, the court should decline to set a trial date, because it is currently unclear when Dr. Tyndall's criminal proceeding will be completed.

| Event | Ironshore Proposal | USC Proposal |
|---|---|---|
| Close of fact discovery | May 1, 2024 | May 1, 2024 |
| Expert disclosures | May 31, 2024 | May 31, 2024 |
| Rebuttal expert disclosures | July 1, 2024 | July 1, 2024 |
| Close of expert discovery | August 1, 2024 | August 1, 2024 |
| Dispositive motions deadline | September 3, 2024 | September 3, 2024 |
| Oppositions to dispositive motions | October 10, 2024 | November 25, 2024 |
| Reply to dispositive motions | November 8, 2024 | December 20, 2024 |
| Hearing on dispositive motions | December 9, 2024 | January 10, 2025 |
| Daubert motions deadline | September 3, 2024 | January 27, 2025 |
| Oppositions to Daubert motions | October 10, 2024 | February 24, 2025 |
| Reply to Daubert motions | November 8, 2024 | March 10, 2025 |
| Hearing on Daubert motions | December 9, 2024 | March 17, 2025 |
| Mediation completion date | November 22, 2024 | January 10, 2025 |
| Pretrial conference | April 7, 2025 | TBD Depending on Tyndall's status. |

### 4.   Subjects for Discovery

*Ironshore*:  At this time, the subjects for Ironshore's discovery include the following:  (1) the timing and scope of USC's knowledge of complaints by students and USC employees of alleged racial discrimination and sexual harassment by Dr. Tyndall; (2) oral and written communications between USC and/or its insurance brokers, on one hand, and carriers, on the other regarding USC's procurement of excess healthcare professional liability coverage for the July 1, 2017 to July 1, 2018 policy period; (3) oral and written communications between (a) USC and/or its insurance brokers and (b) BETA Risk Management Authority ("BETA") regarding USC's procurement of primary healthcare professional liability coverage for the

8

July 1, 2017 to July 1, 2018 policy period; (4) USC's investigations into complaints by students and USC employees of alleged racial discrimination or sexual harassment by Dr. Tyndall; (5) investigations by USC's outside vendors into complaints by students and USC employees of alleged racial discrimination and sexual harassment by Dr. Tyndall and the vendor's findings; (6) notice by USC and/or its insurance brokers or other representatives to Ironshore and other insurance carriers of student and employee complaints of alleged racial discrimination or sexual harassment by Dr. Tyndall; (7) notice by USC and/or its insurance brokers or other representatives to Ironshore and other insurance carriers of the circumstances of Dr. Tyndall's resignation from USC effective on or about June 30, 2017; (8) the circumstances of Dr. Tyndall's resignation from USC effective on or about June 30, 2017; (9) USC's policies, practices, and procedures for notifying insurance carriers of potential insurance claims; (10) the allocation of the Tyndall settlements between negligence-based putative claims and other claims; (11) the bases for Tier One awards and the amount of the Tier One settlements; (12) procurement of discovery responses and documents produced in the underlying state and federal lawsuits filed against USC and Dr. Tyndall arising out of allegations of racial discrimination or sexual harassment by Dr. Tyndall; (13) the exhaustion of underlying limits by insurers; (14) the identities of the natural persons at USC or USC's agents who were involved in (a) procuring insurance for the 2017-18 policy period; (b) investigation allegations concerning Dr. Tyndall; and/or (c) the internal decision to terminate Dr. Tyndall or obtain his resignation; (15) the allocation of Tyndall litigation settlements to persons who alleged wrongful acts that potentially qualify as **Privacy Breach Wrongful Acts** or an **Unauthorized Personal Information Disclosure** as defined by the Ironshore Policy; (16) USC's knowledge of Dr. Tyndall's request for reinstatement, USC's complaint to the Medical Board, and the *Los Angeles Times* investigation into the Tyndall allegations; (17) any contractual obligation to defend

9

or indemnify Dr. Tyndall, the USC Trustees, or others.  As this case proceeds, investigation and discovery may reveal further areas for discovery that may be undertaken by Ironshore.

In addition to requests for documents from USC, Ironshore expects to serve document subpoenas on USC's insurance brokers.  If the related cases are consolidated, Ironshore will work with the other carriers to avoid duplication.  Ironshore also plans to take lay witness depositions, including:  Stacy Bratcher, Ainsley Carry, Carol Mauch Amir, Gail Ford, Laura LaCorte, Collin Wedel, Mary Winterburn Sciarra, Thomas E. Jackiewicz, Gretchen Dahlinger Means Gaspari, Karen Nutter, Tatiana Small, Lil Delcampo, Kelly Bendell, Charles Sipkins, Dawn Kennedy, Tsasia Mercado, Christian Gunning, Brenda Maceo, and (upon leave of the Court) Dr. Tyndall.  Additional witnesses may be identified once Ironshore has received document discovery from USC.

The Kelly and Christiansen claims are outside of this action, and USC never disclosed its position that these claims have any relevance, or its bifurcation proposal, until May 24, 2023.  Litigating coverage for two entirely new, separate cases would expand discovery enormously.

*USC*:  USC intends to take discovery from Ironshore on various issues relating to its healthcare professional liability insurance policies, including its underwriting of such policies, what information is material to its underwriting decision, the application process, claims reporting procedures and its procedures regarding analysis of claims.  USC also intends to take discovery relating specifically to the underwriting of the policies at issue in this action, Ironshore's dealings with USC and its agent, Chivaroli & Associates, and negotiations regarding USC's policies with Ironshore.  USC intends to take both written discovery and the depositions of Ironshore's witnesses. USC also intends to take discovery of Ironshore's dealings with other insureds, to demonstrate that Ironshore was not

interested in personnel actions or adverse findings concerning physicians when it underwrote and issued the HPL coverage at issue. Finally, USC intends to take discovery with respect to the *Kelly* and *Christensen* claims, if the action is not bifurcated and stayed as to those claims. If the action is bifurcated, discovery will not be expanded by the *Kelly* and *Christensen* claims.

*Dr. Tyndall:* Dr. Tyndall continues to object to any discovery, including depositions of the witnesses listed in Ironshore's disclosure, to the extent that this discovery would inquire into the witnesses' investigation into or knowledge of the alleged acts giving rise to Dr. Tyndall's criminal prosecution, as reflected in the Court's Minute Order of February 27, 2023.

**5. Electronically Stored Information**

Unless otherwise stipulated or ordered by the Court, the parties agree to produce electronically stored information in conformance with Rule 34.

**6. Confidentiality, Privilege and Work-Product Issues**

A Protective Order has been entered in this Action. [ECF No. 40.] The parties expect that issues concerning claims of attorney-client privilege and work product protection will presented.

**7. Additional Limitations on Discovery**

**Interrogatories**:

*Ironshore* seeks to extend the number of interrogatories that each party can serve without further order of the Court from 25 to 40. Ironshore expects to need separate interrogatories to inquire into the bases of USC's 22 separate affirmative defenses directed to Ironshore. Even if this case is consolidated with the related cases, Ironshore will need more than 3 additional interrogatories to address the other issues in this action and prepare its case for summary judgment and trial. Ironshore plans to coordinate its interrogatories with Lloyds and NACIC if the cases are consolidate to avoid duplication, however 3 (or 9) interrogatories are insufficient to

11

address the common issues, let alone the Ironshore-specific issues in the case. Ironshore wishes to avoid the expense and delay of discovery motion practice by addressing the issue now. Furthermore, USC's position is undermined by its description of the discovery it intends to take from Ironshore (above). The fact that USC has already served *107* separate document requests on Ironshore demonstrates that USC considers this to be a case involving extensive discovery.

*USC* opposes Ironshore's request and contends that the statutory limit of 25 interrogatories is more than adequate even if this case is consolidated with the related cases, all of which relate to the same set of facts. There is no reason why USC should be required to respond to as many as 120 interrogatories in three related cases with overlapping, and in some cases identical, claims, defenses and issues.

**Depositions**:

*Ironshore* proposes that if this case is consolidated with the related cases, that depositions of USC witnesses shall be limited to 14 hours, and that each party may take 10 depositions without further leave of the Court. Absent consolidation, Ironshore seeks leave to take up to 20 lay witness depositions without further leave of the Court. USC is a large organization and numerous persons were involved in the internal investigations into the allegations regarding Dr. Tyndall, in responding to the *Los Angeles Times* investigation, and in procuring insurance and reporting claims. In addition, the case presents issues of allocation of the settlements among the causes of action and plaintiffs. Ironshore has already identified 19 potential lay witnesses (above), not counting Rule 30(b)(6) witnesses, and will likely identify others once USC produces documents. USC's contention below that "each case is based on the same set of facts" is not relevant to Ironshore's request for 20 depositions because Ironshore presently makes that request in the event that this case is not consolidated with the related cases; if the cases are consolidated,

Ironshore does not seek at this time to exceed the Rules' limit (while reserving the right to request additional depositions if the need arises).

*USC* contends that Ironshore's request to take (1) 20 lay witness depositions without leave of court if not consolidated, or (2) 10 lay witness depositions if consolidated (presumably with each other plaintiff also taking 10 depositions), is excessive. USC further contends that depositions of USC witnesses should, in the first instance, be limited to the statutory seven hours, even if the case is consolidated. The parties can revisit extending the time on a case by case basis, should it become reasonably necessary. However, a blanket extension which applies to witnesses who have not even been identified would be inappropriate.

USC contends that consolidation of the cases does not warrant discovery beyond the statutory limits, as each case is based on the same set of facts and contains the same allegations against USC. The purpose of consolidation is to streamline discovery, not to expand it. Ironshore's proposal puts USC at a severe disadvantage when it comes to discovery in that USC will only be permitted to take 10 depositions, while potentially having to defend 30. This is obviously unfair.

Furthermore, the list of deponents Ironshore has included above is excessive, and includes individuals who have little, if any, knowledge regarding the issues in this action.

USC further contends that if the cases are consolidated, the two Lloyd's of London syndicates that are plaintiffs in that action should be treated as one party for purposes of discovery limits.

**8.  Manual for Complex Litigation**

The parties do not believe it necessary to use the procedures of the Manual for Complex Litigation.

9. **Settlement/Alternative Dispute Resolution (ADR)**

The parties select ADR Procedure No. 3 (private mediation). The parties believe that the mediation session should occur after briefing on the dispositive motions is complete.

10. **Trial Estimate**

The parties estimate a three to four week trial if this action is consolidated for all purposes with the related actions. If the cases are not consolidated for purposes of trial, the parties estimate a two week trial for this case.

11. **Additional Parties**

The parties do not anticipate joining additional parties at this time.

Dated: May 25, 2022

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

*/s/ Ronald P. Schiller*
Ronald P. Schiller (*pro hac vice*)
Sharon F. McKee (*pro hac vice*)
Thomas N. Brown (*pro hac vice*)

**KLINEDINST PC**
Paul H. Burleigh, Bar No. 112512

*Attorneys for Plaintiff Ironshore Specialty Insurance Company*

**TAYLOR DEMARCO LLP**

*/s/ N. Denise Taylor*
N. Denise Taylor (SBN 101434)

*Attorneys for George R. Tyndall*

**ISAACS FRIEDBERG LLP**

*/s/ Jerome H. Friedberg*
Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
Stacey Zill (SBN 177268)

*Attorneys for Defendant University of Southern California*

14

# ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 25, 2023

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

*/s/ Ronald P. Schiller*
Ronald P. Schiller (*pro hac vice*)
Sharon F. McKee (*pro hac vice*)
Thomas N. Brown (*pro hac vice*)